LONG TERM DISABILITY INCOME POLICY

## ELIGIBILITY FOR EMPLOYEE INSURANCE

Each Employee, in one of the Classes of Eligible Employees shown below will become eligible for Employee Insurance on the day he completes the Waiting Period, if any. An Employee who was previously insured and whose insurance ceased must satisfy the New Employee Group Waiting Period to become insured again. If the insurance on an Employee Group ceased because he was no longer employed in a Class of Eligible Employees, he is not required to satisfy any Waiting Period if he again becomes a member of a Class of Eligible Employees within one year after his insurance ceased.

**INITIAL EMPLOYEE GROUP.** The Initial Employee Group is made up of Employees in the employ of an Employer on the Participation Date of that Employer.

**NEW EMPLOYEE GROUP.** The New Employee Group is made up of Employees whose employment with an Employer starts after the Participation Date of that Employer.

WAITING PERIOD
    Initial Employee Group:
        None

  New Employee Group:
        On the first day of the month following one continuous month(s) of service
        with the Employer

CLASSES OF ELIGIBLE EMPLOYEES

All active full time permanent salaried, in-a-union employees of the Policyholder over age 18 regularly working a minimum of 25 hours per week.



LONG TERM DISABILITY INCOME POLICY

## EFFECTIVE DATE OF EMPLOYEE INSURANCE

Each employee may elect to be insured for Employee Insurance only by signing a payroll deduction form approved by the Policyholder and the Insurance Company. The effective date of his insurance depends upon the date on which the Employee elects the insurance.

(1) If he elects Employee Insurance on or before the date he becomes eligible, his insurance will become effective on the date he becomes eligible.

(2) If he elects Employee Insurance within 31 days after he becomes eligible, his insurance will become effective on the date of election.

(3) If he elects Employee Insurance more than 31 days after he becomes eligible his insurance will become effective on the date the Insurance Company agrees in writing to insure him.

(4) If his Employee Insurance ceases because he cancelled his payroll deduction, and he again elects to be insured, his insurance will become effective on the date the Insurance Company agrees in writing to insure him.

Under the circumstances described in items 3 and 4, the Insurance Company may require the Employee to submit evidence of good health acceptable to the Insurance Company at his own expense before it agrees to insure him.

If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will become effective on the date he returns to Active Service.

Effective Date

LONG TERM DISABILITY INCOME POLICY

## TERMINATION OF INSURANCE

The insurance on an Employee will cease on the earliest date below:

the date the Employee ceases to be in a Class of Eligible Employees or ceases to qualify as an Employee;

the last day for which the Employee has made a required premium contribution for the insurance;

the date the policy is cancelled unless the Employee is totally disabled on that date;

(4) the date the Employee's Active Service ends, except as set forth below.

(a) If the Employee's Active Service ends due to Total Disability for which Monthly Benefits are or may become payable, the insurance will continue while that Total Disability continues during the Benefit Waiting Period and thereafter but only for as long as Monthly Benefits are payable.

(b) If the Employee returns to Active Service in a Class of Eligible Employees as soon as Total Disability ceases, the insurance will be reinstated when the Policyholder pays the premium for him.

(5) If the Employer insures his employees as a member of a trade association or an insurance trust fund, on the date that the Employer no longer participates.

## WAIVER OF PREMIUM

Premium for an Employee will be waived while Monthly Benefits are payable to him.

## EXTENSION OF BENEFITS AFTER CANCELLATION

Payment of Monthly Benefits will not be affected by cancellation of this policy as long as the Total Disability begins while this policy is in force.

6 TMB-2

## LONG TERM DISABILITY INCOME POLICY

### CONVERSION PRIVILEGE

**HOW AND WHEN TO CONVERT.** When an Employee's Long Term Disability Insurance under this policy ceases, he may be eligible to be insured under a group policy providing converted long term disability benefits (called Converted Insurance) only if he: (1) is Entitled to Convert and (2) applies in writing and pays the first premium for Converted Insurance to the Insurance Company within either of the following periods of time after the date his insurance under this policy ceases:

(a) within 31 days, without evidence of good health; or

(b) after 31 days but not more than 62 days, with evidence of good health.

**ENTITLED TO CONVERT.** An Employee is Entitled to Convert Long Term Disability Insurance only if:

(1) he has been insured for at least 12 consecutive months under this policy or under this and a prior Long Term Disability group policy issued to the Policyholder; and

(2) his insurance under this policy ceased because he was no longer in Active Service because of resignation, involuntary termination, layoff or an uninsured leave of absence.

**NOT ENTITLED TO CONVERT.** An Employee is not Entitled to Convert if:

(1) he is no longer in a Class of Eligible Employees;

(2) he has attained age 70;

(3) he has retired;

(4) he is not in Active Service because of disability;

(5) this policy is cancelled for any reason.

**CONVERTED INSURANCE.** Converted Insurance will be provided under the plan of benefits offered by the Insurance Company at the time the first premium is received.

A certificate under the group converted policy will be issued to the Employee describing his benefits. Converted Insurance will take effect on the date that, after the Employee's insurance under this policy ceased, is the 32nd or (in the case of an Employee required to submit evidence of good health) the day the Insurance Company accepts the evidence. The conversion right takes effect on the same date.

The maximum monthly amount of Converted Insurance will be the lesser of $....
his earnings....

## LONG TERM DISABILITY INCOME POLICY

### SCHEDULE

**BENEFIT WAITING PERIOD.** 60 days of continuous Total Disability.

A period of Total Disability will be considered continuous even if the disabled Employee temporarily returns to work for up to a total of 10 days during the Benefit Waiting Period. The Benefit Waiting Period will be extended by the number of days the Employee temporarily returned to work.

