ADRIENNE C. PUBLICOVER  (SBN 161432)
DENNIS J. RHODES  (SBN 168417)
WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
525 Market Street, 17th Floor
San Francisco, California  94105
Tel:    (415) 433-0990
Fax:    (415) 434-1370

Attorneys for Defendant
LIFE INSURANCE COMPANY
OF NORTH AMERICA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GHERI GALLAGHER,<br><br>       Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY<br>OF NORTH AMERICA and DOES 1 to 10,<br><br>       Defendants. | CASE NO.    CV07-05224 EDL<br><br>**DECLARATION OF DENNIS J. RHODES IN SUPPORT OF DEFENDANT LIFE INSURANCE COMPANY OF NORTHER AMERICA'S MOTION TO DISMISS [F.R.C.P. 12(b)(6)]**<br><br>Date:      November 27, 2007<br>Time:     9:00 a.m.<br>Location:   450 Golden Gate Avenue<br>             Courtroom E, 15th Floor<br>             San Francisco, CA<br>Judge:    Hon. Elizabeth D. Laporte<br><br>**Accompanying Documents**<br>1.   Notice of Motion and Motion to Dismiss;<br>2.   [Proposed] Order ; and<br>3.   Memorandum of Points and Authorities |

I, Dennis J. Rhodes, declare as follows:

1.    I am an attorney at law duly licensed to practice before all of the courts of the State of

California and am admitted to practice in this Court.  I am Of Counsel with the law firm Wilson, Elser,

1  Moskowitz, Edelman & Dicker LLP, attorneys for defendant Life Insurance Company of North

2  America ("LINA") in the above-captioned matter.  Prior to the filing of LINA's Motion to Dismiss, I

3  reviewed the Court's electronic docket maintained in this matter and the pleadings filed in this matter

4  prior to the date that LINA removed the action.  As such, I am familiar with the pleadings and

5  documents filed by the parties in this action.

6      2.    I submit this declaration in support of LINA's Motion to Dismiss which is being filed

7  herewith.  I have personal knowledge of the facts described herein, except for those matters stated on

8  information and belief, and, if called upon to testify, can and will competently testify thereto.

9      3.    A true and correct copy of the Complaint is attached hereto as Exhibit A.

10     4.    A true and correct copy of the Notice of Removal with exhibits is attached hereto as

11 Exhibit B.

12     I declare under penalty of perjury under the laws of California and the United States of

13 America that the foregoing are true and correct statements.

14     Dated this 16th day of October, 2007 at San Francisco, California.

15

16                        Dennis J. Rhodes  .

17

18

19

20

21

22

23

24

25

26

27

28

---

                            2
          DECLARATION OF DENNIS J. RHODES IN SUPPORT OF
DEFENDANT LIFE INSURANCE COMPANY OF NORTHER AMERICA'S MOTION TO DISMISS
USDC NDCA Case #CV07-05224 EDL
307024.1

# CERTIFICATE OF SERVICE
*Gheri Gallagher v. Life Insurance Company of North America, et al.*
*USDC NDCA Case #CV07-05224 EDL*

I am a citizen of the United States. I am over the age of eighteen years and am not a party to the within cause. I am employed in the City and County of San Francisco, California and my business address is 525 California Street, 17th Floor, San Francisco, California 94105.

On this date I served the following document(s):

**DECLARATION OF DENNIS J. RHODES IN SUPPORT OF DEFENDANT LIFE INSURANCE COMPANY OF NORTHER AMERICA'S MOTION TO DISMISS**

on the parties identified below, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

 X : **By First Class Mail** -- I caused each such envelope, with first class postage thereon fully prepaid, to be deposited in a recognized place of deposit of the U.S. Mail in San Francisco, California, for collection to the office of the addressee following ordinary business practices.

 ☐ : **By Personal Service** – I caused each such envelope to be given to a courier messenger who personally delivered each such envelope to the office of the address.

 ☐ : **By Overnight Courier** – I caused each such envelope to be given to an overnight mail service at San Francisco, California, to be hand delivered to the office of the addressee on the next business day.

 ☐ : **Facsimile** – (Only where permitted. Must consult CCP § 1012.5 and California Rules of Court 2001-2011. Also consult FRCP Rule 5(e). Not currently authorized in N.D.C.A.)

Ryan A. Kent, Esq.
Attorney at Law
30 Mitchell Boulevard
San Rafael, CA 94903
Tel:   (415) 479-4356
Fax:   (415) 479-4358

*Attorney for Plaintiff*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

EXECUTED **October 16, 2007** at San Francisco, California.

_____
Nancy Ili

**DECLARATION OF DENNIS J. RHODES IN SUPPORT OF
DEFENDANT LIFE INSURANCE COMPANY OF NORTHER AMERICA'S MOTION TO DISMISS**
USDC NDCA Case #CV07-05224 EDL
307024.1

# Exhibit <u>A</u>

1  Ryan A. Kent (St. Bar # 169810)
   Attorney at Law
2  30 Mitchell Boulevard
   San Rafael, CA 94903
3  Telephone:   (415) 479-4356
   Fax:         (415) 479-4358
4
   Attorney for Plaintiff
5  GHERI GALLAGHER

**FILED**

SEP 1 0 2007

KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. Lucchesi, Deputy

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF MARIN

10                   UNLIMITED CIVIL JURISDICTION

11

12  GHERI GALLAGHER,                      )  No. CV 074296
                                          )
13             Plaintiff,                 )  COMPLAINT FOR DAMAGES
                                          )   1.  Breach of Contract
14  vs.                                   )   2.  Breach of Covenant of Good Faith and
                                          )       Fair Dealing
15  LIFE INSURANCE COMPANY OF NORTH       )
    AMERICA, and DOES 1 to 10,            )
16                                        )
               Defendants.                )
17                                        )
                                          )
18

19

20     Plaintiff GHERI GALLAGHER (hereinafter "Plaintiff") alleges as follows:

21     1.    Plaintiff is a natural person residing in Marin County, California.

22     2.    Defendant LIFE INSURANCE COMPANY OF NORTH AMERICA (hereinafter

23  "Defendant") is an insurer that is authorized to issue and deliver policies of disability insurance

24  in the State of California.

25     3.    Plaintiff is ignorant of the true names of defendants DOES 1 to 10 and has

26

27  therefore sued them by the foregoing fictitious names.  Plaintiff will amend this complaint to

28

COMPLAINT FOR DAMAGES
1

1  allege their true names and capacities when ascertained.  Plaintiff is informed and believes and

2  thereon alleges that each of the fictitiously named defendants is legally responsible in some

3  manner for the occurrences herein alleged and the resultant harm and damage to Plaintiff.

4

5      4.    Plaintiff is informed and believe and thereon allege that each of the defendants

6  was an agent and employee of each of the remaining defendants and in doing the things

7  hereinafter alleged was acting in the course and scope of such agency and employment.

8

9      5.    On or about July 5, 1988, Plaintiff was hired as a Director of Clinical Services by

10  Kimberly Services, Inc. in their San Rafael, California location.  At that time, plaintiff enrolled in

11  the group long term disability income insurance program provided to employees of Kimberly

12  Services, Inc. by Defendant, Group Policy No. LK-6617 (hereinafter "the Policy").

13

14      6.    As a full-time employee of Kimberly Services, Inc. enrolled in the group long

15  term disability income insurance program, Plaintiff is entitled to coverage under the Policy.  The

16  Policy provides as set forth below:

17      **TOTAL DISABILITY.**  An Employee will be considered Totally Disabled if

18      because of Injury or Sickness, he is unable to perform all the essential duties of

19
       his occupation.
20
       After Monthly Benefits have been payable for 24 months, an Employee will be
21
       considered Totally Disabled only if, because of Injury or Sickness, he is unable to
22
       perform all the essential duties of any occupation for which he is or may
23
       reasonably become qualified based on his education, training or experience.
24

25

26      7.    On October 6, 1989, Plaintiff ceased active employment due to severe neck,

27  shoulder and right arm pain/radiculopathy and headaches secondary to cervical disc injury and

28  disease resulting in three herniated cervical discs.

11618914.tif - 9/10/2007 1:46:39 PM

8.      On December 12, 1989, Plaintiff submitted a claim for long term disability income insurance benefits under the Policy to Defendant in accordance with the terms of the Policy. Plaintiff's claim for benefits included an Attending Physician's Statement of Disability signed by Robert S. Blum, M.D.

9.      Defendant approved Plaintiff's claim and commenced providing long term disability income insurance benefits to Plaintiff in accordance with the terms and provisions of the Policy, effective December 5, 1989.

10.     Defendant periodically requested and was provided documentation of Plaintiff's ongoing total disability. The documentation provided to Defendant verifying Plaintiff's ongoing total disability included, but was not limited to, the following:

a.      Report from Robert S. Blum, M.D. dated March 7, 1990.

b.      Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated December 19, 1990.

c.      Report from Robert S. Blum, M.D. dated October 2, 1991.

d.      Attending Physician's Statement of Disability signed by Robert S. Blum, M.D. on March 10, 1993.

e.      Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated November 16, 1993.

f.      IME Report of Michael A. Kurtz, M.D. dated February 7, 1996.

g.      Report from Robert S. Blum, M.D. dated July 31, 1996.

h.      Report from Robert S. Blum, M.D. dated February 27, 1997.

COMPLAINT FOR DAMAGES
3

i. Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated May 8, 1997.

j. Report from Robert S. Blum, M.D. dated February 11, 1998.

k. Medical Assessment of Ability to Do work Related Activities (Physical) from Robert S. Blum, M.D. dated February 11, 1998.

l. Letter from Robert S. Blum, M.D. dated March 12, 1998.

m. Report from Robert S. Blum, M.D. dated January 6, 1999.

n. Physical Ability Assessment, Form 1 (Musculoskeletal) from Robert S. Blum, M.D. dated March 30, 2000.

o. Report from Robert S. Blum, M.D. dated March 30, 2000.

p. Report from Robert S. Blum, M.D. dated November 20, 2000.

q. Report from Robert S. Blum, M.D. dated November 30, 2000

r. Report from Robert S. Blum, M.D. dated January 24, 2001.

s. Report from Robert S. Blum, M.D. dated September 5, 2001.

t. Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated January 30, 2002.

u. Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated August 4, 2003.

v. Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated September 23, 2004.

w. Supplementary Claim Form with verification of disability by Ray Seet, M.D. dated July 19, 2005.

11618914.tif - 9/10/2007 1:46:39 PM

11.    Based upon the ongoing documentation verifying Plaintiff's ongoing total disability, as set forth above, Defendant continued to provide long term disability income insurance benefits to Plaintiff in accordance with the terms and provisions of the Policy during the ensuing 15 and 1/2 year period, December 5, 1989, through May 31, 2006.

12.    Ray Seet, M.D. submitted to Defendant a Current Level of Functionality Assessment dated January 9, 2006, indicating that Plaintiff could perform sedentary and light work. However, Dr. Seet also indicated that Plaintiff was not going to be able to return to work on a full or part-time basis. Dr. Seet also submitted a Physical Ability Assessment dated January 10, 2006, indicating Plaintiff was capable of various physical activities.

13.    On March 22, 2006, Ray Seet, M.D. mistakenly executed a form submitted to him by Defendant indicating his agreement that Plaintiff was able to perform full-time sedentary work.

14.    On June 6, 2006, Defendant notified Plaintiff that based upon the above referenced information provided by Ray Seet, M.D., it had determined Plaintiff was capable of full-time sedentary work and therefore did not meet the definition of Total Disability set forth in the Policy. The letter set forth Plaintiff's rights appeal the decision and the procedures to follow.

15.    Plaintiff timely appealed Defendant's termination of her long term disability benefits. The additional supporting documentation submitted on behalf of Plaintiff included, but was not limited to, the following:

a.    Letter from Ray Seet, M.D. dated June 13, 2006, explaining why the decision to terminate Plaintiff's disability benefits was not medically justified and asking Defendant to reconsider.

COMPLAINT FOR DAMAGES
5

11618914.fff - 9/10/2007 1:46:39 PM

b.      Report from Robert S. Blum, M.D. dated August 23, 2006 confirming that

Plaintiff was permanently disabled and unable to perform full-time sedentary

work.

c.      Letter from Ray Seet, M.D. dated September 22, 2006, explaining that he made a

mistake when he executed the form he submitted to Defendant on March 22,

2006, and verified that Plaintiff was unable to perform full time sedentary work.

16.     On November 15, 2006, Defendant sent Plaintiff a letter denying Plaintiff's appeal

and affirming its decision to terminate her long term disability benefits. Defendant characterized

Plaintiff's condition as "complaints of pain ... in the absence of clinical findings."

17.     Defendant failed to explain how it could justify its decision in light of the

September 22, 2006 letter from Dr. Seet wherein he explained that he made a mistake when he

executed the form he submitted to Defendant on March 22, 2006, and verified that Plaintiff was

unable to perform full time sedentary work. Defendant also failed to explain how it could justify

its decision in light of the documented clinical findings in Plaintiff's file, including those set

forth in Dr. Seet's Current Level of Functionality Assessment dated January 9, 2006.

Defendant's denial letter set forth Plaintiff's rights to again appeal the decision and the

procedures to follow.

18.     Plaintiff timely appealed Defendant's decision to terminate her long term

disability benefits. The additional supporting documentation submitted on behalf of Plaintiff

included the following:

a.      Progress Notes from Dr. Seet dated January 3, 31 and March 2, 2007.

