Ryan A. Kent (St. Bar # 169810)
Attorney at Law
30 Mitchell Boulevard
San Rafael, CA 94903
Telephone:   (415) 479-4356
Fax:            (415) 479-4358

Attorney for Plaintiff
GHERI GALLAGHER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GHERI GALLAGHER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>　　　　Defendant. | No.  CV 07-05224 EDL<br><br>FIRST AMENDED COMPLAINT<br>　1.  Breach of Contract<br>　2.  Breach of Covenant of Good Faith and Fair Dealing<br>　3.  Claim for Recovery of Plan Benefits [29 U.S.C. §1132(a)(1)(B)]<br>　4.  Breach of Fiduciary Duty [29 U.S.C. §1132(a)(2)]<br>　5.  Claim for Equitable Relief [29 U.S.C. §1132(a)(3)] |

Plaintiff GHERI GALLAGHER (hereinafter "Plaintiff") alleges as follows:

1.     Plaintiff is a natural person residing in Marin County, California.

2.     Defendant LIFE INSURANCE COMPANY OF NORTH AMERICA (hereinafter "Defendant") is an insurer that is authorized to issue and deliver policies of disability insurance in the State of California.

3.     On or about July 5, 1988, Plaintiff was hired as a Director of Clinical Services by Kimberly Services, Inc. in their San Rafael, California location.  At that time, plaintiff enrolled

in the group long term disability income insurance program provided to employees of Kimberly Services, Inc. by Defendant, Group Policy No. LK-6617 (hereinafter "the Policy").

4.   As a full-time employee of Kimberly Services, Inc. enrolled in the group long term disability income insurance program, Plaintiff is entitled to coverage under the Policy. The Policy provides as set forth below:

> **TOTAL DISABILITY.** An Employee will be considered Totally Disabled if because of Injury or Sickness, he is unable to perform all the essential duties of his occupation.
>
> After Monthly Benefits have been payable for 24 months, an Employee will be considered Totally Disabled only if, because of Injury or Sickness, he is unable to perform all the essential duties of any occupation for which he is or may reasonably become qualified based on his education, training or experience.

5.   On October 6, 1989, Plaintiff ceased active employment due to severe neck, shoulder and right arm pain/radiculopathy and headaches secondary to cervical disc injury and disease resulting in three herniated cervical discs.

6.   On December 12, 1989, Plaintiff submitted a claim for long term disability income insurance benefits under the Policy to Defendant in accordance with the terms of the Policy. Plaintiff's claim for benefits included an Attending Physician's Statement of Disability signed by Robert S. Blum, M.D.

7.   Defendant approved Plaintiff's claim and commenced providing long term disability income insurance benefits to Plaintiff in accordance with the terms and provisions of the Policy, effective December 5, 1989.

8. Defendant periodically requested and was provided documentation of Plaintiff's ongoing total disability. The documentation provided to Defendant verifying Plaintiff's ongoing total disability included, but was not limited to, the following:

a. Report from Robert S. Blum, M.D. dated March 7, 1990.

b. Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated December 19, 1990.

c. Report from Robert S. Blum, M.D. dated October 2, 1991.

d. Attending Physician's Statement of Disability signed by Robert S. Blum, M.D. on March 10, 1993.

e. Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated November 16, 1993.

f. IME Report of Michael A. Kurtz, M.D. dated February 7, 1996.

g. Report from Robert S. Blum, M.D. dated July 31, 1996.

h. Report from Robert S. Blum, M.D. dated February 27, 1997.

i. Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated May 8, 1997.

j. Report from Robert S. Blum, M.D. dated February 11, 1998.

k. Medical Assessment of Ability to Do work Related Activities (Physical) from Robert S. Blum, M.D. dated February 11, 1998.

l. Letter from Robert S. Blum, M.D. dated March 12, 1998.

m. Report from Robert S. Blum, M.D. dated January 6, 1999.

    n.    Physical Ability Assessment, Form 1 (Musculoskeletal) from Robert S. Blum, M.D. dated March 30, 2000.

    o.    Report from Robert S. Blum, M.D. dated March 30, 2000.

    p.    Report from Robert S. Blum, M.D. dated November 20, 2000.

    q.    Report from Robert S. Blum, M.D. dated November 30, 2000

    r.    Report from Robert S. Blum, M.D. dated January 24, 2001.

    s.    Report from Robert S. Blum, M.D. dated September 5, 2001.

    t.    Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated January 30, 2002.

    u.    Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated August 4, 2003.

    v.    Supplementary Claim Form with verification of disability by Robert S. Blum, M.D. dated September 23, 2004.

    w.    Supplementary Claim Form with verification of disability by Ray Seet, M.D. dated July 19, 2005.