**MONTHLY BENEFIT.** The Monthly Benefit for any month is *% of the Employee's Monthly Basic Earnings at the time he becomes Totally Disabled, rounded to the nearer dollar up to a maximum of $5,000, and reduced by the amount of all Other Benefits for that month.

The Monthly Benefits will not be less than $75, regardless of any reductions shown in this schedule. Monthly Benefits will be pro-rated if payable for any period less than a month.

*60% of the first $5,000,
plus 40% of the excess.

7-MPB-1

LONG TERM DISABILITY INCOME POLICY

SCHEDULE (Continued)

OTHER BENEFITS include:

(1)  any amounts which the Employee or his dependents receive on account of his disability under:

    (a) any group or franchise insurance or similar plan for persons in a group;

    (b) the Canada and Quebec Pension Plans;

    (c) any local, state, provincial or federal government disability or retirement plan or law;

    (d) any salary or wage continuance plan of the Employer;

    (e) the Jones Act, or any workers' compensation, occupational disease or similar law including all permanent as well as temporary disability benefits;

    (f) any work loss provision in the mandatory part of any "No-Fault" auto insurance policy;

(2)  any benefits which the Employee receives (or is assumed to receive*) under the Federal Social Security Act on his own behalf;

(3)  any benefits which the Employee receives (or is assumed to receive*) on behalf of his dependents; or which his dependents receive on account of the Employee's receipt (or assumed receipt*) under the Federal Social Security Act; and

(4)  any retirement benefits which an Employee receives under a Retirement Plan sponsored by the Employer.

*See the Assumed Receipt of Benefits provision.

OTHER INSURANCE. If there is other group disability insurance which:

    a)  applied to the same claim for Total Disability; and
    b)  contains the same or similar provision for reduction because of Other Benefits;

this policy shall be liable only for its pro rata share of the Total Loss.

"Pro rata share" means that portion of the Total Benefit from the group policy under one policy, in the absence of other policies, to each the total applicable benefit under all such policies.

[reproduction watermark]

LONG TERM DISABILITY INCOME POLICY

SCHEDULE (Continued)

PARTIAL DISABILITY BENEFIT.

The monthly benefit for any month during which the employee is partially disabled will be based on the following formula:

$$\frac{\text{Loss of Monthly Earnings}}{\text{Prior Monthly Earnings}} \quad X \quad \frac{\text{Monthly Benefit}}{\text{for Total Disability}} = \frac{\text{Partial Disability}}{\text{Monthly Benefit}}$$

"Prior Monthly Earnings" means the Employee's indexed Basic Earnings earned from his own occupation during the Months just prior to the period of Total Disability which preceded the Partial Disability for which claim is being made.

Indexed "Prior Monthly Earnings" means the Prior Monthly Earnings, as defined, adjusted by (1) the annual percentage determined by the Cost of Living provision, if included in the policy; or (2) 3% compounded each year.

"Loss of Monthly Earnings" means the Employee's indexed Prior Monthly Earnings minus the Employee's monthly earnings received while partially disabled.  This difference must be at least 20% of his Prior Monthly Earnings to be deemed a loss.

"Monthly Benefit for Total Disability" means the value of Monthly Benefit reduced by unindexed Other Benefits.  This monthly Benefit for Total Disability is not adjusted by the Cost of Living provision or by any other appropriate adjustment.

Partial Disability must start within 31 days after the end of a period of Total Disability for which the Employee is eligible to be paid a Monthly Benefit.

A Partial Monthly Benefit will not be paid for any period of time during which: (1) the Employee is not under the care and treatment of a doctor; (2) he is being paid under the policy for Total Disability; (3) his loss of earnings is not solely due to disability; and (4) his loss of earnings is at least 20% of his Prior earnings.

7-PD-1

# LONG TERM DISABILITY INCOME POLICY

## SCHEDULE (Continued)

### ASSUMED RECEIPT OF BENEFITS

If an Employee is eligible under the Federal Social Security, Worker's Compensation, or similar laws, he will be assumed to be receiving such benefits for himself (and for his dependents, if applicable). These assumed benefits will be in amount the Insurance Company estimates he (and his dependents, if applicable) is eligible to receive. This assumption will not be made if the Employee gives the Insurance Company proof that:

    (1)  he has applied for these benefits; and

    (2)  payments were denied.

However, if payments for disability were denied solely because of the disability was not expected to last at least 12 consecutive months, the Employee will be assumed to be receiving such benefits after his disability has continued for 12 consecutive months. This assumption will not be made if he gives the Insurance Company proof that:

    (1)  he has reapplied for benefits; and

    (2)  payments were again denied.

The Insurance Company will not assume receipt of, nor reduce the Monthly Benefit by, any elective, actuarially reduced, early retirement benefits under such laws until the Employee actually receives such benefits.

### INCREASES IN OTHER BENEFITS

The Insurance Company will not consider any cost of living increase in any Other Benefits which is effective after:

    (1)  the first payment of such Other Benefit becomes due; and

    (2)  Monthly Benefits become payable under the policy.

### RECOVERY OF OVERPAYMENTS

If the Monthly Benefit for any month is overpaid, the Insurance Company has the right to recover the amount overpaid by either of the following methods:

    (1)  a deduction of the overpaid amount from any future payments by the Insurance Company;

    (2)  a lump sum repayment by the Employee of the overpaid amount.