COMPLAINT FOR DAMAGES
6

b.    Report from Robert S. Blum, M.D. dated February 20, 2007. This report included

MRI evidence of central canal stenosis at C4/5 with flattening of the anterior

cervical cord and moderate right and moderate severe left foraminal narrowing,

and at 5/6 central canal stenosis with flattening of the anterior cervical cord and

severe bilateral foraminal narrowing, and C6/7 central canal stenosis with

effacement of the anterior subarachnoid space and severe bilateral foraminal

narrowing.

19.    On May 25, 2007, Defendant sent Plaintiff a letter again denying Plaintiff's appeal

and affirming its decision to terminate her long term disability benefits. Defendant contended

that Plaintiff's treating providers had released her to sedentary work. Defendant failed to explain

how it could reach such a conclusion in light of the September 22, 2006 letter from Dr. Seet

wherein he explained that he made a mistake when he executed the form submitted to him by

Defendant on March 22, 2006, and verified that Plaintiff was unable to perform full time

sedentary work. Defendant contended that Plaintiff's documented medical findings consisted

solely of "range of motion and subjective pain complaints." Defendant failed to explain how it

could make such a characterization of Plaintiff's documented medical findings in light of the

documented medical findings in Plaintiff's file, including MRI evidence of central canal stenosis

at C4/5 with flattening of the anterior cervical cord and moderate right and moderate severe left

foraminal narrowing, and at 5/6 central canal stenosis with flattening of the anterior cervical cord

and severe bilateral foraminal narrowing, and C6/7 central canal stenosis with effacement of the

anterior subarachnoid space and severe bilateral foraminal narrowing. Defendant failed to

explain how Plaintiff could have been disabled and unable to perform full time sedentary work

during the period December 5, 1989 through May 31, 2006, due to a permanent and

11618914.tif - 9/10/2007 1:46:39 PM

1  progressively worsening condition, and then somehow improve to the point where she was able

2  to perform full time sedentary work subsequent to May 31, 2006.  Defendant advised that

3  Plaintiff had exhausted all administrative levels of appeal and no further appeals would be

4
5  considered.

6                        FIRST CAUSE OF ACTION
                         BREACH OF CONTRACT
7                           (All defendants.)

8       20.    Plaintiff refers to and incorporate by reference all preceding paragraphs of this
9
10 complaint.

11      21.    Defendant's denial of Plaintiff's claim and terminating her ongoing long term

12 disability income benefits constituted a breach of its obligations under the Policy, in that Plaintiff

13 submitted documented medical findings establishing that Plaintiff continued to be Totally

14
15 Disabled under the terms of the Policy.

16      22.    As a direct and proximate result of Defendant's breach of its obligations under the

17 Policy, Plaintiff has sustained damage as follows:

18      a.    Plaintiff has not received the ongoing long term disability income benefits she
19
20            was entitled to under the Policy for the period subsequent to May 31, 2006.

21      b.    Plaintiff has been required to retain attorneys to pursue her claim for benefits
22
            under the Policy.
23
24      c.    Plaintiff suffered severe emotional distress.

25 //

26 //

27 //

28

COMPLAINT FOR DAMAGES
8

11618914.tif - 9/10/2007 1:46:39 PM

## SECOND CAUSE OF ACTION
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
(All defendants.)

23.    Plaintiffs refer to and incorporate by reference all preceding paragraphs of this complaint.

24.    Defendant's denial of benefits to Plaintiff was done without reasonable cause. Defendant had no legitimate or arguable reason for refusing to pay Plaintiff's valid claim. Defendant consistently refused to consider evidence that supported Plaintiff's claim.  In denying Plaintiff's claim, Defendant acted willfully, fraudulently, intentionally, and in bad faith with the purpose of avoiding the payment due Plaintiff under the terms of the Policy.  Defendant's intentional refusal to pay Plaintiff's valid claim was a breach of the implied covenant of good faith and fair dealing and operated to unreasonably deprive Plaintiff of the benefits of the Policy.

25.    Examples of Defendant's consistent refusal to consider evidence that supported Plaintiff's claim, includes, but is not limited to, the following:

a.    In its denial letter of November 15, 2006, Defendant, without a reasonable basis in fact, characterized Plaintiff's condition as "complaints of pain ... in the absence of clinical findings." Defendant failed to explain how it could justify this characterization in light of the documented clinical findings in Plaintiff's file, including those set forth in Dr. Seet's Current Level of Functionality Assessment dated January 9, 2006.

b.    In its denial letter of November 15, 2006, Defendant failed to explain how it could justify its determination Plaintiff was capable of full time sedentary work in light of the September 22, 2006 letter from Dr. Seet wherein he explained that he made

11618914.tif · 9/10/2007 1.46.39 PM

1    a mistake when he executed the form he submitted to Defendant on March 22,

2    2006, and verified that Plaintiff was unable to perform full time sedentary work.

3

4    c.    In its denial letter of May 25, 2007, Defendant contended that Plaintiff's treating

5    providers had released her to sedentary work.  Defendant failed to explain how it

6    could reach such a conclusion in light of the September 22, 2006 letter from Dr.

7    Seet wherein he explained that he made a mistake when he executed the form he

8
submitted to Defendant on March 22, 2006, and verified that Plaintiff was unable
9
10    to perform full time sedentary work.

11    d.    In its denial letter of May 25, 2007, Defendant characterized Plaintiff's

12    documented medical findings as consisting solely of "range of motion and

13
subjective pain complaints."  Defendant failed to explain how it could make such
14
15    a characterization of Plaintiff's documented medical findings in light of the

16    documented medical findings in her file, including MRI evidence of central canal

17    stenosis at C4/5 with flattening of the anterior cervical cord and moderate right

18    and moderate severe left foraminal narrowing, and at 5/6 central canal stenosis

19
with flattening of the anterior cervical cord and severe bilateral foraminal
20
21    narrowing, and C6/7 central canal stenosis with effacement of the anterior

22    subarachnoid space and severe bilateral foraminal narrowing.

23    e.    Defendant failed to explain how Plaintiff could have been disabled and unable to
24
perform full time sedentary work during the period December 5, 1989 through
25
26    May 31, 2006, due to a permanent and progressively worsening condition, and

27    then somehow miraculously improve to the point where she was able to perform

28    full time sedentary work subsequent to May 31, 2006.

11618914.tif - 9/10/2007 1:46:39 PM

26.    Defendant's conduct in intentionally refusing to pay Plaintiff's valid claim, as set forth above, was malicious, fraudulent, oppressive, and otherwise reflected a conscious disregard of Plaintiff's rights.  Plaintiff is therefore entitled to recover exemplary damages.

27.    As a direct and proximate result of Defendant's bad faith breach of its obligations under the Policy, Plaintiff has sustained damage as follows:

d.    Plaintiff has not received the ongoing long term disability income benefits she was entitled to under the Policy for the period subsequent to May 31, 2006.

e.    Plaintiff has been required to retain attorneys to pursue her claim for benefits under the Policy.

f.    Plaintiff suffered severe emotional distress.

**WHEREFORE** Plaintiff prays for judgment against defendants as follows:

1.    For general and compensatory damages for economic loss suffered as a proximate result of Defendant's bad faith refusal to pay Plaintiff's valid claim in an amount according to proof;

2.    For general and compensatory damages for severe emotional distress suffered as a proximate result of Defendant's bad faith refusal to pay Plaintiff's valid claim in an amount according to proof;

3.    For prejudgment interest in an amount to be proven at time of trial;

4.    For attorneys fees incurred in obtaining Policy benefits as provided by law;

5.    For punitive damages pursuant to Civil Code §3294;

6.    For costs of suit; and

7.    For such other relief as is fair, just and equitable.

11618914.tif - 9/10/2007 1:46:39 PM

Exhibit <u>B</u>

1   ADRIENNE C. PUBLICOVER (SBN 161432)
    DENNIS J. RHODES (SBN 168417)
2   WILSON, ELSER, MOSKOWITZ,
        EDELMAN & DICKER LLP
3   525 Market Street, 17th Floor
    San Francisco, California 94105
4   Tel:   (415) 433-0990
    Fax:   (415) 434-1370
5
6   Attorneys for Defendant
    LIFE INSURANCE COMPANY
7   OF NORTH AMERICA
8
9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12   GHERI GALLAGHER,                      ) CASE NO. 07  5224
                                           )
13            Plaintiff,                    ) NOTICE OF REMOVAL OF CIVIL
                                           ) ACTION UNDER 28 U.S.C. § 1441
14       v.                                 ) PURSUANT TO 28 U.S.C. § 1332
                                           ) (DIVERSITY) and 29 U.S.C. § 1332(e)(1)
15   LIFE INSURANCE COMPANY OF              ) (FEDERAL QUESTION – ERISA)
     NORTH AMERICA and DOES 1 to 10,       )
16                                          )
              Defendants.                   ) Action Filed   :    September 10, 2007
17                                          )

18       **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

19       **PLEASE TAKE NOTICE** that defendant Life Insurance Company of North America

20   ("LINA"), hereby removes this action to the United States District Court for the Northern District of

21   California, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, on the grounds that there is complete

22   diversity of citizenship between plaintiff Gheri Gallagher ("plaintiff"), a citizen of the State of

23   California and LINA, a citizen of Pennsylvania as it is incorporated in the State of Pennsylvania with

24   its principal place of business in Philadelphia, Pennsylvania; and the amount in controversy exceeds

25   the jurisdictional minimum of $75,000.00, exclusive of interest or costs, as set forth in section

26

27                                              1
     NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441 PURSUANT TO 28 U.S.C. § 1332
28       (DIVERSITY) and 29 U.S.C. § 1332(e)(1) (FEDERAL QUESTION – ERISA)
     USDC NDCA Case #
     305976.1

1    1332(a); that pursuant to 28 U.S.C. sections 1331, 1441(b). LINA also removes on the grounds that

2    the action arises under the Employee Retirement Income Security Act of 1974, 29 USC § 1001 et seq.

3    ("ERISA") and therefore is removable to this Court under 28 U.S.C. section 1441(b); and that the

4    foregoing facts were true at the time that the Complaint in this matter was filed and remain true as of

5    the date of the filing of this notice of removal, as more fully set forth below.

6        1.    On September 10, 2007, plaintiff filed in the Superior Court of California, in and for

7    the County of Marin, a civil action entitled *Gheri Gallagher v. Life Insurance Company of North*

8    *America and does 1 through 10, inclusive, Defendants*, bearing Case No. CV074296 ("the

9    Complaint.")

10        2.    The Summons was dated September 12, 2007. A copy of the summons and complaint

11    was served on LINA on September 12, 2007. A true, correct, and complete copy of the summons and

12    complaint served on LINA is attached hereto as Exhibit "1". Each and every allegation stated in the

13    Complaint is incorporated by reference into this notice for purposes of this removal.

14        3.    LINA has filed this notice of removal within 30 days after receipt of a copy of any

15    pleading, motion, order or other paper from which it was first ascertained that the case is one which is

16    removable, specifically the Complaint.

17        4.    The other defendants named in the Complaint are merely fictitious parties identified as

18    Does 1 through 10 whose citizenship shall be disregarded for purposes of this removal. *Fristos v.*

19    *Reynolds Metal Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

20        5.    As demonstrated by the following, this action is a civil action over which this Court has

21    original jurisdiction under 28 U.S.C. §1332, and is one which may be removed to this Court by LINA

22    pursuant to the provisions of 28 U.S.C. §1441, in that it is a civil action between citizens of different

23    states, the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs, this

24    was true at the time of the filing of the Complaint and this remains true as of the time of the filing of

25    this notice.

26

27
NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441 PURSUANT TO 28 U.S.C. § 1332
(DIVERSITY) and 29 U.S.C. § 1332(e)(1) (FEDERAL QUESTION – ERISA)

28   USDC NDCA Case #
     305976.1

# DIVERSITY JURISDICTION

### A.    The Diversity of the Parties

(1)    Plaintiff was at the time of the filing of this action, and still is, a citizen of the State of California residing in Marin County California. (The Complaint, par. 1.)

(2)    LINA was, at the time of the filing of this action, and still is, a citizen of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. A vast majority of LINA's business activities take place in Pennsylvania as LINA's headquarters is located in Pennsylvania. A majority of LINA's employees are located in Pennsylvania.

### B.    The Amount in Controversy

This Court's jurisdictional minimum, an amount in controversy in excess of $75,000.00, exclusive of interest and costs, was satisfied at the time of the filing of this action, and still is satisfied, based on the following:

(1)    Plaintiff alleges in the Complaint claims for relief for breach of contract and breach of the covenant of good faith and fair dealing ("bad faith"). (The Complaint, pars. 1-27.    Without admitting the facts alleged in the Complaint, and solely for the purpose of demonstrating diversity jurisdiction, LINA incorporates by reference, as if they were fully set forth below, the facts and allegations alleged by Plaintiff in paragraphs 1 through 27 of the Complaint. Plaintiff alleges that she was covered under group disability insurance policy no. LK-6617 issued by LINA ("the Policy") to Kimberly Services, Inc. (The Complaint, par. 5.) (A copy of the Policy is attached to the Declaration of Annie Hong ("Hong Decl.") as Exhibit A. Ms. Hong's declaration is attached hereto as Exhibit 2.) Plaintiff further alleges that, she is totally disabled "due to severe neck, shoulder and right arm pain/radiculopathy and headaches secondary to cervical disc injury and disease resulting in three herniated cervical discs." (The Complaint, pars. 7, 21.) Plaintiff further alleges that she began receiving a monthly disability benefit on or about December 5, 1989.    Plaintiff received a monthly benefit of $1,872.00. (Hong Decl., par. 3.) Plaintiff alleges that LINA denied plaintiff further benefits

---

3

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441 PURSUANT TO 28 U.S.C. § 1332 (DIVERSITY) and 29 U.S.C. § 1332(e)(1) (FEDERAL QUESTION – ERISA)

USDC NDCA Case #
305976.1

1    under the Policy on or about June 6, 2006. (*Id.* at par. 14.) Plaintiff claims that this denial of the

2    claim breached the terms of the Policy and constitutes bad faith. (*Id* at pars. 20-27.) Plaintiff claims

3    that defendants, and each of them, wrongfully and in bad faith withheld benefits due plaintiff under the

4    Policy. (*Id.* at par. 24.)

5          (2)     Plaintiff claims as contract damages disability benefits under the Policy subsequent to

6    May 31, 2006. (The Complaint, par. 27. and Prayer.) Based on plaintiff's monthly benefit amount of

7    $1,872.00, and not considering any defenses that defendants may raise, including the affirmative

8    defense of offsets under the Policy, this amounts to $31,824.00 in contract damages from the denial of

9    the claim to the filing of this notice in October 2007 ($1,872.00 x 17 months).