9.    Based upon the ongoing documentation verifying Plaintiff's ongoing total disability, as set forth above, Defendant continued to provide long term disability income insurance benefits to Plaintiff in accordance with the terms and provisions of the Policy during the ensuing 15 and 1/2 year period, December 5, 1989, through May 31, 2006.

10.    Ray Seet, M.D. submitted to Defendant a Current Level of Functionality Assessment dated January 9, 2006, indicating that Plaintiff could perform sedentary and light work. However, Dr. Seet also indicated that Plaintiff was not going to be able to return to work

on a full or part-time basis. Dr. Seet also submitted a Physical Ability Assessment dated January 10, 2006, indicating Plaintiff was capable of various physical activities.

11. On March 22, 2006, Ray Seet, M.D. mistakenly executed a form submitted to him by Defendant indicating his agreement that Plaintiff was able to perform full-time sedentary work.

12. On June 6, 2006, Defendant notified Plaintiff that based upon the above referenced information provided by Ray Seet, M.D., it had determined Plaintiff was capable of full-time sedentary work and therefore did not meet the definition of Total Disability set forth in the Policy. The letter set forth Plaintiff's rights appeal the decision and the procedures to follow.

13. Plaintiff timely appealed Defendant's termination of her long term disability benefits. The additional supporting documentation submitted on behalf of Plaintiff included, but was not limited to, the following:

    a. Letter from Ray Seet, M.D. dated June 13, 2006, explaining why the decision to terminate Plaintiff's disability benefits was not medically justified and asking Defendant to reconsider.

    b. Report from Robert S. Blum, M.D. dated August 23, 2006 confirming that Plaintiff was permanently disabled and unable to perform full-time sedentary work.

    c. Letter from Ray Seet, M.D. dated September 22, 2006, explaining that he made a mistake when he executed the form he submitted to Defendant on March 22, 2006, and verified that Plaintiff was unable to perform full time sedentary work.

14. On November 15, 2006, Defendant sent Plaintiff a letter denying Plaintiff's appeal and affirming its decision to terminate her long term disability benefits. Defendant characterized Plaintiff's condition as "complaints of pain … in the absence of clinical findings."

15. Defendant failed to explain how it could justify its decision in light of the September 22, 2006 letter from Dr. Seet wherein he explained that he made a mistake when he executed the form he submitted to Defendant on March 22, 2006, and verified that Plaintiff was unable to perform full time sedentary work. Defendant also failed to explain how it could justify its decision in light of the documented clinical findings in Plaintiff's file, including those set forth in Dr. Seet's Current Level of Functionality Assessment dated January 9, 2006. Defendant's denial letter set forth Plaintiff's rights to again appeal the decision and the procedures to follow.

16. Plaintiff timely appealed Defendant's decision to terminate her long term disability benefits. The additional supporting documentation submitted on behalf of Plaintiff included the following:

   a. Progress Notes from Dr. Seet dated January 3, 31 and March 2, 2007.

   b. Report from Robert S. Blum, M.D. dated February 20, 2007. This report included MRI evidence of central canal stenosis at C4/5 with flattening of the anterior cervical cord and moderate right and moderate severe left foraminal narrowing, and at 5/6 central canal stenosis with flattening of the anterior cervical cord and severe bilateral foraminal narrowing, and C6/7 central canal stenosis with effacement of the anterior subarachnoid space and severe bilateral foraminal narrowing.