# LONG TERM DISABILITY INCOME POLICY

## SCHEDULE (Continued)

LUMP SUM PAYMENTS

Any Other Benefit paid in a lump sum (except as shown below) will be deemed to be paid in monthly amounts prorated over the time for which the sum was paid. If no such time is stated, the lump sum will be prorated monthly over the expected life span of the Employee. The Insurance Company will determine that expected life span.

Lump Sum Payment under:

   (1)  a Retirement Plan will be deemed to be paid in the monthly amount which:

       (a)  is provided by the standard annuity option under the Plan, as identified by the Policyholder; or

       (b)  is prorated under a standard annuity table over the expected life span of the Employee (if the Plan does not have a standard annuity option);

   (2)  the Jones Act or any workers' compensation, occupational disease or similar law (which includes benefits paid under a Compromise and Release) will be deemed to be paid monthly;

       (a)  at the rate stated in the award;

       (b)  at the rate paid prior to the lump sum (if no rate is stated in the award); or

       (c)  at the maximum rate set by the law (if no rate is stated and the Employee did not receive a periodic award).

7-LSP-1

Lump Sum Payments

LONG TERM DISABILITY INCOME POLICY

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS

COMMENCEMENT OF BENEFITS.

The Insurance Company will start paying Monthly Benefits in amounts determined from the Schedule when it receives proof that:

(1) the Employee became Totally Disabled while insured for this Long Term Disability Insurance; and

(2) his Total Disability has continued for a period longer than the Benefit Waiting Period shown in the Schedule.

DURATION OF BENEFITS.

The Insurance Company will stop paying Monthly Benefits on the earlier of the following dates:

(1) the date the employee ceases to be Totally Disabled;

(2) the Employee's 65th birthday if he becomes Totally Disabled before his 60th birthday;

(3) the earlier of the following dates if the Employee becomes Totally Disabled on or after his 60th birthday:

   (a) the end of 5 years from the date the Employee becomes Totally Disabled;

   (b) the Employee's 70th birthday or, if 12 Monthly Benefit payments have not been payable as of that date, the date the 12th Monthly Benefit payment is payable.

S-GDB-2

Commencement and Duration of Benefits



LONG TERM DISABILITY INCOME POLICY

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS (Continued)

PRE-EXISTING CONDITION LIMITATION.

The Insurance Company will not pay Monthly Benefits for any period of Total Disability which results, directly or indirectly, from an Injury or Sickness for which the Employee, during the 3 months prior to the most recent effective date of his insurance: (1) incurred expenses; (2) received medical treatment; (3) took prescribed drugs or medicines; or (4) consulted a physician. This limitation will not apply to a period of Total Disability which begins more than 12 months after the most recent effective date of the Employee's insurance.

CONTINUITY OF COVERAGE AND PRE-EXISTING CONDITION LIMITATION.

The Pre-existing Condition Limitation will be waived, as described below, for an Employee who was insured on the day before the Effective Date of this policy under a group long term disability policy: (a) sponsored by the Employer; and (b) replaced by this policy: provided such Employee:

(1)   is in Active Service on the Effective Date of this policy; and

(2)   has fulfilled the requirements of any Pre-existing Condition Limitation of the replaced policy.

However, if such Employee:

(3)   is in Active Service on the Effective Date of this policy; and

(4)   has not fulfilled the requirements of any Pre-existing Condition Limitation of the replaced policy because the time period required from the start of total disability has not been satisfied;

any portion of time which may have been satisfied under such Pre-existing Condition Limitation will be applied toward the satisfaction of that time period requirement of the Pre-existing Condition Limitation of this policy.

All Monthly Benefits are determined on the basis they would be paid according to

30 LTD 5

LONG-TERM DISABILITY INCOME POLICY

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS (Continued)

SUCCESSIVE PERIODS OF DISABILITY

Separate periods of Total Disability resulting from the same or related causes will be considered one period of Total Disability unless: (a) separated by the Employee's return to Active Service; (b) for at least 6 consecutive months.

Separate periods of Total Disability resulting from unrelated causes will considered one period of Total Disability unless: (a) separated by the Employee's return to Active Service; (b) for at least one full day.

These provisions do not apply:

(1) to the Benefit Waiting Period; or

(2) when the Employee becomes eligible for benefits under any group long term disability policy.

8-SPD-1

LONG TERM DISABILITY INCOME POLICY

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS (Continued)

FAMILY SURVIVORSHIP BENEFITS

The Insurance Company will pay Family Benefits as set forth below for up to 6 months if:

(1) the Employee becomes Totally Disabled while insured for Family Benefits;

(2) the Total Disability has continued for at least 6 months beyond the Benefit Waiting Period; and

(3) the Employee dies while Monthly Benefits are being paid for that Total Disability and the Insurance Company receives due proof of death.

PAYMENT OF FAMILY BENEFITS

Family Benefits will be payable Monthly beginning one month after the Employee's death.  Family Benefits will be paid to the Employee's lawful spouse if living.  If the lawful spouse is not living when the Family Benefit is due, it will be paid in equal shares to each child of the Employee.  No Family Benefits will be paid if there is no lawful spouse or child.

The term child means the Employee's unmarried child (including a stepchild living with the Employee at the time of death) who is less than 21 years old.  Family Benefits may not be assigned.  Payment to anyone as provided above will release the Insurance Company from all liability for Family Benefits to the extent of the payments made.