10         (3)     In addition to contract damages, if plaintiff proves her allegations of bad faith, and

11    defendants' affirmative defenses fail, she can claim compensatory damages in the form of future

12    policy benefits as part of her general tort damages. *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809,

13    824, 169 Cal.Rptr. 691, 699, fn. 7 (1979). Plaintiff alleges general and special damages, according to

14    proof at trial, under her claim for relief for bad faith. (Prayer, par. 2.) The Policy provides benefits to

15    Plaintiff's 65th birthday. (Page 14 of Ex. A to the Hong Decl., attached hereto as Exhibit 2.)

16    Plaintiff's month of birth is May 1949. (Hong Decl., par. 2.) Therefore, Plaintiff will be 65 years old

17    in May 2014. This represents 7 years and 2 months of benefits from the date of this notice of removal

18    to plaintiff's 65th birthday. Without taking into consideration defendants' affirmative defenses to this

19    claim, including that it must be reduced to present value and that all appropriate offsets must be

20    considered, this amounts to approximately $160,992.00 in damages for future benefits under the

21    Policy ($1872 x 86 mos. [7 years + 2 mos.]). Therefore, the possible damages for breach of contract

22    and bad faith, not considering defendants' affirmative defenses, are approximately $192,816.

23         (4)     Plaintiff further alleges that the denial of benefits caused her to experience emotional

24    severe emotional distress. (The Complaint, par. 27; Prayer, par. 2.) She also claims that she is entitled

25    to punitive damages for the alleged willful, wanton, malicious and oppressive refusal to pay the

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441 PURSUANT TO 28 U.S.C. § 1332
(DIVERSITY) and 29 U.S.C. § 1332(e)(1) (FEDERAL QUESTION – ERISA)
USDC NDCA Case #
305976.1

1   benefits owed to her under the Policy. (*Id* at par. 26; Prayer, par. 5.) "Where both actual and punitive

2   damages are recoverable under a complaint each must be considered to the extent claimed in

3   determining jurisdictional amount." *Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240, 64

4   S.Ct. 5, 88 L.Ed. 15 (1943). The court properly considers plaintiff's punitive damage claim against

5   defendants in computing the amount necessary for federal jurisdiction because plaintiff can and does

6   allege a claim for punitive damages in her claim for relief for bad faith. (The Complaint, pars. 26 &

7   27; Prayer, par. 5.) See California Civil Code § 3294.

8        (5)     Finally, plaintiff also alleges pursuant to her claim for relief for bad faith, that she had

9   to secure the services of an attorney to recover the disability benefits owed to her under the Policy.

10  (The Complaint, par. 27.) She alleges an attorney's fee damage claim in paragraph 4 of the prayer of

11  the Complaint. Attorneys' fees incurred in obtaining promised contract benefits are recoverable as an

12  item of tort damage in an action for insurance bad faith. *Brandt v. Superior Court*, 37 Cal.3d 813, 210

13  Cal.Rptr. 211 (1985). If attorneys' fees are recoverable by plaintiff, the fee claim is included in

14  determining the amount in controversy. *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir.

15  1982). It is reasonable to expect that plaintiff will claim as attorney's fees are at least $25,000.00.

16       As demonstrated above, plaintiff's damage claims far exceed this Court's jurisdictional limit.

17  The possible damages for breach of contract and bad faith, not considering defendants' affirmative

18  defenses, including possible offsets and discounting to present value, is approximately $192,816.00.

19  An attorney's fee claim takes this amount over $217,000.00. In that there is diversity of citizenship,

20  and the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and that this is

21  true now as well as at the time the Complaint were filed in this matter, removal of this matter to the

22  United States District Court for the Northern District of California is proper.

23                          **SUBJECT MATTER JURISDICTION**

24       1.     This Court has jurisdiction under 28 U.S.C. section 1441(b) for matters arising under

25  ERISA. ERISA completely preempts all of plaintiffs' state law claims. Plaintiffs' claims are, in fact,

26

27
    NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441 PURSUANT TO 28 U.S.C. § 1332
    (DIVERSITY) and 29 U.S.C. § 1332(e)(1) (FEDERAL QUESTION – ERISA)

28  USDC NDCA Case #
    305976.1

1   claims arising under federal law and thus are removable to federal court. *Metropolitan Life Ins. Co.*

2   *v. Taylor*, 481 US 58, 66, 107 S.Ct. 1542, 1547 (1987).   This complete preemption operates to confer

3   original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on

4   the face of the complaint. *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3rd. Cir. 1999). Based on

5   the facts set forth below, which were true at the time the Complaint was filed and remain true as of

6   the date of filing of this Notice of Removal, this action is governed by ERISA and therefore properly

7   removed to this Court.

8       2.    Plaintiff alleges that she is entitled to long term disability benefits under the group

9   policy issued by LINA to her employer Kimberly Services, Inc. (The Complaint, pars. 5 & 6.)   The

10  Policy is fully incorporated into this notice as if it were fully set fort below.   The Policy provided

11  group life insurance coverage to the employees of Kimberly Services, Inc.   The enforcement of rights

12  under this policy is governed concurrently by federal law and ERISA. *Pilot Life Ins. Co. v. Dedeaux,*

13  481 U.S. 41 (1987). (*See also, Stuart v. Unum* 217 F.3d 1145, 1150 (9th Cir. 2000), a group insurance

14  contract between an insurer and an insured constitutes evidence of an ERISA plan.)

15      3.    Moreover, as alleged in the Complaint, plaintiff qualified for coverage under the Policy

16  by virtue of her employment with Kimberly Services, Inc.  (The Complaint, par. 5.)  Federal law under

17  ERISA controls actions brought to recover benefits and to enforce rights under employee benefit

18  plans. 29 U.S.C. §1132(e)(1); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987).  Removal of such

19  cases to federal court is proper. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58 (1987).

20      4.    Finally, the claim for benefits that is the subject of this matter was adjudicated under

21  ERISA. Plaintiffs was advised that the Policy that is the subject of this matter is governed by ERISA

22  and was advised of the rights to appeal and the time frames that govern an ERISA claim both on June

23  6, 2006 and again on May 25, 2007. (Hong Decl., Exhibit B.)

24      5.    All of these facts stated herein and particularly in the Complaint, in  paragraphs 5

25  through 6, and Exhibits 1 and 2 attached hereto,  establish that this matter is governed the Employee

26

27  NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441 PURSUANT TO 28 U.S.C. § 1332
    (DIVERSITY) and 29 U.S.C. § 1332(e)(1) (FEDERAL QUESTION – ERISA)

28  USDC NDCA Case #
    305976.1

1  Retirement Income Security Act of 1974, 29 USC § 1001 et seq. and therefore is removable to this

2  Court under 28 U.S.C. section 1441(b).

3                                    **CONCLUSION**

4        1.      Therefore, LINA files this Notice of Removal of this action from the Superior Court of

5  the State of California in and for the County of Marin, in which it is now pending, to the United States

6  District Court for the Northern District of California.

7        2.      True and correct copies of all process, pleadings, orders and documents pertaining to

8  this action (and which have been served upon LINA, or which were served or filed by LINA in this

9  action) are attached hereto as Exhibit "1." LINA is informed and believes, and thereon alleges, that

10  other than the pleadings attached to this notice of removal, there have been no further pleadings,

11  process, or orders filed in this action.

12       3.      A Notice to State Court And To Adverse Party is being filed with the Superior Court of

13  the State of California in and for the County of Marin, and will be served on plaintiff.

14       WHEREFORE, LINA prays that this action be removed from the Superior Court of the State

15  of California in and for the County of Marin to the United States District Court for the Northern

16  District of California.

17

18  Dated: October 11, 2007                WILSON, ELSER, MOSKOWITZ,
                                           EDELMAN & DICKER LLP
19

20

21                            By:  _____
                                   ADRIENNE C. PUBLICOVER
22                                 DENNIS J. RHODES
                                   Attorneys for Defendant
23                                 LIFE INSURANCE COMPANY
                                   OF NORTH AMERICA

24

25

26

                                            7
27  **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441 PURSUANT TO 28 U.S.C. § 1332**
    **(DIVERSITY) and 29 U.S.C. § 1332(e)(1) (FEDERAL QUESTION – ERISA)**
28  USDC NDCA Case #
    305976.1

1

2

### CERTIFICATE OF SERVICE
*Gheri Gallagher v. Life Insurance Company of North America, et al.*

3

     I am a citizen of the United States. I am over the age of eighteen years and am not a party to the within cause. I am employed in the City and County of San Francisco, California and my business address is 525 California Street, 17th Floor, San Francisco, California 94105.

4

5

     On this date I served the following document(s):

6

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441 PURSUANT TO 28 U.S.C. § 1332 (DIVERSITY) and 29 U.S.C. § 1332(e)(1) (FEDERAL QUESTION – ERISA)**

7

8

on the parties identified below, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

9

  _X_ : **By First Class Mail** -- I caused each such envelope, with first class postage thereon fully prepaid, to be deposited in a recognized place of deposit of the U.S. Mail in San Francisco, California, for collection to the office of the addressee following ordinary business practices.

10

11

  _☐_: **By Personal Service** – I caused each such envelope to be given to a courier messenger who personally delivered each such envelope to the office of the address.

12

13

  _☐_: **By Overnight Courier** – I caused each such envelope to be given to an overnight mail service at San Francisco, California, to be hand delivered to the office of the addressee on the next business day.

14

15

  ☐ : **Facsimile** – (Only where permitted. Must consult CCP § 1012.5 and California Rules of Court 2001-2011. Also consult FRCP Rule 5(e). Not currently authorized in N.D.C.A.)

16

17

18

Ryan A. Kent, Esq.
Attorney at Law
30 Mitchell Boulevard
San Rafael, CA 94903
Tel:   (415) 479-4356
Fax:  (415) 479-4358

19

*Attorney for Plaintiff GHERI GALLAGHER*

20

21

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

22

     EXECUTED **October 11, 2007** at San Francisco, California.

23

24

Nancy LP

25

26

27

8
NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441 PURSUANT TO 28 U.S.C. § 1332 (DIVERSITY) and 29 U.S.C. § 1332(e)(1) (FEDERAL QUESTION – ERISA)

28

USDC NDCA Case #
305976.1

# Exhibit 1

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
09/12/2007
Log Number 512584656

TO:     Michael A James
        Cigna Companies
        TL21A, Two Liberty Place
        1601 Chestnut Street
        Philadelphia, PA, 19192

RECEIVED

SEP 1 3 2007

GROUP LITIGATION DEPT.

M. James

SEP 1 3 ⸺

RE:     **Process Served in California**

FOR:    Life Insurance Company of North America (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Gheri Gallagher, Pltf. vs. Life Insurance Company of North America, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Superior Court, County of Marin, CA<br>Case # CV074296 |
| **NATURE OF ACTION:** | Insurance Litigation - Summons & Complaint - Disability: Policy benefits claimed for long term disability |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/12/2007 at 15:00 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Ryan A. Kent<br>Attorney at Law<br>30 Mitchell Boulevard<br>San Rafael, CA, 94903<br>415-479-4356 |

9/13/07

not a Pre-Lit

| | |
|---|---|
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Priority |
| **SIGNED:** | C T Corporation System |
| **PER:** | Dianne Christman |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA, 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of 1 / BF

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of the package only, not of its contents.