FIRST AMENDED COMPLAINT
6

17. On May 25, 2007, Defendant sent Plaintiff a letter again denying Plaintiff's appeal and affirming its decision to terminate her long term disability benefits. Defendant contended that Plaintiff's treating providers had released her to sedentary work. Defendant failed to explain how it could reach such a conclusion in light of the September 22, 2006 letter from Dr. Seet wherein he explained that he made a mistake when he executed the form submitted to him by Defendant on March 22, 2006, and verified that Plaintiff was unable to perform full time sedentary work. Defendant contended that Plaintiff's documented medical findings consisted solely of "range of motion and subjective pain complaints." Defendant failed to explain how it could make such a characterization of Plaintiff's documented medical findings in light of the documented medical findings in Plaintiff's file, including MRI evidence of central canal stenosis at C4/5 with flattening of the anterior cervical cord and moderate right and moderate severe left foraminal narrowing, and at 5/6 central canal stenosis with flattening of the anterior cervical cord and severe bilateral foraminal narrowing, and C6/7 central canal stenosis with effacement of the anterior subarachnoid space and severe bilateral foraminal narrowing. Defendant failed to explain how Plaintiff could have been disabled and unable to perform full time sedentary work during the period December 5, 1989 through May 31, 2006, due to a permanent and progressively worsening condition, and then somehow improve to the point where she was able to perform full time sedentary work subsequent to May 31, 2006. Defendant advised that Plaintiff had exhausted all administrative levels of appeal and no further appeals would be considered.

18. Plaintiff is informed and believes and thereon alleges that the Policy was initially provided to Kimberly Services, Inc. and Plaintiff as part of an ERISA plan called the Kimberly Quality Care Long Term Disability Plan (hereinafter "the Plan").

19. Plaintiff is informed and believes and thereon alleges that Kimberly Services, Inc. was designated on the Form 5500 filing with the U.S. Department of Labor in 1993 as the "plan sponsor" and "plan administrator".

20. Plaintiff is informed and believes and thereon alleges that Kimberly Services, Inc., merged out of existence effective January 1, 1996. Since that time, Kimberly Services, Inc. has ceased to exist, has had no employees and has conducted no business. The surviving entity that Kimberly Services, Inc. merged out of existence with was Kimberly Home Health Care, Inc.

21. Plaintiff is informed and believes and thereon alleges that when Kimberly Services, Inc. merged out of existence effective January 1, 1996, the Plan was terminated. Since that time neither Kimberly Services, Inc. nor Kimberly Home Health Care, Inc. has had any further involvement in the Plan. Since that time Defendant's only ongoing obligation under the Policy was to Plaintiff.

22. Plaintiff is informed and believes and thereon alleges that there were no filings by Kimberly Services, Inc. with the U.S. Department of Labor subsequent to the 1993 Form 5500 filing. There were never any filings with the U.S. Department of Labor by Kimberly Home Health Care, Inc.

23. As a result of the foregoing, the Policy was constructively converted from a group insurance policy subject to ERISA to an individual insurance policy not subject to ERISA.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

24. Plaintiff refers to and incorporates by reference all preceding paragraphs of this complaint.

25. Defendant's denial of Plaintiff's claim and terminating her ongoing long term disability income benefits constituted a breach of its obligations under the Policy, in that Plaintiff submitted documented medical findings establishing that Plaintiff continued to be Totally Disabled under the terms of the Policy.

26. As a direct and proximate result of Defendant's breach of its obligations under the Policy, Plaintiff has sustained damage as follows:

    a. Plaintiff has not received the ongoing long term disability income benefits she was entitled to under the Policy for the period subsequent to May 31, 2006.

    b. Plaintiff has been required to retain attorneys to pursue her claim for benefits under the Policy.

    c. Plaintiff suffered severe emotional distress.

## SECOND CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

27. Plaintiffs refer to and incorporate by reference all preceding paragraphs of this complaint.

28. Defendant's denial of benefits to Plaintiff was done without reasonable cause. Defendant had no legitimate or arguable reason for refusing to pay Plaintiff's valid claim. Defendant consistently refused to consider evidence that supported Plaintiff's claim. In denying Plaintiff's claim, Defendant acted willfully, fraudulently, intentionally, and in bad faith with the purpose of avoiding the payment due Plaintiff under the terms of the Policy. Defendant's intentional refusal to pay Plaintiff's valid claim was a breach of the implied covenant of good faith and fair dealing and operated to unreasonably deprive Plaintiff of the benefits of the Policy.