AMOUNT OF FAMILY BENEFITS

The amount payable for Family Benefits will be equal to 100% of the sum of:

(1) the Monthly Benefit due for the last full month of Total Disability before the Employee's death; and

LONG TERM DISABILITY INCOME POLICY

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS (Continued)

EXCLUSIONS

No Monthly Benefits will be paid if the Employee's Total Disability results, directly or indirectly, from:

(1)  injuries intentionally self-inflicted while sane or insane;

(2)  any act or hazard of a declared or undeclared war;

(3)  mental illness, alcoholism or drug abuse unless, while Totally Disabled, that Employee is: (a) confined as a bed patient in a licensed hospital; (b) confined as a bed patient in an institution which specializes in care and treatment of such conditions; or (c) in an approved program of medically supervised treatment or rehabilitation.

No Monthly Benefits will be paid for a period of Total Disability when the Employee is not under the care of a licensed physician.

8-EX-1

LONG TERM DISABILITY INCOME POLICY

## PREMIUMS

**PREMIUM PAYMENT.** The first premium will be due on the Effective Date. After that, premium will be due monthly unless the Policyholder and the Insurance Company agree on some other method of premium payment. The Policyholder and the Insurance Company may agree to change the method of premium payment from time to time. Premiums are payable at The Home Office of the Insurance Company or to an authorized agent of the Insurance Company.

**PREMIUM DUE DATE.** After the Effective Date, the Premium Due Date will be the day of the month with the same number as the Anniversary Date or the last day of a month in which there is no day with the same number as the Anniversary Date. If the Policyholder and the Insurance Company agree that premiums will be paid on a quarterly, semi-annual or annual basis, the Premium Due Date will be at the appropriate regular intervals, quarterly, semi-annually or annually.

**MONTHLY STATEMENT DATE.** If premiums are to be paid monthly, the Monthly Statement Date will be the same as the Premium Due Date. If premiums are to be paid on a quarterly, semi-annual or annual basis, the Monthly Statement Date will be the day in each month with the same number as the Premium Due Date.

**MONTHLY PREMIUM STATEMENT.** If premiums are due monthly, a Monthly Premium Statement will be prepared as of the Premium Due Date. This Monthly Premium Statement will show the premium due. If premiums are due quarterly, semi-annually or annually, a Monthly Premium Statement will be prepared as of the Monthly Statement Date for the time from the Monthly Statement Date to the next Premium Due Date. This Monthly Statement will reflect any pro rata premium charges and credits due to changes in the number of insured persons and changes in insurance amounts that took place in the preceding month.

**SIMPLIFIED ACCOUNTING.** To simplify the accounting process, premium adjustments will be made on the Monthly Statement Date that is the same as or next follows the date that (1), (2) or (3) below take place:

(1) A person becomes insured.

(2) The amount of insurance changes.

(3) A person ceases to be insured.

### LONG TERM DISABILITY INCOME POLICY

MONTHLY PREMIUM [illegible] determined at the rate of $.75 per month for each $10,000 of [illegible]

Covered Payroll for an Employee is his monthly rate of Basic Earnings for the insurance month [illegible] date such determination is made. However, an Employee's Covered Payroll [illegible] include any part of his monthly basic Earnings which exceed $10,000.

CALCULATION OF PREMIUMS. The premium will be calculated by multiplying the total amount of Covered Payroll on the Premium Due Date by the monthly premium rate applicable on that date. If the Policyholder and the Insurance Company agree to a change in the method of premium payment or to a change in the Anniversary Date, an appropriate pro rata adjustment will be made in the premium due.

CHANGES IN PREMIUM RATES. The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice. No change in rates will be made until 12 months after the Effective Date. An increase in rates will not be made more often than once in a 12 month period. If an increase in rates takes place on a date that is not a Premium Due Date, a pro rata premium will be due on the date of the increase. The pro rata premium will apply for the increase from the date of the increase to the next Premium Due Date. If a decrease in rates takes place on a date that is not a Premium Due Date credit will be granted. The pro rata credit will apply for the decrease from the date of the decrease to the next Premium Due Date.

9-PRE-2

## LONG TERM DISABILITY INCOME POLICY

### CANCELLATION OF POLICY

**NOTICE OF CANCELLATION.**

The Policyholder or the Insurance Company may cancel the policy as of any premium Due Date by giving written notice at least 31 days in advance of that date.

If a premium is not paid when due, the policy will automatically be cancelled as of the Premium Due Date, except as set forth below.

The Insurance Company may cancel the policy as of any premium due date if the number of insured employees is less than 10 or less than 75% of those eligible.

**GRACE PERIOD.**

If, before a Premium Due Date, the Policyholder has not given written notice to the Insurance Company that the policy is to be cancelled, a Grace Period of 31 days will be granted for the payment of each premium after the initial premium. The policy will stay in effect during that time. If any premium is not paid by the end of the Grace Period, the policy will automatically be cancelled at the end of the Grace Period; except that, if the Policyholder has given written notice in advance of an earlier date of cancellation, the policy will be cancelled as of that earlier date. The Policyholder will be liable to the Insurance Company for the unpaid premium for the time the policy was in force.

LT-CAN-1

LONG TERM DISABILITY INCOME POLICY

## PAYMENT OF BENEFITS

**TO WHOM PAYABLE.** Any benefits that are payable for disability will be paid to the Employee. Any benefits will be paid to the eligible survivor(s) according to the terms of the policy.

If any person to whom benefits are payable is a minor or, in the opinion of the Insurance Company, is not able to give a valid receipt for any payment due him, such payment will be made to his legal guardian. However, if no request for payment has been made by his legal guardian, the Insurance Company, may at its option, make payment to the person or institution appearing to have assumed his custody and support.

If an Employee dies while any of the disability benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee: spouse, mother, father, children, brothers or sisters; or to the executors or administrators of the Employee's estate.