09/10/2007 13:50 4154794358 KENT PAGE 02

9/12/07 @3PM SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO)*
Life Insurance Company of North America,
and DOES 1 to 10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
Gheri Gallagher

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**

SEP 1 0 2007

KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
*By: C. Lucchesi, Deputy*

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Marin County Superior Court | CASE NUMBER:<br>*(Número del Caso):*<br>CIV 074296 |

3501 Civic Center Drvie      San Rafael, CA 94903
The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Ryan A. Kent                  Attorney at Law
30 Mitchell Boulevard         San Rafael, CA 94903
(415) 479-4356

DATE:    SEP 1 0 2007    KIM TURNER    Clerk, by    C. LUCCHESI     , Deputy
*(Fecha)*                                     *(Secretario)*                       *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

(SEAL)

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* LIFE INSURANCE COMPANY OF NORTH AMERICA
    under: ☑ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*                                Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]
*Martin Dean's Essential Forms ™*

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

Gallagher

11612915 fif - 9/10/2007 1:49:24 PM

1  Ryan A. Kent (St. Bar # 169810)
   Attorney at Law
2  30 Mitchell Boulevard
   San Rafael, CA 94903
3  Telephone:     (415) 479-4356
   Fax:           (415) 479-4358
4
   Attorney for Plaintiff
5  GHERI GALLAGHER

**FILED**

SEP 1 0 2007

KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. Lucchesi, Deputy

6

7

8                SUPERIOR COURT OF CALIFORNIA

9            IN AND FOR THE COUNTY OF MARIN

10              UNLIMITED CIVIL JURISDICTION

11

12  GHERI GALLAGHER,                         No. CV 074296

13        Plaintiff,                         COMPLAINT FOR DAMAGES
                                              1.  Breach of Contract
14  vs.                                       2.  Breach of Covenant of Good Faith and
                                                  Fair Dealing
15  LIFE INSURANCE COMPANY OF NORTH
    AMERICA, and DOES 1 to 10,
16
          Defendants.
17

18

19

20      Plaintiff GHERI GALLAGHER (hereinafter "Plaintiff") alleges as follows:

21          1.    Plaintiff is a natural person residing in Marin County, California.

22          2.    Defendant LIFE INSURANCE COMPANY OF NORTH AMERICA (hereinafter

23  "Defendant") is an insurer that is authorized to issue and deliver policies of disability insurance

24  in the State of California.

25          3.    Plaintiff is ignorant of the true names of defendants DOES 1 to 10 and has

26

27  therefore sued them by the foregoing fictitious names.  Plaintiff will amend this complaint to

28

11618914.tif - 9/10/2007 1:46:39 PM

1  allege their true names and capacities when ascertained.  Plaintiff is informed and believes and

2  thereon alleges that each of the fictitiously named defendants is legally responsible in some

3  manner for the occurrences herein alleged and the resultant harm and damage to Plaintiff.

4

5       4.     Plaintiff is informed and believe and thereon allege that each of the defendants

6  was an agent and employee of each of the remaining defendants and in doing the things

7  hereinafter alleged was acting in the course and scope of such agency and employment.

8

9       5.     On or about July 5, 1988, Plaintiff was hired as a Director of Clinical Services by

10  Kimberly Services, Inc. in their San Rafael, California location.  At that time, plaintiff enrolled in

11  the group long term disability income insurance program provided to employees of Kimberly

12  Services, Inc. by Defendant, Group Policy No. LK-6617 (hereinafter "the Policy").

13

14      6.     As a full-time employee of Kimberly Services, Inc. enrolled in the group long

15  term disability income insurance program, Plaintiff is entitled to coverage under the Policy.  The

16  Policy provides as set forth below:

17      TOTAL DISABILITY.  An Employee will be considered Totally Disabled if

18      because of Injury or Sickness, he is unable to perform all the essential duties of

19      his occupation.

20

21      After Monthly Benefits have been payable for 24 months, an Employee will be

22      considered Totally Disabled only if, because of Injury or Sickness, he is unable to

23      perform all the essential duties of any occupation for which he is or may

24      reasonably become qualified based on his education, training or experience.

25

26      7.     On October 6, 1989, Plaintiff ceased active employment due to severe neck,

27  shoulder and right arm pain/radiculopathy and headaches secondary to cervical disc injury and

28  disease resulting in three herniated cervical discs.

11618914.tif - 9/10/2007 1:46:39 PM

8.    On December 12, 1989, Plaintiff submitted a claim for long term disability income insurance benefits under the Policy to Defendant in accordance with the terms of the Policy. Plaintiff's claim for benefits included an Attending Physician's Statement of Disability signed by Robert S. Blum, M.D.

9.    Defendant approved Plaintiff's claim and commenced providing long term disability income insurance benefits to Plaintiff in accordance with the terms and provisions of the Policy, effective December 5, 1989.

10.    Defendant periodically requested and was provided documentation of Plaintiff's ongoing total disability. The documentation provided to Defendant verifying Plaintiff's ongoing total disability included, but was not limited to, the following:

a.    Report from Robert S. Blum, M.D. dated March 7, 1990.

b.    Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated December 19, 1990.

c.    Report from Robert S. Blum, M.D. dated October 2, 1991.

d.    Attending Physician's Statement of Disability signed by Robert S. Blum, M.D. on March 10, 1993.

e.    Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated November 16, 1993.

f.    IME Report of Michael A. Kurtz, M.D. dated February 7, 1996.

g.    Report from Robert S. Blum, M.D. dated July 31, 1996.

h.    Report from Robert S. Blum, M.D. dated February 27, 1997.

COMPLAINT FOR DAMAGES
3

i.   Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated May 8, 1997.

j.   Report from Robert S. Blum, M.D. dated February 11, 1998.

k.   Medical Assessment of Ability to Do work Related Activities (Physical) from Robert S. Blum, M.D. dated February 11, 1998.

l.   Letter from Robert S. Blum, M.D. dated March 12, 1998.

m.   Report from Robert S. Blum, M.D. dated January 6, 1999.

n.   Physical Ability Assessment, Form 1 (Musculoskeletal) from Robert S. Blum, M.D. dated March 30, 2000.

o.   Report from Robert S. Blum, M.D. dated March 30, 2000.

p.   Report from Robert S. Blum, M.D. dated November 20, 2000.

q.   Report from Robert S. Blum, M.D. dated November 30, 2000

r.   Report from Robert S. Blum, M.D. dated January 24, 2001.

s.   Report from Robert S. Blum, M.D. dated September 5, 2001.

t.   Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated January 30, 2002.

u.   Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated August 4, 2003.

v.   Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated September 23, 2004.

w.   Supplementary Claim Form with verification of disability by Ray Seet, M.D. dated July 19, 2005.

COMPLAINT FOR DAMAGES
4

11618914.tif - 9/10/2007 1:46:39 PM

11.    Based upon the ongoing documentation verifying Plaintiff's ongoing total disability, as set forth above, Defendant continued to provide long term disability income insurance benefits to Plaintiff in accordance with the terms and provisions of the Policy during the ensuing 15 and 1/2 year period, December 5, 1989, through May 31, 2006.

12.    Ray Seet, M.D. submitted to Defendant a Current Level of Functionality Assessment dated January 9, 2006, indicating that Plaintiff could perform sedentary and light work.  However, Dr. Seet also indicated that Plaintiff was not going to be able to return to work on a full or part-time basis.  Dr. Seet also submitted a Physical Ability Assessment dated January 10, 2006, indicating Plaintiff was capable of various physical activities.

13.    On March 22, 2006, Ray Seet, M.D. mistakenly executed a form submitted to him by Defendant indicating his agreement that Plaintiff was able to perform full-time sedentary work.

14.    On June 6, 2006, Defendant notified Plaintiff that based upon the above referenced information provided by Ray Seet, M.D., it had determined Plaintiff was capable of full-time sedentary work and therefore did not meet the definition of Total Disability set forth in the Policy.  The letter set forth Plaintiff's rights appeal the decision and the procedures to follow.

15.    Plaintiff timely appealed Defendant's termination of her long term disability benefits.  The additional supporting documentation submitted on behalf of Plaintiff included, but was not limited to, the following:

a.    Letter from Ray Seet, M.D. dated June 13, 2006, explaining why the decision to terminate Plaintiff's disability benefits was not medically justified and asking Defendant to reconsider.

COMPLAINT FOR DAMAGES
5

11618914.6 - 9/10/2007 1:46:39 PM

b.      Report from Robert S. Blum, M.D. dated August 23, 2006 confirming that

Plaintiff was permanently disabled and unable to perform full-time sedentary

work.

c.      Letter from Ray Seet, M.D. dated September 22, 2006, explaining that he made a

mistake when he executed the form he submitted to Defendant on March 22,

2006, and verified that Plaintiff was unable to perform full time sedentary work.

16.     On November 15, 2006, Defendant sent Plaintiff a letter denying Plaintiff's appeal

and affirming its decision to terminate her long term disability benefits. Defendant characterized

Plaintiff's condition as "complaints of pain ... in the absence of clinical findings."

17.     Defendant failed to explain how it could justify its decision in light of the

September 22, 2006 letter from Dr. Seet wherein he explained that he made a mistake when he

executed the form he submitted to Defendant on March 22, 2006, and verified that Plaintiff was

unable to perform full time sedentary work. Defendant also failed to explain how it could justify

its decision in light of the documented clinical findings in Plaintiff's file, including those set

forth in Dr. Seet's Current Level of Functionality Assessment dated January 9, 2006.

Defendant's denial letter set forth Plaintiff's rights to again appeal the decision and the

procedures to follow.

18.     Plaintiff timely appealed Defendant's decision to terminate her long term

disability benefits. The additional supporting documentation submitted on behalf of Plaintiff

included the following:

a.      Progress Notes from Dr. Seet dated January 3, 31 and March 2, 2007.

COMPLAINT FOR DAMAGES
6

11618014 HI - 01102007 1 46 00 DU

b.    Report from Robert S. Blum, M.D. dated February 20, 2007.  This report included

MRI evidence of central canal stenosis at C4/5 with flattening of the anterior

cervical cord and moderate right and moderate severe left foraminal narrowing,

and at 5/6 central canal stenosis with flattening of the anterior cervical cord and

severe bilateral foraminal narrowing, and C6/7 central canal stenosis with

effacement of the anterior subarachnoid space and severe bilateral foraminal

narrowing.

19.    On May 25, 2007, Defendant sent Plaintiff a letter again denying Plaintiff's appeal

and affirming its decision to terminate her long term disability benefits.  Defendant contended

that Plaintiff's treating providers had released her to sedentary work.  Defendant failed to explain

how it could reach such a conclusion in light of the September 22, 2006 letter from Dr. Seet

wherein he explained that he made a mistake when he executed the form submitted to him by

Defendant on March 22, 2006, and verified that Plaintiff was unable to perform full time

sedentary work.  Defendant contended that Plaintiff's documented medical findings consisted

solely of "range of motion and subjective pain complaints."  Defendant failed to explain how it

could make such a characterization of Plaintiff's documented medical findings in light of the

documented medical findings in Plaintiff's file, including MRI evidence of central canal stenosis

at C4/5 with flattening of the anterior cervical cord and moderate right and moderate severe left

foraminal narrowing, and at 5/6 central canal stenosis with flattening of the anterior cervical cord

and severe bilateral foraminal narrowing, and C6/7 central canal stenosis with effacement of the

anterior subarachnoid space and severe bilateral foraminal narrowing.  Defendant failed to

explain how Plaintiff could have been disabled and unable to perform full time sedentary work

during the period December 5, 1989 through May 31, 2006, due to a permanent and

11618914.tif - 9/10/2007 1:46:39 PM

1    progressively worsening condition, and then somehow improve to the point where she was able

2    to perform full time sedentary work subsequent to May 31, 2006.  Defendant advised that

3    Plaintiff had exhausted all administrative levels of appeal and no further appeals would be

4    considered.

5

6                                **FIRST CAUSE OF ACTION**
                                 **BREACH OF CONTRACT**
7                                     (All defendants.)

8        20.    Plaintiff refers to and incorporate by reference all preceding paragraphs of this

9
10   complaint.

11       21.    Defendant's denial of Plaintiff's claim and terminating her ongoing long term

12   disability income benefits constituted a breach of its obligations under the Policy, in that Plaintiff

13   submitted documented medical findings establishing that Plaintiff continued to be Totally

14
15   Disabled under the terms of the Policy.

16       22.    As a direct and proximate result of Defendant's breach of its obligations under the

17   Policy, Plaintiff has sustained damage as follows:

18       a.    Plaintiff has not received the ongoing long term disability income benefits she
19
20             was entitled to under the Policy for the period subsequent to May 31, 2006.

21       b.    Plaintiff has been required to retain attorneys to pursue her claim for benefits
22             under the Policy.

23
24       c.    Plaintiff suffered severe emotional distress.

25   //

26   //

27   //

28

11618914.tif - 9/10/2007 1:46:39 PM

## SECOND CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (All defendants.)

23.    Plaintiffs refer to and incorporate by reference all preceding paragraphs of this complaint.

24.    Defendant's denial of benefits to Plaintiff was done without reasonable cause. Defendant had no legitimate or arguable reason for refusing to pay Plaintiff's valid claim. Defendant consistently refused to consider evidence that supported Plaintiff's claim.  In denying Plaintiff's claim, Defendant acted willfully, fraudulently, intentionally, and in bad faith with the purpose of avoiding the payment due Plaintiff under the terms of the Policy.  Defendant's intentional refusal to pay Plaintiff's valid claim was a breach of the implied covenant of good faith and fair dealing and operated to unreasonably deprive Plaintiff of the benefits of the Policy.

25.    Examples of Defendant's consistent refusal to consider evidence that supported Plaintiff's claim, includes, but is not limited to, the following:

a.    In its denial letter of November 15, 2006, Defendant, without a reasonable basis in fact, characterized Plaintiff's condition as "complaints of pain … in the absence of clinical findings." Defendant failed to explain how it could justify this characterization in light of the documented clinical findings in Plaintiff's file, including those set forth in Dr. Seet's Current Level of Functionality Assessment dated January 9, 2006.

b.    In its denial letter of November 15, 2006, Defendant failed to explain how it could justify its determination Plaintiff was capable of full time sedentary work in light of the September 22, 2006 letter from Dr. Seet wherein he explained that he made

11618914.tif - 9/10/2007 1:46:39 PM

1    a mistake when he executed the form he submitted to Defendant on March 22,

2    2006, and verified that Plaintiff was unable to perform full time sedentary work.