29. Examples of Defendant's consistent refusal to consider evidence that supported Plaintiff's claim, includes, but is not limited to, the following:

    a. In its denial letter of November 15, 2006, Defendant, without a reasonable basis in fact, characterized Plaintiff's condition as "complaints of pain … in the absence of clinical findings." Defendant failed to explain how it could justify this characterization in light of the documented clinical findings in Plaintiff's file, including those set forth in Dr. Seet's Current Level of Functionality Assessment dated January 9, 2006.

    b. In its denial letter of November 15, 2006, Defendant failed to explain how it could justify its determination Plaintiff was capable of full time sedentary work in light of the September 22, 2006 letter from Dr. Seet wherein he explained that he made a mistake when he executed the form he submitted to Defendant on March 22, 2006, and verified that Plaintiff was unable to perform full time sedentary work.

    c. In its denial letter of May 25, 2007, Defendant contended that Plaintiff's treating providers had released her to sedentary work. Defendant failed to explain how it could reach such a conclusion in light of the September 22, 2006 letter from Dr. Seet wherein he explained that he made a mistake when he executed the form he submitted to Defendant on March 22, 2006, and verified that Plaintiff was unable to perform full time sedentary work.

    d. In its denial letter of May 25, 2007, Defendant characterized Plaintiff's documented medical findings as consisting solely of "range of motion and subjective pain complaints." Defendant failed to explain how it could make such

        a characterization of Plaintiff's documented medical findings in light of the documented medical findings in her file, including MRI evidence of central canal stenosis at C4/5 with flattening of the anterior cervical cord and moderate right and moderate severe left foraminal narrowing, and at 5/6 central canal stenosis with flattening of the anterior cervical cord and severe bilateral foraminal narrowing, and C6/7 central canal stenosis with effacement of the anterior subarachnoid space and severe bilateral foraminal narrowing.

    e.    Defendant failed to explain how Plaintiff could have been disabled and unable to perform full time sedentary work during the period December 5, 1989 through May 31, 2006, due to a permanent and progressively worsening condition, and then somehow miraculously improve to the point where she was able to perform full time sedentary work subsequent to May 31, 2006.

30.    Defendant's conduct in intentionally refusing to pay Plaintiff's valid claim, as set forth above, was malicious, fraudulent, oppressive, and otherwise reflected a conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to recover exemplary damages.

31.    As a direct and proximate result of Defendant's bad faith breach of its obligations under the Policy, Plaintiff has sustained damage as follows:

    d.    Plaintiff has not received the ongoing long term disability income benefits she was entitled to under the Policy for the period subsequent to May 31, 2006.

    e.    Plaintiff has been required to retain attorneys to pursue her claim for benefits under the Policy.

    f.    Plaintiff suffered severe emotional distress.

## THIRD CAUSE OF ACTION
## CLAIM FOR RECOVERY OF PLAN BENEFITS
## [29 U.S.C. §1132(a)(1)(B)]

32.  Plaintiff refers to and incorporates by reference all preceding paragraphs of this complaint.

33.  As set forth in paragraphs 18 through 23, above, Plaintiff does not believe that her claim for benefits under the Policy is subject to ERISA. However, if Plaintiff's claim for benefits under the Policy is subject to ERISA, Plaintiff alleges as follows:

34.  At all times pertinent, Defendant was in fact the entity that made all decisions and handled all administrative actions regarding any claim for benefits under the Policy. Consequently, Defendant was acting as the plan administrator, as that term is used in ERISA, when it wrongfully denied Plaintiff the benefits to which she was entitled under the Policy.

35.  As a plan administrator, Defendant is liable to Plaintiff for the wrongfully withheld Policy benefits and Plaintiff is entitled to an order compelling Defendant to make future benefit payments under the Policy.

## FOURTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
## [29 U.S.C. §1132(a)(2)]

36.  Plaintiff refers to and incorporates by reference all preceding paragraphs of this complaint.

37.  As set forth in paragraphs 18 through 23, above, Plaintiff does not believe that her claim for benefits under the Policy is subject to ERISA. However, if Plaintiff's claim for benefits under the Policy is subject to ERISA, Plaintiff alleges as follows:

38.  At all times pertinent, Defendant was in fact the entity that made all decisions and handled all administrative actions regarding any claim for benefits under the Policy.

FIRST AMENDED COMPLAINT
12

39. Defendant owed a fiduciary duty to the Plan to pay all benefits due under the Policy in order to avoid the Plan itself becoming liable for the wrongfully withheld Plan benefits.

40. If Defendant is found to not be an entity responsible for the payment of Plan benefits pursuant to 29 U.S.C. §1132(a)(1)(B), then Plaintiff will seek to recover the Plan benefits to which she is entitled from the Plan itself, if it still exists.

41. If it still exists, the Plan itself would then be legally responsible for this obligation to Plaintiff that should legally and equitably be borne by Defendant. The Plan itself would be entitled to indemnification from Defendant for this obligation to Plaintiff.

42. Accordingly, on behalf of the Plan itself, Plaintiff requests relief in the form of an order compelling Defendant to pay Plaintiff the benefits she is entitled to under the Policy in order that the Plan itself not be subjected to these liabilities to Plaintiff that should legally and equitably be borne by Defendant.

**FIFTH CAUSE OF ACTION**
**CLAIM FOR EQUITABLE RELIEF**
**[29 U.S.C. §1132(a)(3)]**

43. Plaintiff refers to and incorporates by reference all preceding paragraphs of this complaint.

44. As set forth in paragraphs 18 through 23, above, Plaintiff does not believe that her claim for benefits under the Policy is subject to ERISA. However, if Plaintiff's claim for benefits under the Policy is subject to ERISA, Plaintiff alleges as follows:

45. If Defendant is found to not be an entity responsible for the payment of Plan benefits pursuant to 29 U.S.C. §1132(a)(1)(B), and if Plaintiff's Fourth Cause of Action for Breach of Fiduciary Duty under 29 U.S.C. §1132(a)(2) is found without merit because it does not inure to the benefit of the Plan itself, and if the Plan itself no longer exists, then Plaintiff will

have no adequate remedy for Defendant's wrongful denial of benefits due under the Policy unless Plaintiff is allowed to proceed with this cause of action for equitable relief pursuant to 29 U.S.C. §1132(a)(3).

**WHEREFORE** Plaintiff prays for judgment against Defendant as follows:

1. For general and compensatory damages for economic loss suffered as a proximate result of Defendant's bad faith refusal to pay Plaintiff's valid claim in an amount according to proof;

2. For general and compensatory damages for severe emotional distress suffered as a proximate result of Defendant's bad faith refusal to pay Plaintiff's valid claim in an amount according to proof;

3. For prejudgment interest in an amount to be proven at time of trial;

4. For attorneys fees incurred in obtaining Policy benefits as provided by law;

5. For punitive damages pursuant to California Civil Code §3294;

6. For a determination that Plaintiff was and is entitled to receive long term disability income insurance benefits under the Policy;

7. For restitution of the Policy benefits wrongfully withheld by Defendant;

8. For an order compelling Defendant to make ongoing benefit payments to Plaintiff;

9. For costs of suit; and

10. For such other relief as is fair, just and equitable.

DATED: October 17, 2007

By: _____
Ryan A. Kent
Attorney for Plaintiff

FIRST AMENDED COMPLAINT
14

|  |  |
|---|---|
| 1 | GHERI GALLAGHER |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**PROOF OF SERVICE BY U.S. MAIL**

I DECLARE THAT: I am employed in the County of Marin, State of California. I am over the age of eighteen years and not a party to this action. My business address is 30 Mitchell Boulevard, San Rafael, California 94903.

On October 17, 2007, I served the following described documents:

*First Amended Complaint*

with Proof of Service attached, on the interested parties in this action by placing a true copy(ies) thereof enclosed in a sealed envelope addressed as follows:

Adrienne C. Publicover
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
525 Market Street, 17th Floor
San Francisco, CA 94105

I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at San Rafael, California.

Executed on October 17, 2007, at San Rafael, California.

_____
Ryan A. Kent