Payment in the manner described above will release the Insurance Company from all liability to the extent of any payment made.

**TIME OF PAYMENT.** Any disability benefits will be paid at regular intervals of not more than one month. Any balance which remains unpaid at the end of any period for which the Insurance Company is liable will be paid at that time.

11-PAY-1

# LONG TERM DISABILITY INCOME POLICY

## PROVISIONS

**E.. THE CONTRACT** ... contract will be made up of the policy, the application of the Policyholder, a copy of which is attached ... applications, if any, of the Employees ...

**POLICY CHANGES** ... made in the policy ... by amendment signed by the Policyholder and by the Insurance Company ... President, Vice President, Assistant Vice President ... or an Assistant ... to the agent ... change or waive any terms of the policy.

**STATEMENTS OF WARRANTIES** ... statements made by the Policyholder or by an insured Employee will in the absence of fraud, be deemed representations and not warranties. No statement made by the Policyholder or by the Employee to obtain insurance will be used to avoid or reduce the insurance unless it is made in writing and is signed by the Policyholder or the Employee and a copy is sent to the Policyholder, the Employee or his Beneficiary.

**NOTICE OF CLAIM** Written notice of claim must be given to the Insurance Company within 30 days after the occurrence or start of the loss on which claim is based.

If notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice was given as soon as was reasonably possible.

**CLAIM FORMS** When the Insurance Company receives the notice of claim, it will give to the claimant, or to the Policyholder for the claimant, the claim forms for filing proof of loss. If the claimant does not get these claim forms within 15 days after the Insurance Company receives notice of claim, he will be considered to have met the proof of loss requirements if he submits written proof of loss within 90 days after the date of loss. The proof must describe the occurrence, character and extent of the loss for which claim is made.

**PROOF OF LOSS** Written proof of loss must be given to the Insurance Company within 90 days after the date of the loss for which claim is made. If written proof of loss is not given in that time, the claim will not be invalidated or reduced if it is shown that written proof of loss was given as soon as was reasonably possible. Then, subject to the ... of continued Total Disability and of regular attendance ... a physician must ... given to the Insurance Company within ... days of such demand.

**PHYSICAL EXAMINATION** The Insurance Company ... at its own expense the examination of ... for whose claim ... pending as often as it may reasonably ...

... it ... will prejudge or has been ... or ... prior to the date on which ... for other proof ... will be ... to ... will be ... based on ... on which the claim is based ... ... after ... will ... after ... a ... which ...

**LIMITATIONS** ... before the end of ... ... as legal ... as usually ... unless the time is ... by law ... later than the last day on which ... proof of loss ... required ... no ... action may be ... after the ... of 3 years ...

**PAYMENT OF CLAIMS** ... this policy ... be paid ... to the ... If there is no ... named ... such ... will be paid ...

**BENEFICIARY** ... named ... in writing ... to the ... to ...

LONG TERM DISABILITY INCOME POLICY

## MISCELLANEOUS PROVISIONS

**INSURANCE DATA.** The Policyholder will give the Insurance Company all of the data that it needs to calculate the premium and all other data that it may reasonably require. Failure of the Policyholder to give this data will not void or continue an Employee's insurance. The Insurance Company has the right to examine the Policyholder's records relating to these benefits at any reasonable time while the policy is in effect. It has this same right until all rights and obligations under the policy are finally determined.

**MALE PRONOUN.** The male pronoun as used herein will be deemed to include the female.

**INCORRECT PREMIUM PAYMENT.** Premiums paid in error for a person who is not eligible to be insured, or for a person after his insurance has ceased, will be refunded without interest when requested by the Policyholder. This premium will not be refunded, however, for more than a 6 month period nor for any period before the last Anniversary Date.

12-MP-2

**ADMINISTRATION.** The Insurance Company will deal solely with the Policyholder who will be deemed the representative of each Employee. Any action taken by the Policyholder will be binding on the Employees.

12-MP-3

**NOT IN LIEU OF WORKERS' COMPENSATION.** The policy is not in lieu of and does not affect requirements for coverage under workers' compensation laws.

12-MP-4

LIFE INSURANCE COMPANY OF NORTH AMERICA

AMENDATORY RIDER

This rider amends the policy to which it is attached and replaces any previous rider as of the date first stated below.

SUBSIDIARY EMPLOYERS

Classes of employees of the employers listed below are eligible to be covered by this policy.

Kimberly Home Health Care, Inc.
Kansas City, MO

Kimberly Nurses/Meditest, Inc.
New Jersey

ABC Advertising Agency, Inc.
Kansas

Kimberly Health Care Personnel, Inc.
Canada

Kimberly Services of New York, Inc.
New York

Gold Coast South Home Health Agency, Inc.
Florida

No other policy provision or condition is changed in any way by this rider.

Effective date                                                        Part of Policy No.
August 1, 198_              at the hour stated in the policy          TL-6617
Issued To:
KIMBERLY SERVICES, INC.

TL-6833

LIFE INSURANCE COMPANY OF NORTH AMERICA
Philadelphia, Pennsylvania

We _____ INC. _____

whose main office address is __Overland Park, KS__

hereby apply to the Life Insurance Company of North America for Group Policy

No. __LK-6617__

We approve and accept the terms of this Group Policy.

This application is to be signed in duplicate. One part is to be attached to the Group Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Group Policy.