3

4    c.    In its denial letter of May 25, 2007, Defendant contended that Plaintiff's treating

5    providers had released her to sedentary work.  Defendant failed to explain how it

6    could reach such a conclusion in light of the September 22, 2006 letter from Dr.

7    Scet wherein he explained that he made a mistake when he executed the form he

8    submitted to Defendant on March 22, 2006, and verified that Plaintiff was unable

9

10   to perform full time sedentary work.

11   d.    In its denial letter of May 25, 2007, Defendant characterized Plaintiff's

12   documented medical findings as consisting solely of "range of motion and

13   subjective pain complaints." Defendant failed to explain how it could make such

14   a characterization of Plaintiff's documented medical findings in light of the

15

16   documented medical findings in her file, including MRI evidence of central canal

17   stenosis at C4/5 with flattening of the anterior cervical cord and moderate right

18   and moderate severe left foraminal narrowing, and at 5/6 central canal stenosis

19   with flattening of the anterior cervical cord and severe bilateral foraminal

20   narrowing, and C6/7 central canal stenosis with effacement of the anterior

21   subarachnoid space and severe bilateral foraminal narrowing.

22

23   e.    Defendant failed to explain how Plaintiff could have been disabled and unable to

24   perform full time sedentary work during the period December 5, 1989 through

25   May 31, 2006, due to a permanent and progressively worsening condition, and

26   then somehow miraculously improve to the point where she was able to perform

27   full time sedentary work subsequent to May 31, 2006.

28

COMPLAINT FOR DAMAGES
10

11618914.tif - 9/10/2007 1:46:39 PM

26.    Defendant's conduct in intentionally refusing to pay Plaintiff's valid claim, as set forth above, was malicious, fraudulent, oppressive, and otherwise reflected a conscious disregard of Plaintiff's rights.  Plaintiff is therefore entitled to recover exemplary damages.

27.    As a direct and proximate result of Defendant's bad faith breach of its obligations under the Policy, Plaintiff has sustained damage as follows:

d.    Plaintiff has not received the ongoing long term disability income benefits she was entitled to under the Policy for the period subsequent to May 31, 2006.

e.    Plaintiff has been required to retain attorneys to pursue her claim for benefits under the Policy.

f.    Plaintiff suffered severe emotional distress.

**WHEREFORE** Plaintiff prays for judgment against defendants as follows:

1.    For general and compensatory damages for economic loss suffered as a proximate result of Defendant's bad faith refusal to pay Plaintiff's valid claim in an amount according to proof;

2.    For general and compensatory damages for severe emotional distress suffered as a proximate result of Defendant's bad faith refusal to pay Plaintiff's valid claim in an amount according to proof;

3.    For prejudgment interest in an amount to be proven at time of trial;

4.    For attorneys fees incurred in obtaining Policy benefits as provided by law;

5.    For punitive damages pursuant to Civil Code §3294;

6.    For costs of suit; and

7.    For such other relief as is fair, just and equitable.

# Exhibit 2

1   ADRIENNE C. PUBLICOVER  (SBN 161432)
    DENNIS J. RHODES  (SBN 168417)
2   WILSON, ELSER, MOSKOWITZ,
        EDELMAN & DICKER LLP
3   525 Market Street, 17th Floor
    San Francisco, California  94105
4   Tel:    (415) 433-0990
    Fax:    (415) 434-1370
5
6   Attorneys for Defendant
    LIFE INSURANCE COMPANY
7   OF NORTH AMERICA

8

9                       UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11

12  GHERI GALLAGHER,                    )   CASE NO.
                                        )
13              Plaintiff,              )   DECLARATION OF ANNIE HONG IN
                                        )   SUPPORT OF NOTICE OF
14        v.                            )   REMOVAL OF CIVIL ACTION
                                        )   UNDER 28 U.S.C. § 1441 PURSUANT
15  LIFE INSURANCE COMPANY OF NORTH     )   TO 28 U.S.C. § 1332 (DIVERSITY) and
    AMERICA and DOES 1 to 10,           )   29 U.S.C. § 1332(e)(1) (FEDERAL
16                                      )   QUESTION – ERISA)
                Defendants.             )
17                                      )   Action Filed   :      September 10, 2007

18

19

20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────
                            1
          DECLARATION OF ANNIE HONG IN SUPPORT OF NOTICE OF REMOVAL
305998.1

1

2      I, Annie Hong, declare:

3      I am a Senior Operations Representative for Life Insurance Company of North America

4  ("LINA"). As such, I have personal knowledge of the facts set forth below, and if called upon to

5  testify under oath in this matter, I could and would testify to the following:

6      1.      Attached hereto, as Exhibit A, is a true and correct copy of the Group Disability

7  Policy ("the Policy") that is the subject of this matter.

8      2.      Attached hereto as Exhibit B, are true and correct copies of the letters sent to

9  plaintiff on June 6, 2006 and May 25, 2007, advising her that her rights to appeal and the time

10 frames relating to her claim are governed by ERISA.

11     3.      I have reviewed documents in the claim file pertaining to the disability claim by

12 plaintiff Gheri Gallagher. These documents state that her date of birth is in May 1948.  In

13 addition, the monthly benefit Ms. Gallagher was receiving under the Policy was $1,872.00.

14

15     I declare under penalty of perjury, under the laws of the United States of America, that

16 the foregoing is true and correct.

17

18 Executed this  _11_  day of October 2007 at _Glendale_ , California.

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ANNIE HONG IN SUPPORT OF NOTICE OF REMOVAL

305998.1

# Exhibit A



LIFE INSURANCE COMPANY OF NORTH AMERICA
1600 ARCH STREET, PHILADELPHIA, PA. 19101
A STOCK INSURANCE COMPANY

**GROUP
LONG TERM DISABILITY
INCOME POLICY**

(Non-Participating)

Group Policy No. LK-6617

Policy Delivered In: Kansas

Policy Effective Date: August 1, 1986

Policy Anniversary Date: August 1

Premium Due Dates: August 21, 1986 and the last day of each calendar month thereafter.

This is a contract between us, the Life Insurance Company of North America, and you,

KIMBERLY SERVICES, INC.
8500 West 110th Street
Overland Park, KS. 66210

(the Policyholder).

In return for your application, and for the payment of premiums as set forth in this policy, we agree to pay the benefits described in this policy. These benefits are subject to all of the terms of this policy, including any riders, endorsements, and amendments.

This policy goes into effect on the Policy Effective Date, 12:01 a.m. at your address. The policy will stay in force as long as the premium is paid, until terminated by you or us.

This contract shall be governed by the laws of the state in which it is delivered.

IN WITNESS WHEREOF, we have signed this policy at Philadelphia, PA.

Registrar

# LONG TERM DISABILITY INCOME POLICY

## CONTENTS

I.  BENEFITS                                                        PAGE

    Benefit Waiting Period and Benefit Amount                    7
    Insuring Provisions                                          6
    Payment of Benefits                                         11
    Schedule                                                     7

II.  PREMIUMS

    Calculation of Premiums and Rate                             9
    Changes in Premium Rates                                     9
    Due Dates                                                    9
    Grace Period                                                10
    Payment of Premiums                                          9
    Waiver of Premium                                            6

III.  OTHER PROVISIONS

    Cancellation of Policy                                      10
    Certificate                                                 12
    Claims, Forms, Notice of Claim                              12
    Definitions                                                  3
    Effective Date of Insurance                                  5
    Eligibility of Insurance                                     4
    Extension of Benefits after Cancellation                     6
    Termination of Insurance                                     4

This policy includes the following attached forms on date of issue:

## DEFINITIONS

**EMPLOYER.** The term Employer means the Policyholder and all Affiliated Employers shown in the "Affiliated or Subsidiary Employers" rider.

**EMPLOYEE.** The term Employee means a full-time employee of the employer, but does not include employees who are part-time or temporary or who normally work less than a full week for the employer.

**ACTIVE SERVICE.** An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if he is performing in the usual way all of the regular duties of his work for the employer at the Employer's or at some location to which the Employer's business requires him to travel. An Employee will be deemed in Active Service on a day which is not a scheduled or holiday work days only if he was in Active Service on the preceding scheduled work day.

**INJURY.** The term injury means an accidental bodily injury.

**SICKNESS.** The term Sickness means a physical or mental illness. It also includes pregnancy.

**RETIREMENT PLAN.** The term Retirement Plan means any defined benefit plan or defined contribution plan (including a profit sharing plan) sponsored by the Employer. It does not include: (1) an individual deferred compensation plan; (2) a profit sharing or any other retirement or savings plan that is funded with a defined benefit or defined contribution pension plan; (3) an employee savings plan including a thrift, stock option or stock bonus plan, an individual retirement account or 401 (k) plan.

**REHABILITATION.** An Employee will be considered engaged in Rehabilitation if he is disabled and returning to work for wage or profit in a manner approved by the Insurance Company.

LONG TERM DISABILITY INCOME POLICY

## DEFINITIONS (Continued)

BASIC EARNINGS. The term Basic Earnings means the Employees rate of pay reported by the Employer. It does not include overtime, bonus, additional compensation or pay for more than 40 hours a week.

For an Employee who is paid wholly or in part by commissions, the term Basic Earnings will also include commissions based on an average f the commissions paid by the Employer for the 24 months immediately precedi g the onset of Total Disability. If such Employee was not in the employ of t e Employer during the entire preceding 24 month period, his commissions will be based on an average of the total number of months he was so employed by the Policyholder.

Basic Earnings are determined initially on the date the Employee becomes insured. A change in the amount of Basic Earnings will be considered effective on th. date of the change. If the Employee is not in Active Service on that day, no increase in Basic Earnings will be considered effective until he returns to Active Service for one full day. In no event will an increase in an Employee's Basic Earnings be considered effective if it occurs:

    (1) during separate periods of Total Disability which are considered one period under the Successive Periods of Disability provision; or

    (2) during a Benefit Waiting Period.

TOTAL DISABILITY.  An Employee will be considered Totally Disabled if because of Injury or Sickness, he is unable to perform all the essential duties of his occupation.

After Monthly Benefits have been payable for 24 months, an Employee will be considered Totally Disabled only if, because of Injury or Sickness, he is unable to perform all the essential duties of any occupation for which he is or may reasonably become qualified based on his education, training or experience.

PARTIAL DISABILITY.  An Employee will be considered partially disabled if because of Injury or Sickness, he is unable to perform all the essential duties of his own occupation on a full time basis. But is:

    (1) performing at least one of the essential duties of his own occupation or another occupation on a part time or full time basis; and

    (2) now earning at least 20% less per month than his indexed prior earnings.

An Employee will not be deemed Totally Disabled for any period of time during which he is partially disabled.

# LONG TERM DISABILITY INCOME POLICY

## ELIGIBILITY FOR EMPLOYEE INSURANCE

Each Employee in one of the Classes of Eligible Employees shown below will become eligible for Employee Insurance on the day he completes the Waiting Period, if any. An Employee who was previously insured and whose insurance ceased must satisfy the New Employee Group Waiting Period to become insured again. If the insurance on an Employee ceased because he was no longer employed in a Class of Eligible Employees, he is not required to satisfy any Waiting Period if he again becomes a member of a Class of Eligible Employees within one year after his insurance ceased.

**INITIAL EMPLOYEE GROUP.** The Initial Employee Group is made up of Employees in the employ of an Employer on the Participation Date of that Employer.

**NEW EMPLOYEE GROUP.** The New Employee Group is made up of Employees whose employment with an Employer starts after the Participation Date of that Employer.

**WAITING PERIOD**

    Initial Employee Group:
        None

    New Employee Group:
        On the first day of the month following one continuous month(s) of service
        with the Employer

## CLASSES OF ELIGIBLE EMPLOYEES

All active full time permanent salaried, non-union employees of the Policyholder over age 18 regularly working a minimum of 24 hours per week.

LONG TERM DISABILITY INCOME POLICY

## EFFECTIVE DATE OF EMPLOYEE INSURANCE

Each Employee requests to be insured for Employee Insurance only by signing a payroll deduction form approved by the Policyholder and the Insurance Company. The effective date of his insurance depends upon the date on which the Employee elects the insurance.

    (1) If he elects Employee Insurance on or before the date he becomes eligible, his insurance will become effective on the date he becomes eligible.

    (2) If he elects Employee Insurance within 31 days after he becomes eligible, his insurance will become effective on the date of election.

    (3) If he elects Employee Insurance more than 31 days after he becomes eligible his insurance will become effective on the date the Insurance Company agrees in writing to insure him.

    (4) If his Employee Insurance ceases because he cancelled his payroll deduction, and he again elects to be insured, his insurance will become effective on the date the Insurance Company agrees in writing to insure him.

Under the circumstances described in items 3 and 4, the Insurance Company may require the Employee to submit evidence of good health acceptable to the Insurance Company at his own expense before it agrees to insure him.

If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will become effective on the date he returns to Active Service.

S-ED-3

LONG TERM DISABILITY INCOME POLICY

## TERMINATION OF INSURANCE

The _____ Employee will cease on the earliest date below:

- e last _____ Employee ceases to be in a Class of Eligible Employees or ceases qu_____ as an Employee;

- e last day for which the Employee has made a required premium contribution __ the insurance;

- the date the policy is cancelled unless the Employe_ is totally disabled on that date;

(4)    the date the Employee's Active Service ends, except as set forth below.