__KIMBERLY SERVICES, INC.__

(Full or Corporate Name of Applicant)

Signed at _____ By _____
                                              (Signature and Title)

On _____ Witness _____
         (To be signed by Licensed Resident Agent where required by law)

LM-1K59    (This Copy is to Remain Attached To The Policy)

LIFE INSURANCE COMPANY OF NORTH AMERICA
Philadelphia, Pennsylvania

We __KIMBERLY SERVICES, INC.__

whose main office address is __Overland Park, KS__

hereby apply to the Life Insurance Company of North America for Group Policy

No. __LK-6617__

We approve and accept the terms of this Group Policy.

This application is to be signed in duplicate. One part is to be attached to the Group Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Group Policy.

__KIMBERLY SERVICES, INC.__

(Full or Corporate Name of Applicant)

Signed at _____ By _____
                                              (Signature and Title)

On _____ Witness _____
         (To be signed by Licensed Resident Agent where required by law)

LM-1K59    (This Copy is to Remain Attached To The Policy)

LIFE INSURANCE COMPANY OF NORTH AMERICA

(Herein called the Company)

Amendment to be attached to and made a part of Group Accident and Sickness

Policy LK-6617, a contract between the Company and

KIMBERLY SERVICES, INC.

(herein called the Policyholder)

Effective July 1, 1989:

Employees of Practical Care Home Health a subsidiary to or affiliated with KIMBERLY
SERVICES, INC. shall be considered as employees of the Policyholder with respect to the
insurance provided by this group contract.

Effective November 1, 1989:

The Monthly Premium Rate as set forth on page LM-6N29 [PREMIUMS (Continued)], is
changed to:

MONTHLY PREMIUM RATE.  The premium will be determined at the rate of $.68 per month
for each $100. of Covered Payroll.

This Amendment is effective on (See Above).

It is agreed that this Amendment and the changes described above will be made a part of the
policy, but not unless the Company and the Policyholder have affixed hereto their respective
signatures.

FOR THE COMPANY:                          FOR THE POLICYHOLDER:

By  SPECIMEN                              By _____
                                               (Signature)

Registrar _____              Title _____

                                         Date _____

                                         Witness _____
                                         (To be signed by Licensed Resident
                                          Agent where required by law)

LG-5578
Amendment No. 2                LK-6617

Exhibit <u>B</u>

 **Lorraine Adell Harris**
Claim Manager




**CIGNA** Group Insurance
Life · Accident · Disability

June 6, 2006

Routing P-250
P.O. BOX 22325
Pittsburgh, PA 15222-0325
Telephone 1-800-238-2125,
x3139
Facsimile (412) 402-3542

**Ms. Gheri Gallagher**
**107 Rocca Drive**
**Fairfax, CA 94430**

RE:   **Claimant's Name:**          **Gheri Gallagher**
      **Date of Birth:**            **05/14/1948**
      **Policy Number:**            **LK 6617**
      **Policyholder:**             **Kimberly Services, Inc.**
      **Underwriting Company:**     **Life Insurance Company of North America**

Dear Ms. Gallagher:

This letter is in reference to your claim for Long Term Disability benefits through Life
Insurance Company of North America, Policy # LK 6617.

### GENERAL INFORMATION

To determine eligibility for continued benefits, we assessed how your conditions prevent your
ability to perform any occupation. Although the medical documentation references the
diagnoses of Chronic Pain Syndrome, Failed Back Syndrome, Degenerative Disc Disease-
lumbar spine, Occipital Nerve Compression, Major Depression, and Left Retinal Detachment,
it does not support limitations from these conditions preventing your return to gainful
employment.

This letter is intended to provide you with the details of our findings, including the Definition of
Disability, the medical and other information used to render our decision, and your appeal
rights.

### DEFINITION of DISABILITY

According to Kimberly Services, Inc. Long Term Disability policy:

> **TOTAL DISABILITY:** *"An Employee will be considered Totally Disabled, if because of
> Injury or Sickness, he is unable to perform all the essential duties of his occupation.*
>
> *After Monthly Benefits have been payable for 24 months, an Employee will be
> considered Totally Disabled only if, because of Injury or Sickness, he is unable to*

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are
provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance
Company of New York, and Connecticut General Life Insurance Company.



Gheri Gallagher
June 6, 2006
Page 2

*perform all the essential duties of any occupation he is or may reasonably become qualified based on his education, training or experience."*

## INFORMATION and/or MEDICAL REVIEWED

- On the Disability Questionnaire dated July 19, 2005, when asked to describe in your own words why you could not work in your own or in any occupation, you wrote "constant pain, headaches, need cervical traction several x day to control pain." You indicated that you attended to personal care needs, drove 10-20 miles, used personal computer 1-3x week, cooked, cleaned, shopped, did laundry, gardened, read, watched T.V., took short walks 3-4x a week, and went out to dinner with friends. You listing treating with Dr. Ray Seet and current medications were Valium, Oxycontin, Wellbutrin, Lexapro, Maxide, Tiazac, Testosterone, Progesterone, and HRT.

- On March 29, 2006, you returned my call and left a message advising in addition to Dr. Seet that you treated with Drs. Fu and Sowerby.

- On the Attending Physician's Statement dated July 19, 2005, Dr. Ray Seet listed diagnoses of Occipital Nerve Compression and Degenerative Disc Disease. Your subjective symptoms were headaches, neck and shoulder pain, and bilateral radiculitis. You were first seen May 2004 and last seen July 19, 2005 with visits every 2-3 months. The doctor noted you were permanently disabled with chronic pain syndrome from failed back surgery and depression.