- ( )    If the Employee's Active Service ends due to Total Disability for which Monthly Benefits are or may become payable, the insurance will continue while that Total Disability continues during the Benefit Waiting Period and thereafter but only for as long as Monthly Benefits are payable.

- (b)    If the Employee returns to Active Service in a Class of Eligible Employees as soon as Total Disability ceases, the insurance will be reinstated when the Policyholder pays the premium for him.

(5)    If the Employer insures his employee as a member of a trade association or an insurance trust fund, on the date that the Employer no longer participates.

## WAIVER OF PREMIUM

Premium for an Employee will be waived while Monthly Benefits are payable to him.

## EXTENSION OF BENEFITS AFTER CANCELLATION

Payment of Monthly Benefits will not be affected by cancellation of this policy as long as the Total Disability begins while this policy is in force.

6-TWL-2

## LONG TERM DISABILITY INCOME POLICY

## CONVERSION PRIVILEGE

**HOW AND WHEN TO CONVERT.** When an Employee's Long Term Disability Insurance under this policy ceases, he may be insured under a group policy providing converted Long Term Disability benefits (called Converted Insurance) only if he: (1) is Entitled to Convert, and (2) applies in writing and pays the first premium for Converted Insurance to the Insurance Company within either of the following periods of time after the day his insurance under this policy ceases:

(a) within 31 days without evidence of good health; or

(b) after 31 days but not more than 62 days, with evidence of good health.

**ENTITLED TO CONVERT.** An Employee is Entitled to Convert Long Term Disability Insurance only if:

(1) he has been insured for at least 12 consecutive months under this policy or under this and a prior Long Term Disability group policy issued to the Policyholder; and

(2) his insurance under this policy ceased because he was no longer in Active Service because of resignation, involuntary termination, layoff or an uninsured leave of absence.

**NOT ENTITLED TO CONVERT.** An Employee is not Entitled to Convert if:

(1) he is no longer in a Class of Eligible Employees;

(2) he has attained age __;

(3) he has retired;

(4) he is not in Active Service because of disability;

(5) this policy is cancelled for any reason.

**CONVERTED INSURANCE.** Converted Insurance will be provided under the plan of benefits offered by the Insurance Company at the time the first premium is received.

A certificate under the group converted policy will be issued to the Employee describing his benefits. Converted Insurance will take effect on: (a) the day after the Employee's insurance under this policy ceases; or (b) in the case of an Employee required to submit evidence of good health, the day the Insurance Company accepts the evidence. The premium on the day it takes effect will be based on the class of risk, (b) and/or (c) benefits.

The Insurance Company or certificate will provide to the Employee other details of the available converted benefits.

LONG TERM DISABILITY INCOME POLICY

### SCHEDULE

BENEFIT WAITING PERIOD.  60 days of continuous Total Disability.

A period of Total Disability will be considered continuous even if the disabled Employee temporarily returns to work for up to a total of 10 days during the Benefit Waiting Period.  The Benefit Waiting Period will be extended by the number of days the Employee temporarily returned to work.

MONTHLY BENEFIT.  The Monthly Benefit for any month is *% of the Employee's Monthly Basic Earnings at the time he becomes Totally Disabled, rounded to the nearer dollar up to a maximum of $5,000. and reduced by the amount of all Other Benefits for that month.

The Monthly Benefits will not be less than $75., regardless of any reductions shown in this schedule.  Monthly Benefits will be pro-rated if payable for any period less than a month.

  *60% of the first $5,000.
  1*, plus 40% of the excess.

  7-WPB-1

# LONG TERM DISABILITY INCOME POLICY

## SCHEDULE (Continued)

OTHER BENEFITS which may be included:

(1) any amounts which the Employee or his dependents receive on account of his disability under:

    (a) any group or franchise insurance or similar plan for persons in a group;

    (b) the Canada and Quebec Pension Plans;

    (c) any local, state, provincial or federal government disability or retirement plan or law;

    (d) any salary or wage continuance plan of the Employer;

    (e) the Jones Act, or any workers' compensation, occupational disease or similar law including all permanent as well as temporary disability benefits;

    (f) any work loss provision in the mandatory part of any "No-Fault" auto insurance policy;

(2) any benefits which the Employee receives (or is assumed to receive*) under the Federal Social Security Act on his own behalf;

(3) any benefits which the Employee receives (or is assumed to receive*) on behalf of his dependents; or which his dependents receive on account of the Employee's receipt (or assumed receipt*) under the Federal Social Security Act; and

(4) any retirement benefits which an Employee receives under a Retirement Plan sponsored by the Employer.

*See the Assumed Receipt of Benefits provision.

OTHER INSURANCE. If there is other Group Disability insurance which:
    a) applies to the same claim for Total Disability; and
    b) contains the same or similar provision for reduction because of other Benefits;

this policy shall be liable for its pro rata share of the total claim.

"Pro rata share" means the proportion of the total benefit from the amount payable under one policy, in the absence of any other insurance, bears to the total applicable benefit payable under such policies.

LONG TERM DISABILITY INCOME POLICY

## SCHEDULE (Continued)

PARTIAL DISABILITY BENEFIT

The monthly benefit for any month during which the Employee is partially disabled will be based on the following formula:

$$\frac{\text{Loss of Monthly Earnings}}{\text{Prior Monthly Earnings}} \times \frac{\text{Monthly Benefit}}{\text{for Total Disability}} = \frac{\text{Partial Disability}}{\text{Monthly Benefit}}$$

"Prior Monthly Earnings" means the Employee's indexed Basic Earnings earned from his own occupation during the Months just prior to the period of Total Disability which preceded the Partial Disability for which claim is being made.

Indexed "Prior Monthly Earnings" means the Prior Monthly Earnings, as defined, adjusted by (1) the annual percentage determined by the Cost of Living provision, if included in the policy; or (2) 10 compounded each year.

"Loss of Monthly Earnings" means the Employee's indexed Prior Monthly Earnings minus the Employee's monthly earnings received while partially disabled.  This difference must be at least 20% of his Prior Monthly Earnings to be deemed a loss.

"Monthly Benefit for Total Disability" means the unindexed Monthly Benefit reduced by unindexed Other Benefits.  This monthly Benefit for Total Disability is not adjusted by the Cost of Living provision or by any other percentile adjustment.

Partial Disability must start within 31 days after the end of a period of Total Disability for which the Employee is eligible to be paid a Monthly Benefit.

A Partial Monthly Benefit will not be paid for any period of time during which:
(1) the Employee is not under the care and treatment of a Doctor; (2) he is being paid under the policy for Total Disability; (3) his loss of earnings is not solely due to disability; and (4) his loss of earnings is not at least 20% of his prior earnings.

7-PD-1

# LONG TERM DISABILITY INCOME POLICY

## SCHEDULE (Continued)

### ASSUMED RECEIPT OF BENEFIT

If an Employee is covered under the Federal Social Security, Worker's Compensation, or similar laws, he will be assumed to be receiving such benefits for himself (and for his dependents, if applicable). These assumed benefits will be in amount the Insurance Company estimates he (and his dependents, if applicable) is eligible to receive. This assumption will not be made if the Employee gives the Insurance Company proof that:

(1) he has applied for these benefits; and

(2) payments were denied.

However, if payments for disability were denied solely because of the disability was not expected to last at least 12 consecutive months, the Employee will be assumed to be receiving such benefits after his disability has continued for 12 consecutive months. This assumption will not be made if he gives the Insurance Company proof that:

(1) he has reapplied for benefits; and

(2) payments were again denied.

The Insurance Company will not assume receipt nor reduce the Monthly Benefit by, any elective, actuarially reduced, early retirement benefits under such laws until the Employee actually receives such benefits.

### INCREASES IN OTHER BENEFITS

The Insurance Company will not consider any cost of living increase in any Other Benefits which is effective after:

(1) the first payment of such Other Benefit becomes due; and

(2) Monthly Benefits become payable under the policy.

### RECOVERY OF OVERPAYMENTS

If the Monthly Benefit for any month is overpaid, the Insurance Company has the right to recover the amount overpaid by either of the following methods:

(i) a deduction of the overpaid amount from any future payments by the Insurance Company;

(2) a lump sum repayment by the Employee of the overpaid amount.

LONG TERM DISABILITY INCOME POLICY

SCHEDULE (Continued)

LUMP SUM PAYMENT

Any Other Benefit (except as shown below) will be deemed to be paid in monthly amounts over the time for which the sum was paid. If no such time is stated, the lump sum will be prorated monthly over the expected life span of the Employee. The Insurance Company will determine that expected life span.

Lump Sum Payment

(1)   a Retirement Plan will be deemed to be paid in the monthly amount which:

(a)   is provided by the standard annuity option under the Plan, as identified by the Policyholder; or

(b)   is prorated under a standard annuity table over the expected life span of the Employee (if the Plan does not have a standard annuity option);

(2)   the Jones Act or any workers' compensation, occupational disease or similar law (which includes benefits paid under a Compromise and Release) will be deemed to be paid monthly;

(a)   at the rate stated in the award;

(b)   at the rate paid prior to the lump sum (if no rate is stated in the award); or

(c)   at the maximum rate set by the law (if no rate is stated and the Employee did not receive a periodic award).

7-LSP-1

LONG TERM DISABILITY INCOME POLICY

## INSURING PROVISIONS

## LONG-TERM DISABILITY BENEFITS

COMMENCEMENT OF BENEFITS

The Insurance Company will pay Monthly Benefits in amounts determined from the Schedule of Benefits provided that:

(1) the Employee became Totally Disabled while insured for this Long Term Disability Insurance; and

(2) his Total Disability has continued for a period longer than the Benefit Waiting Period shown in the Schedule.

DURATION OF BENEFITS

The Insurance Company will stop paying Monthly Benefits on the earlier of the following dates:

(1) the date the Employee ceases to be Totally Disabled;

(2) the Employee's 65th birthday if he becomes Totally Disabled before his 60th birthday;

(3) the earlier of the following dates if the Employee becomes Totally Disabled on or after his 60th birthday:

(a) the end of 5 years from the date the Employee becomes Totally Disabled;

(b) the Employee's 70th birthday or, if 12 Monthly Benefit payments have not been payable as of that date, the date the 12th Monthly Benefit payment is payable;

8-CDB-2

LONG TERM DISABILITY INCOME POLICY

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS (Continued)

PRE-EXISTING CONDITION LIMITATION

The Insured ............... pay Monthly Benefits for any period of Total
Disability ............... directly or indirectly, from an Injury or Sickness for
which the Em........... the 3 months prior to the most recent effective date of
his insurance ........ curred expenses; (2) received medical treatment; (3) took
prescribed dru.... ...dicines; or (4) consulted a physician.  This limitation will
not apply to ...... of Total Disability which begins more than 12 months after
the most recent effective date of the Employee's insurance.

CONTINUITY OF COVERAGE AND PRE-EXISTING CONDITION LIMITATION.

The Pre-existing Condition Limitation will    waived, as described below, for an
Employee who was insured on the day before the Effective Date of this policy under
a group long term disability policy: (a) sponsored by the Employer; and (b)
replaced by this policy; provided such Employee:

   (1)  is in Active Service on the Effective Date of this policy; and

   (2)  has fulfilled the requirements of any Pre-existing Condition Limitation of
        the replaced poli...

However, if such Employee.

   (4)  is in Active Service on the Effective Date of this policy; and

   ....... has not    filled the requirements of any Pre-existing Condition
        Limitation .. the replaced policy because the time period required from
        the start of Total Disability has not been satisfied;

any portion of time which may have been satisfied under such Pre-existing Condition
Limitation will be applied toward the satisfaction of that time period requirement
of the Pre-existing Condition Limitation on this policy.

If Monthly Benefits are determined ............ they .... be paid according to
............

8-LX-2

LONG-TERM DISABILITY INCOME-POLICY

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS (Continued)

SUCCESSIVE PERIODS OF DISABILITY

Separate periods of Total Disability resulting from the same or related causes will be considered one period of Total Disability unless: (a) separated by the Employee's return to Active Service; (b) for at least 6 consecutive months.

Separate periods of Total Disability resulting from unrelated causes will considered one period of Total Disability unless: (a) separated by the Employee's return to Active Service; (b) for at least one full day.

These provisions do not apply:

(1)  to the Benefit Waiting Period; and

(2)  when the Employee becomes eligible for benefits under any group long term disability policy.

8-SPD-1

## LONG TERM DISABILITY INCOME POLICY

## INSURING PROVISIONS

### [TOTAL] DISABILITY BENEFITS (Continued)

**FAMILY SU[...]**

The Insura[...] will pay Family Benefits as set forth below for up to 6 months if [...]

    (1)  [...] becomes Totally Disabled while insured for Family Benefits;

    (2)  the [...] Disability has continued for at least 6 months beyond the Benefit Waiting Period; and

    (3)  the Employee dies while Monthly Benefits are being paid for that Total Disability and the Insurance Company receives due proof of death.

### PAYMENT OF FAMILY BENEFITS

Family Benefits will be payable Monthly beginning one month after the Employee's death. Family Benefits will be paid to the Employee's lawful spouse if living. If the lawful spouse is not living then any Family Benefit is due, it will be paid in equal shares to each child of the Employee. No Family Benefits will be paid if there is no lawful spouse or child.

The term child means the Employee's unmarried child (including a stepchild living with the Employee at the time of death) who is less than 21 years old. Family Benefits may not be assigned. Payment to anyone as provided above will release the Insurance Company from all liability for Family Benefits to the extent of the payments made.