- Dr. Ray Seet/general medicine completed the diagnosis specific letter on January 9, 2006 and listed diagnoses of Multi-level HNP-cervical spine, Bilateral Cervical Radiculitis, and Osteophytes at C4 and C5. Your current subjective complaints were posterior neck pain and stiffness, radiating pain into both shoulders, left retinal detachment, and persistent headaches. Current clinical findings were recurrent pain, neck tension, mixed headaches, chronic pain syndrome, and bilateral cervical radiculitis. The doctor circled your current level of functionality was Sedentary and Light work.

  On the Physical Abilities Assessment form dated January 10, 2006, Dr. Seet checked you could continuously reach overhead/at desk level/and below waist, perform fine manipulation and simple/firm grasping, push/pull up to 10 lbs., balance, stoop, and use lower extremities to operate foot controls. Also, you could frequently sit, stand, and walk. The doctor checked lifting/carrying, kneeling, crouching, and crawling were not applicable to the diagnoses. The assessment equated to Sedentary work capacity.

- Dr. Arthur Fu/retineal vitreous completed the diagnosis specific letter on May 4, 2006. The doctor listed a diagnosis of Retinal Detachment with a current subjective complaint of vision loss. Dr. Fu provided an estimated return to work date any occupation part-time or full-time of May 25, 2006.

Gheri Gallagher
June 6, 2006
Page 3



We received copies of medical records from October 24, 2005 – April 24, 2006.  On October 26, 2005, Dr. Fu performed a scleral buckle and a laser vitrectomy epi memb/endo on November 30, 2005. As of April 24, 2006, your vision was 20/20 *(right eye)* and 10/200 *(left eye)*. The doctor recommended to Dr. Stein that focus be placed on improving your vision and suggested a new refraction be tried first before considering cataract surgery. Dr. Fu stated "She did have a macula-off detachment for quite some time so it may be quite possible that her visual potential will be somewhat limited."

- Dr. Mervyn Stein/ophthalmology provided copies of medical records from October 24, 2005 – May 8, 2006. The only office note received was from October 24, 2005.

- On April 18, 2006, Dr. Sowerby left a message advising he only saw you twice for acute gastric problems, was not disabling you, and deferred to Dr. Seet for comment.

### TRANSFERABLE SKILLS ANALYSIS

A Transferable Skills Analysis (TSA) performed on February 7, 2006 used Sedentary work capacity as the medical basis. Also, taken into account was your self reported education and work history, and the completed Physical Abilities Assessment form by Dr. Seet.

The following (7) occupations identified met the requirements for transferability and took the most advantage of your skills, education, and abilities; as well as met the salary replacement requirements:

| *DESCRIPTION* | *DOT CODE* |
|---|---|
| *Claim Examiner* | *241.267-018* |
| *Coordinator, Volunteer Services* | *187.167-022* |
| *Director, Nursing Services* | *075.117-022* |
| *Eligibility Worker* | *195.267-010* |
| *Hospital-Admitting Clerk* | *205.362-018* |
| *Service Clerk* | *221.367-070* |
| *Director, Community-Health Nursing* | *075.117-014* |

### SUMMARY

On February 20, 2006, Dr. Seet was informed of the results from the Transferable Skills Analysis and asked to comment based on your current physical conditions if he felt you were capable of performing full-time Sedentary work and if not why. On March 22, 2006, the doctor signed off that he was in agreement with your ability to work full-time. This same question was posed to Dr. Stein on May 17, 2006 and on that day he signed off as well that he was in agreement with your ability to work full-time. Previously, on May 4, 2006, Dr. Fu advised you would be able to return to work full-time any occupation on May 25, 2006.

Since Drs. Seet, Stein, and Fu have all released you to perform full-time Sedentary work and a Transferable Skills Analysis identified several occupations that you are qualified to perform

Gheri Gallagher
June 6, 2006
Page 4



we have determined that you no longer meet the definition of Total Disability from any and all occupations and your claim has been closed.

Please be advised, on May 24, 2006, we issued your final Long Term Disability check in the amount of $1,872.00 for the period of May 1, 2006 through May 31, 2006.

## APPEAL RIGHTS

You may request review of this denial by writing to Life Insurance Company of North America representative signing this letter.

The written request for review must be sent within 180 days of receipt of this letter and state the reasons why you feel your claim should not have been denied. Please include any documentation, which you feel supports your claim. This can include the following:

- A letter explaining why you feel you are unable to perform any occupation on a full time basis.  This should include specific physical limitations, changes in daily activities/abilities, etc; and

- A copy of an Independent Medical Examination report from a qualified physician performed within the past year and/or

- A complete copy of office records from your physician(s) for the period of January 2006 to the present, including but not limited to, treatment/progress notes, reports/interpretations of all diagnostic tests *(i.e. X-rays, MRI's, CT Scans, labs, etc.)*, correspondence to and from physicians, and

- Any other pertinent information.

Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received.  If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter.  A final decision will be made no later than 90 days.

Please note that you have the right to bring legal action for benefits under ERISA section 502(a) if your appeal is denied.

We will of course, be available to discuss the position we have taken. Should you, however, wish to take this matter up with the California Department of Insurance Claims Services Bureau, it maintains a service division to investigate complaints at 300 S. Spring Street – 11th floor, Los Angeles, CA 90013. The California Department of Insurance can be reached, toll free at 1-800-927-4357 or 1-800-482-4TDDD within California or (213) 897-8921. Requests can be faxed to (213) 897-5961.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under

Gheri Gallagher
June 6, 2006
Page 5


the terms and conditions of the contract, whether or not specifically mentioned herein. Should you have any information, which would prove contrary to our findings, please submit it to us. We will be pleased to review any information you may wish to submit.