### AMOUNT OF FAMILY BENEFITS

The amount payable for Family Benefits will be equal to 100% of the sum of:

    (1)  the Monthly Benefit due for the last full month of Total Disability before the Employee's death; and

[...] received for work performed [...]

N-FAM-2

LONG TERM DISABILITY INCOME POLICY

---

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS (Continued)

EXCLUSIONS

No Monthly Benefits will be paid if the Employee's Total Disability results, directly or indirectly, from:

(1) injuries intentionally self-inflicted while sane or insane;

(2) any act or hazard of a declared or undeclared war;

(3) mental illness, alcoholism or drug abuse unless, while Totally Disabled, that Employee is: (a) confined as a bed patient in a licensed hospital; (b) confined as a bed patient in an institution which specializes in care and treatment of such conditions; or (c) in an approved program of medically supervised treatment or rehabilitation.

No Monthly Benefits will be paid for a period of Total Disability when the Employee is not under the care of a licensed physician.

8-EX-1

## LONG-TERM DISABILITY INCOME POLICY

### PREMIUMS

**PREMIUM** ............................ first premium will be due on the Effective Date. After that, premium .......................... month ............ Policyholder and the Insurance Company agree on some ........................... payment. The Policyholder and the Insurance Company m.................... change the method of premium payment from time to time. Premiums a................ at the Home Office of the Insurance Company or to an authorized ................ the Insurance Company.

**PREMIUM DUE DATE.** After the Effective Date, the Premium Due Date will be the day of the month with the same number as the Anniversary Date or the last day of a month in which there is no day with the same number as the Anniversary Date. If the Policyholder and the Insurance Company agree that premiums will be paid on a quarterly, semi-annual or annual basis, the Premium Due Date will be at the appropriate regular interval, quarterly, semi-annually or annually.

**MONTHLY STATEMENT DATE.** If premiums are to be paid monthly, the Monthly Statement Date will be the same as the Premium Due Date. If premiums are to be paid on a quarterly, semi-annual or annual basis, the Monthly Statement Date will be the day in each month with the same number as the Premium Due Date.

**MONTHLY PREMIUM STATEMENT.** If premiums are due monthly, a Monthly Premium Statement will be prepared as of the Premium Due Date. This Monthly Premium Statement will show the premium due. If premiums are due quarterly, semi-annually or annually, a Monthly Premium Statement will be prepared as of the Monthly Statement Date for the time from the Monthly Statement Date to the next Premium Due Date. This Monthly Statement will reflect any pro rata premium charges and credits due to changes in the number of insured persons and changes in insurance amounts that took place in the preceding month.

**SIMPLIFIED ACCOUNTING.** To simplify the accounting process, premium adjustments will be made on the Monthly Statement Date that is the same as or next follows the date that (1), (2) or (3) below takes place:

    (1)  A person becomes insured.

    (2)  The amount of insurance on a person changes ....................................

    (3)  A person ceases to be insured.

LDPRE-1

LONG TERM DISABILITY INCOME POLICY

**MONTHLY PRE[...]** [...]etermined at the rate of $.75 per month for eac[...]

Covered Payroll [...] his monthly rate of Basic Earnings for the insuran[...] [...] such determination is made. However, an Employee's Covered [...] include any part of his monthly Basic Earnings which exceed [...]

**CALCULATION OF PREMIUMS.** The premium will be calculated by multiplying the total amount of Covered Payroll on the Premium Due Date by the monthly premium rate applicable on that date. If the Policyholder and the Insurance Company agree to a change in the method of premium payment or to a change in the Anniversary Date, an appropriate pro rata adjustment will be made in the premium due.

**CHANGES IN PREMIUM RATES.** The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice. No change in rates will be made until 12 months after the Effective Date. An increase in rates will not be made more often than once in a 12 month period. If an increase in rates takes place on a date that is not a Premium Due Date, a pro rata premium will be due on the date of the increase. The pro rata premium will apply for the increase from the date of the increase to the next Premium Due Date. If a decrease in rates takes place on a date that is not a Premium Due Date credit will be granted. The pro rata credit will apply for the decrease from the date of the decrease to the next Premium Due Date.

9-PRE-2

LONG TERM DISABILITY INCOME POLICY

CANCELLATION OF POLICY

NOTICE OF CANCELLATION

The Policyholder _____ cancel the policy as of any premium
Due Date by _____ days in advance of that date.

If a premium _____ when due, the policy will automatically be cancelled as of
the Premium Due Date, except as set forth below.

The Insurance Company may cancel the policy as of any premium due date if the
number of insured employees is less than 10 or less than 75% of those elig.

GRACE PERIOD.

If, before a Premium Due Date, the Policyholder has not given written noti__ to the
Insurance Company that the policy is to be cancelled, a Grace Period of 31 days
will be granted for the payment of each premium after the initial prem___. The
policy will stay in effect during that time. If any premium is not paid by the end
of the Grace Period, the policy will automatically be cancelled at the end of the
Grace Period; except that, if the Policyholder has given written notice in advance
of an earlier date of cancellation, the policy will be cancelled as of __ earlier
date.  The Policyholder will be liable to the Insurance Company for ___ unpaid
premium for the time the policy was in force.

10-CAN-1

LONG TERM DISABILITY INCOME POLICY

## PAYMENT OF BENEFITS

TO WHOM ... benefits that are payable for disability will be paid to the Employee ... to the eligible survivor(s) according to the term ...

If any ... able is a minor or, in the opinion of the Insurance ... ve a valid receipt for any payment due him, such payment ... to his legal guardian. However, if no request for payment ... by his legal guardian, the Insurance Company, may at its option, ma ... to the person or institution appearing to have assumed his custody and ...

If an Employee dies while any of the disability benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee: spouse, mother, father, children, brothers or sisters; or to the executors or administrators of the Employee's estate.

Payment in the manner described above will release the Insurance Company from all liability to the extent of any payment made.

**TIME OF PAYMENT.** Any disability benefits will be paid at regular intervals of not more than one month. Any balance which remains unpaid at the end of any period for which the Insurance Company is liable will be paid at that time.

11-PAY-1

LONG TERM DISABILITY INCOME POLICY

## PROVISIONS

ENTIRE CONTRACT. The entire contract will be made up of the policy, the application of the Policyholder, a copy of which is attached to the policy, and the applications, if any, of the Employees.

POLICY CHANGE. No change may be made in the policy only by amendment signed by the Policyholder and by the Insurance Company. The ... President, Vice President, Assistant Vice President, Director or Assistant Director. No agent may change or waive any terms of the policy.

STATEMENTS AND WARRANTIES.   All statements made by the Policyholder or by an insured Employee will, in the absence of fraud, be deemed representations and not warranties. No statement made by the Policyholder or by the Employee to obtain insurance will be used to avoid or reduce the insurance unless it is made in writing and is signed by the Policyholder or the Employee and a copy is sent to the Policyholder, the Employee or his Beneficiary.

NOTICE OF CLAIM.   Written notice of claim must be given to the Insurance Company within 30 days after the occurrence or start of the loss on which claim is based.

If notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice was given as soon as was reasonably possible.

CLAIM FORMS.  When the Insurance Company receives the notice of claim, it will give to the claimant, or to the Policyholder for the claimant, the claim forms it uses for filing proof of loss. If the claimant does not get these claim forms within 15 days after the Insurance Company receives notice of claim, he will be considered to have met the proof of loss requirements if he submits written proof of loss within 90 days after the date of loss. This proof must describe the occurrence, character and extent of the loss for which claim is made.

PROOF OF LOSS.   Written proof of loss must be given to the Insurance Company within 90 days after the date of the loss for which claim is made. If written proof of loss is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof of loss was given as soon as was reasonably possible. Upon request, written proof of continued Total Disability and of regular attendance of a physician must be given to the Insurance Company, within 30 days of such request.

PHYSICAL EXAMINATION    The Insurance Company, at its own expense, will have the right to examine any person for whom claim is pending as often as it may reasonably require.

... No action in equity will be brought to recover on the policy until at least 60 days after proof ... is filed with the Insurance Company. No action will be brought at all unless brought within 3 years ... (Kansas, 5 years; South Carolina, 6 years) after the time within which proof of loss is required by the terms ...

TIME LIMITATIONS    If any time limit of the policy is ... given to the ...

PHYSICIAN/PATIENT RELATIONSHIP.   The Beneficiary will have ...

CERTIFICATES.   The insurance Company ...

LONG TERM DISABILITY INCOME POLICY

MISCELLANEOUS PROVISIONS

INSURAN... ...the Insurance Company all of the data
that it ... ...ll other data that it may reasonably
require. ... ...ve this data will not void or continue
an Emplo... ...company, has the right to examine the
Policyhold... ...enefits at any reasonable time while the
policy is ... ...nt until all rights and obligations under
the policy... ...determined.

MALE PRONOU... ...ale pronoun as used herein will be deemed to include the
female.

INCORRECT PREMIUM PAYMENT. Premiums paid in error for a person who is not
eligible to be insured, or for a person after his insurance has ceased, will be
refunded without interest when requested by the Policyholder. This premium will
not be refunded, however, for more than a 6 month period nor for any period before
the last Anniversary Date.

12-MP-2

ADMINISTRATION. The Insurance Company will deal solely with the Policyholder who
will be deemed the representative of each Employee. Any action taken by the
Policyholder will be binding on the Employees.

12-MP-3

NOT IN LIEU OF WORKERS' COMPENSATION. The policy is not in lieu of and does not
affect requirements for coverage under workers' compensation laws.

12-MP-4

LIFE INSURANCE COMPANY OF NORTH AMERICA

AMENDATORY RIDER

... replaces any previous rider
as ...

... RY EMPLOYERS

Classes o... ...w are eligible to be covered by this policy.

Kimberly Home Health Care, Inc.
Kansas City, MO

Kimberly Nurses/Meditest, Inc.
New Jersey

ABC Advertising Agency, Inc.
Kansas

Kimberly Health Care Personnel, Inc.
Canada

Kimberly Services of New York, Inc.
New York

Gold Coast South Home Health Agency, Inc.
Florida

No other policy provision or condition is changed in any way by this rider.

| Effective date | |
|---|---|
| August 1, 1986 | at the hour stated in the policy |
| Issued To: | Part of Policy No. |
| KIMBERLY SERVICES, INC. | LK-6617 |

LK-6836

LIFE INSURANCE COMPANY OF NORTH AMERICA
Philadelphia, Pennsylvania

_____ INC.

whose _____ Overland Park, KS _____

hereby _____ of North America for Group Policy

No. _____

We approve and _____ olicy.

This applic _____ in duplicate. One part is to be attached to the Group
Policy; the _____ returned to the Life Insurance Company of North America.

This application _____ any previous application for this Group Policy.

_____ KIMB _____
(Full or Corporate Name of Applicant)

Signed at _____ By _____
(Signature and Title)

On _____ Witness _____
(To be signed by Licensed Resident Agent where required by law)

LM-1K59        (This Copy is to Remain Attached To The Policy)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LIFE INSURANCE COMPANY OF NORTH AMERICA
Philadelphia, Pennsylvania

We,    KIMBERLY SERVICES, INC.

whose main office address is:  Overland Park, KS

hereby apply to the Life Insurance Company of North America for Group Policy

No.    LK-6617

We approve and accept the terms of this Group Policy.

This application is to be signed in duplicate.  One part is to be attached to the Group
Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Group Policy.

KIMBERLY SERVICES, INC.
(Full or Corporate Name of Applicant)

Signed _____ By _____
(Signature and Title)

_____ Witness _____
(To be signed by Licensed Resident Agent where required by law)

LM-1K _____        (This Copy is to be Returned To Us)

LIFE INSURANCE COMPANY OF NORTH AMERICA

(Herein called the Company)

Amendment to be attached to and made a part of Group Accident and Sickness

Policy LK-6617, a contract between the Company and

KIMBERLY SERVICES, INC.

(herein called the Policyholder)

Effective July 1, 1989:

Employees of Practical Care Home Health a subsidiary to or affiliated with KIMBERLY SERVICES, INC. shall be considered as employees of the Policyholder with respect to the insurance provided by this group contract.

Effective November 1, 1989:

The Monthly Premium Rate as set forth on page LM-6N29 [PREMIUMS (Continued)], is changed to:

MONTHLY PREMIUM RATE. The premium will be determined at the rate of $.68 per month for each $100. of Covered Payroll.

This Amendment is effective on (See Above).

It is agreed that this Amendment and the changes described above will be made a part of the policy, but not unless the Company and the Policyholder have affixed hereto their respective signatures.

FOR THE COMPANY:                        FOR THE POLICYHOLDER:

By  SPECIMEN

                                        By_____
                                                (Signature)

Registrar                               Title_____

                                        Date_____

                                        Witness_____
                                        (To be signed by Licensed Resident
                                         Agent where required by law)

LG-5578
Amendment No. 2                     LK6617

# Exhibit <u>B</u>

 

**Lorraine Adell Harris**
Claim Manager



**CIGNA** Group Insurance
Life · Accident · Disability

June 6, 2006

Routing P-250
P.O. BOX 22325
Pittsburgh, PA 15222-0325
Telephone 1-800-238-2125,
x3139
Facsimile (412) 402-3542

Ms. Gheri Gallagher
107 Rocca Drive
Fairfax, CA 94430

RE:  Claimant's Name:        Gheri Gallagher
     Date of Birth:           05/14/1948
     Policy Number:           LK 6617
     Policyholder:            Kimberly Services, Inc.
     Underwriting Company:    Life Insurance Company of North America

Dear Ms. Gallagher:

This letter is in reference to your claim for Long Term Disability benefits through Life
Insurance Company of North America, Policy # LK 6617.