Sincerely,


Lorraine Adell Harris
Claim Manager
(412) 402-3139

**James Sharp**
Appeals Claim Manager



**CIGNA** Group Insurance
Life · Accident · Disability

May 25, 2007

Routing P250
P.O. Box 22325
Pittsburgh, PA 15219
Telephone 1-800-238-2125 ext. 3178
Facsimile 412-402-3222

Ms. Gheri Gallagher
107 Rocca Drive
Fairfax, CA 94430

**RE:**   **Claimant's Name:**          **Gheri Gallagher**
         **Policy Number:**            **LK 6617**
         **Account Name:**             **Kimberly Service, Incorporated**
         **Underwriting Company:**     **Life Insurance Company of North America**

Dear Ms. Gallagher:

This is in reference to your letter, and the additional medical information received, appealing the denial of your Long Term Disability claim, submitted under the terms of Kimberly Service, Incorporated's Long Term Disability policy. We have completed our review and must regretfully inform you that we are affirming the previous denials of your claim.

A review of your claim information documents that you were employed by Kimberly Service, Incorporated as a Director of Clinical Services. On October 6, 1989, you ceased active employment due to severe neck and right arm pain secondary to cervical disc injury and disease. Your claim was initially approved and paid from December 5, 1989 through May 31, 2006, at which time you were found to be no longer disabled under the terms of your policy.

As you are aware, the policy contains the following provision, Definition of Total Disability:

"An Employee will be considered Totally Disabled, if because of Injury or Sickness, he is unable to perform all the essential duties of his occupation.

After Monthly Benefits have been payable for 24 months, an Employee will be considered Totally Disabled only if, because of Injury or Sickness, he is unable to perform all the essential duties of any occupation for which he is, or may reasonably become, qualified based on his education, training or experience."

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by operating subsidiaries and contracted companies and not by CIGNA Corporation. Operating subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

May 25, 2007
Page 2

On June 6, 2006, you were advised that the medical documentation on file demonstrated you to have functionality within a sedentary demand level. A Transferable Skills Analysis performed on February 7, 2006, identified seven suitable positions within your skills, education, work history and wage replacement requirements. The results of the Transferable Skills Analysis were shared with Dr. Ray Seet, Dr. Arthur Fu and Dr. Mervyn Stein, all of whom agreed that you would be able to sustain full time employment. As a result, your claim was closed effective May 31, 2006.

Upon reviewing the denial, The Appeals Claim Manager affirmed the denial of your claim on November 15, 2006, opining that the available medical documentation failed to demonstrate significant documented clinical findings to support ongoing restrictions to preclude you from performing any occupation beyond May 31, 2006.

Your entire file, including the additional medical information submitted, was reviewed by the Life Insurance Company of North America ("LINA"), claims administrator for the policy, in its entirety without deference to prior reviews. For your appeal, the following new medical information was received and reviewed:

- December 14, 2006 Comprehensive Psychiatric Evaluation report
- Progress notes from Dr. Ray Seet dated January 3, 2007, January 31, 2007 and March 2, 2007
- February 20, 2007 Medical Report from Dr. Robert Blum
- Office note dated April 3, 2007 from Dr. Ray Seet

In reviewing the December 16, 2006 Comprehensive Psychiatric Evaluation report, Dr. Michael Zizmor acknowledged that you are not currently seeing a psychiatrist. While we value Dr. Zizmor's opinion as to your Mental Status as of December 14, 2006, this report is not relevant as to your cognitive status as of May 31, 2006. Furthermore, we have not been provided with any office records, therapy notes or Neuropsychological Examinations relevant to your cognitive status around May 31, 2006 to demonstrate a severe psychiatric functional impairment as of May 31, 2006.

To ensure an accurate interpretation of the physical medical information on file, your claim was reviewed by a Medical Director. Upon review of available medical documentation, the Medical Director opined that there are insufficient documented clinical findings to not support how you would be limited from performing full-time sedentary work as of June 1, 2006.

The Medical Director noted that while you have multiple physical conditions relating to your cervical spine, vision and chronic pain, your treating providers had released you to sedentary work. Both Dr. Fu and Dr. Stein have advised our office that you are not disabled from

May 25, 2007
Page 3

sedentary work based on your visual condition. In reviewing Dr. Seet's and Dr. Blum's medical reports, the Medical Director opined that the medical documentation on file fails to demonstrate how your range of motion and subjective pain complaints would preclude you from sedentary employment.

Please understand that we are not stating that you are not limited or restricted, however, we are stating that we have not received sufficient medical information to support a severe continuous condition of disability from any occupation beyond May 31, 2006.

In order for you to continue to be eligible for Long Term Disability benefits beyond May 31, 2006, you are required to be disabled from all the essential duties of any occupation. As stated above, we have no clinical findings to support a severity of ongoing impairment or loss of function to preclude you from performing any occupation beyond May 31, 2006. While your providers suggest that decreased range of motion, pain and depression preclude you from any occupation, we have not been provided with documented significant clinical evidence to support how this has limited you from any occupation since May 31, 2006.

At this point in time, you have exhausted all administrative levels of appeal and no further appeals will be considered.

Please note that you have a right to bring legal action regarding your claim under the ERISA section 502(a). You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local United States Department of Labor Office or your State Insurance Regulatory Agency.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your insurance booklet, certificate or coverage information available from your employer to determine if you are eligible for additional benefits. Upon written request, you may receive a copy of your claim file, free of charge.

Please contact our office at 1-800-238-2125 ext. 3178 should you have any questions.

Sincerely,



James Sharp
Appeals Claim Manager