<u>GENERAL INFORMATION</u>

To determine eligibility for continued benefits, we assessed how your conditions prevent your
ability to perform any occupation. Although the medical documentation references the
diagnoses of Chronic Pain Syndrome, Failed Back Syndrome, Degenerative Disc Disease-
lumbar spine, Occipital Nerve Compression, Major Depression, and Left Retinal Detachment,
it does not support limitations from these conditions preventing your return to gainful
employment.

This letter is intended to provide you with the details of our findings, including the Definition of
Disability, the medical and other information used to render our decision, and your appeal
rights.

<u>DEFINITION of DISABILITY</u>

According to Kimberly Services, Inc. Long Term Disability policy:

   **TOTAL DISABILITY:** *"An Employee will be considered Totally Disabled, if because of
   Injury or Sickness, he is unable to perform all the essential duties of his occupation.*

   *After Monthly Benefits have been payable for 24 months, an Employee will be
   considered Totally Disabled only if, because of Injury or Sickness, he is unable to*

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are
provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance
Company of New York, and Connecticut General Life Insurance Company.

Gheri Gallagher
June 6, 2006
Page 2



*perform all the essential duties of any occupation he is or may reasonably become*
*qualified based on his education, training or experience."*

## INFORMATION and/or MEDICAL REVIEWED

- On the Disability Questionnaire dated July 19, 2005, when asked to describe in your own words why you could not work in your own or in any occupation, you wrote "constant pain, headaches, need cervical traction several x day to control pain." You indicated that you attended to personal care needs, drove 10-20 miles, used personal computer 1-3x week, cooked, cleaned, shopped, did laundry, gardened, read, watched T.V., took short walks 3-4x a week, and went out to dinner with friends. You listing treating with Dr. Ray Seet and current medications were Valium, Oxycontin, Wellbutrin, Lexapro, Maxide, Tiazac, Testosterone, Progesterone, and HRT.

- On March 29, 2006, you returned my call and left a message advising in addition to Dr. Seet that you treated with Drs. Fu and Sowerby.

- On the Attending Physician's Statement dated July 19, 2005, Dr. Ray Seet listed diagnoses of Occipital Nerve Compression and Degenerative Disc Disease. Your subjective symptoms were headaches, neck and shoulder pain, and bilateral radiculitis. You were first seen May 2004 and last seen July 19, 2005 with visits every 2-3 months. The doctor noted you were permanently disabled with chronic pain syndrome from failed back surgery and depression.

- Dr. Ray Seet/general medicine completed the diagnosis specific letter on January 9, 2006 and listed diagnoses of Multi-level HNP-cervical spine, Bilateral Cervical Radiculitis, and Osteophytes at C4 and C5. Your current subjective complaints were posterior neck pain and stiffness, radiating pain into both shoulders, left retinal detachment, and persistent headaches. Current clinical findings were recurrent pain, neck tension, mixed headaches, chronic pain syndrome, and bilateral cervical radiculitis. The doctor circled your current level of functionality was Sedentary and Light work.

  On the Physical Abilities Assessment form dated January 10, 2006, Dr. Seet checked you could continuously reach overhead/at desk level/and below waist, perform fine manipulation and simple/firm grasping, push/pull up to 10 lbs., balance, stoop, and use lower extremities to operate foot controls. Also, you could frequently sit, stand, and walk. The doctor checked lifting/carrying, kneeling, crouching, and crawling were not applicable to the diagnoses. The assessment equated to Sedentary work capacity.

- Dr. Arthur Fu/retinal vitreous completed the diagnosis specific letter on May 4, 2006. The doctor listed a diagnosis of Retinal Detachment with a current subjective complaint of vision loss. Dr. Fu provided an estimated return to work date any occupation part-time or full-time of May 25, 2006.

Gheri Gallagher
June 6, 2006
Page 3



We received copies of medical records from October 24, 2005 – April 24, 2006.  On
October 26, 2005, Dr. Fu performed a scleral buckle and a laser vitrectomy epi
memb/endo on November 30, 2005. As of April 24, 2006, your vision was 20/20 *(right
eye)* and 10/200 *(left eye)*. The doctor recommended to Dr. Stein that focus be placed
on improving your vision and suggested a new refraction be tried first before
considering cataract surgery. Dr. Fu stated "She did have a macula-off detachment for
quite some time so it may be quite possible that her visual potential will be somewhat
limited."

- Dr. Mervyn Stein/ophthalmology provided copies of medical records from October 24,
  2005 – May 8, 2006. The only office note received was from October 24, 2005.

- On April 18, 2006, Dr. Sowerby left a message advising he only saw you twice for
  acute gastric problems, was not disabling you, and deferred to Dr. Seet for comment.

## TRANSFERABLE SKILLS ANALYSIS

A Transferable Skills Analysis (TSA) performed on February 7, 2006 used Sedentary work
capacity as the medical basis. Also, taken into account was your self reported education and
work history, and the completed Physical Abilities Assessment form by Dr. Seet.

The following (7) occupations identified met the requirements for transferability and took the
most advantage of your skills, education, and abilities; as well as met the salary replacement
requirements:

| DESCRIPTION | DOT CODE |
| --- | --- |
| Claim Examiner | 241.267-018 |
| Coordinator, Volunteer Services | 187.167-022 |
| Director, Nursing Services | 075.117-022 |
| Eligibility Worker | 195.267-010 |
| Hospital-Admitting Clerk | 205.362-018 |
| Service Clerk | 221.367-070 |
| Director, Community-Health Nursing | 075.117-014 |

## SUMMARY

On February 20, 2006, Dr, Seet was informed of the results from the Transferable Skills
Analysis and asked to comment based on your current physical conditions if he felt you were
capable of performing full-time Sedentary work and if not why. On March 22, 2006, the doctor
signed off that he was in agreement with your ability to work full-time. This same question
was posed to Dr. Stein on May 17, 2006 and on that day he signed off as well that he was in
agreement with your ability to work full-time. Previously, on May 4, 2006, Dr. Fu advised you
would be able to return to work full-time any occupation on May 25, 2006.

Since Drs. Seet, Stein, and Fu have all released you to perform full-time Sedentary work and
a Transferable Skills Analysis identified several occupations that you are qualified to perform

Gheri Gallagher
June 6, 2006
Page 4



we have determined that you no longer meet the definition of Total Disability from any and all occupations and your claim has been closed.

Please be advised, on May 24, 2006, we issued your final Long Term Disability check in the amount of $1,872.00 for the period of May 1, 2006 through May 31, 2006.

## APPEAL RIGHTS

You may request review of this denial by writing to Life Insurance Company of North America representative signing this letter.

The written request for review must be sent within 180 days of receipt of this letter and state the reasons why you feel your claim should not have been denied. Please include any documentation, which you feel supports your claim. This can include the following:

- A letter explaining why you feel you are unable to perform any occupation on a full time basis. This should include specific physical limitations, changes in daily activities/abilities, etc; and

- A copy of an Independent Medical Examination report from a qualified physician performed within the past year and/or

- A complete copy of office records from your physician(s) for the period of January 2006 to the present, including but not limited to, treatment/progress notes, reports/interpretations of all diagnostic tests *(i.e. X-rays, MRI's, CT Scans, labs, etc.)*, correspondence to and from physicians, and

- Any other pertinent information.

Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter. A final decision will be made no later than 90 days.

Please note that you have the right to bring legal action for benefits under ERISA section 502(a) if your appeal is denied.

We will of course, be available to discuss the position we have taken. Should you, however, wish to take this matter up with the California Department of Insurance Claims Services Bureau, it maintains a service division to investigate complaints at 300 S. Spring Street – 11th floor, Los Angeles, CA 90013. The California Department of Insurance can be reached, toll free at 1-800-927-4357 or 1-800-482-4TDDD within California or (213) 897-8921. Requests can be faxed to (213) 897-5961.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under

Gheri Gallagher
June 6, 2006
Page 5



the terms and conditions of the contract, whether or not specifically mentioned herein. Should
you have any information, which would prove contrary to our findings, please submit it to us.
We will be pleased to review any information you may wish to submit.


Sincerely,


Lorraine Adell Harris
Claim Manager
(412) 402-3139

James Sharp
Appeals Claim Manager



**CIGNA** Group Insurance
Life · Accident · Disability

May 25, 2007

Routing P250
P.O. Box 22325
Pittsburgh, PA 15219
Telephone 1-800-238-2125 ext. 3178
Facsimile 412-402-3222

Ms. Gheri Gallagher
107 Rocca Drive
Fairfax, CA 94430

RE:  Claimant's Name:          Gheri Gallagher
     Policy Number:            LK 6617
     Account Name:             Kimberly Service, Incorporated
     Underwriting Company:     Life Insurance Company of North America

Dear Ms. Gallagher:

This is in reference to your letter, and the additional medical information received, appealing the denial of your Long Term Disability claim, submitted under the terms of Kimberly Service, Incorporated's Long Term Disability policy. We have completed our review and must regretfully inform you that we are affirming the previous denials of your claim.

A review of your claim information documents that you were employed by Kimberly Service, Incorporated as a Director of Clinical Services. On October 6, 1989, you ceased active employment due to severe neck and right arm pain secondary to cervical disc injury and disease. Your claim was initially approved and paid from December 5, 1989 through May 31, 2006, at which time you were found to be no longer disabled under the terms of your policy.

As you are aware, the policy contains the following provision, Definition of Total Disability:

"An Employee will be considered Totally Disabled, if because of Injury or Sickness, he is unable to perform all the essential duties of his occupation.

After Monthly Benefits have been payable for 24 months, an Employee will be considered Totally Disabled only if, because of Injury or Sickness, he is unable to perform all the essential duties of any occupation for which he is, or may reasonably become, qualified based on his education, training or experience."

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by operating subsidiaries and contracted companies and not by CIGNA Corporation. Operating subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

May 25, 2007
Page 2

On June 6, 2006, you were advised that the medical documentation on file demonstrated you to have functionality within a sedentary demand level. A Transferable Skills Analysis performed on February 7, 2006, identified seven suitable positions within your skills, education, work history and wage replacement requirements. The results of the Transferable Skills Analysis were shared with Dr. Ray Seet, Dr. Arthur Fu and Dr. Mervyn Stein, all of whom agreed that you would be able to sustain full time employment. As a result, your claim was closed effective May 31, 2006.

Upon reviewing the denial, The Appeals Claim Manager affirmed the denial of your claim on November 15, 2006, opining that the available medical documentation failed to demonstrate significant documented clinical findings to support ongoing restrictions to preclude you from performing any occupation beyond May 31, 2006.

Your entire file, including the additional medical information submitted, was reviewed by the Life Insurance Company of North America ("LINA"), claims administrator for the policy, in its entirety without deference to prior reviews. For your appeal, the following new medical information was received and reviewed:

- December 14, 2006 Comprehensive Psychiatric Evaluation report
- Progress notes from Dr. Ray Seet dated January 3, 2007, January 31, 2007 and March 2, 2007
- February 20, 2007 Medical Report from Dr. Robert Blum
- Office note dated April 3, 2007 from Dr. Ray Seet

In reviewing the December 16, 2006 Comprehensive Psychiatric Evaluation report, Dr. Michael Zizmor acknowledged that you are not currently seeing a psychiatrist. While we value Dr. Zizmor's opinion as to your Mental Status as of December 14, 2006, this report is not relevant as to your cognitive status as of May 31, 2006. Furthermore, we have not been provided with any office records, therapy notes or Neuropsychological Examinations relevant to your cognitive status around May 31, 2006 to demonstrate a severe psychiatric functional impairment as of May 31, 2006.

To ensure an accurate interpretation of the physical medical information on file, your claim was reviewed by a Medical Director. Upon review of available medical documentation, the Medical Director opined that there are insufficient documented clinical findings to not support how you would be limited from performing full-time sedentary work as of June 1, 2006.

The Medical Director noted that while you have multiple physical conditions relating to your cervical spine, vision and chronic pain, your treating providers had released you to sedentary work. Both Dr. Fu and Dr. Stein have advised our office that you are not disabled from

May 25, 2007
Page 3

sedentary work based on your visual condition. In reviewing Dr. Seet's and Dr. Blum's medical reports, the Medical Director opined that the medical documentation on file fails to demonstrate how your range of motion and subjective pain complaints would preclude you from sedentary employment.

Please understand that we are not stating that you are not limited or restricted, however, we are stating that we have not received sufficient medical information to support a severe continuous condition of disability from any occupation beyond May 31, 2006.

In order for you to continue to be eligible for Long Term Disability benefits beyond May 31, 2006, you are required to be disabled from all the essential duties of any occupation. As stated above, we have no clinical findings to support a severity of ongoing impairment or loss of function to preclude you from performing any occupation beyond May 31, 2006. While your providers suggest that decreased range of motion, pain and depression preclude you from any occupation, we have not been provided with documented significant clinical evidence to support how this has limited you from any occupation since May 31, 2006.

At this point in time, you have exhausted all administrative levels of appeal and no further appeals will be considered.

Please note that you have a right to bring legal action regarding your claim under the ERISA section 502(a). You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local United States Department of Labor Office or your State Insurance Regulatory Agency.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your insurance booklet, certificate or coverage information available from your employer to determine if you are eligible for additional benefits. Upon written request, you may receive a copy of your claim file, free of charge.

Please contact our office at 1-800-238-2125 ext. 3178 should you have any questions.

Sincerely,


James Sharp
Appeals Claim Manager