**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

GHERI GALLAGHER,

        Plaintiff,

  v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

        Defendant.

No. C 07-05224 SBA

**ORDER**

[Docket No. 16]

## INTRODUCTION

Before the Court is defendant Life Insurance Co. of North America's Motion to Dismiss [Docket No. 16], which seeks, under Federal Rule of Civil Procedure 12(b)(6), to dismiss plaintiff's California common law claims arising from LINA's alleged wrongful denial of long-term disability benefits, on the grounds of preemption, under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*  The Court finds this matter appropriate for resolution without a hearing, under Fed. R. Civ. P. 78(b).  For the reasons discussed below, the Court GRANTS the Motion, and dismisses with prejudice plaintiff's first claim for breach of contract, second claim for breach of the covenant of good faith and fair dealing, fourth claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2), fifth claim for equitable relief under 29 U.S.C. § 1132(a)(3), and her first prayer for general and compensatory damages for economic loss, second prayer for general and compensatory damages for severe emotional distress, and fifth prayer for punitive damages under section 3294 of the California Civil Code.

## BACKGROUND[1]

### I. Factual History

On or about July 5, 1988, Kimberly Services, Inc. ("KSI") hired plaintiff Gheri Gallagher as a Director of Clinical Services in their San Rafael, California location. Docket No. 11 ¶ 3 (First

---

[1] The facts are taken from plaintiff Gheri Gallagher's First Amended Complaint. [Docket No. 11.]

Amend. Compl. ("FAC")). At that time, she enrolled in a group long term disability income insurance program provided to KSI employees by LINA, with policy number LK-6617 ("the Policy"). *Id.* On October 6, 1989, Gallagher ceased active employment due to severe neck, shoulder, and right arm pain/radiculopathy, and headaches, secondary to cervical disc injury and disease, resulting in three herniated cervical discs. *Id.* ¶ 5. On December 12, 1989, Gallagher submitted a claim for benefits under the Policy to LINA. *Id.* ¶ 6. LINA approved her claim and commenced benefits, effective December 5, 1989. *Id.* ¶ 7.

From 1990 through 2005, LINA periodically requested and was provided documentation of Gallagher's ongoing total disability. *Id.* ¶ 8. On or about January 9, 2006, Ray Seet, M.D. submitted to LINA a Current Level of Functionality Assessment, indicating Gallagher could perform sedentary and light work. *Id.* ¶ 10. Dr. Seet, however, also indicated she was not able to return to work, not even part-time. *Id.* Dr. Seet also submitted a Physical Ability Assessment, dated January 10, 2006, indicating Gallagher was capable of various physical activities. *Id.* On March 22, 2006, Dr. Seet mistakenly executed a form submitted to him by LINA indicating Gallagher was able to perform full-time sedentary work. *Id.* ¶ 11.

On June 6, 2006, LINA notified Gallagher that based on the information provided by Dr. Seet, it had determined she was capable of full-time sedentary work and therefore did not meet the definition of having a total disability under the Policy. *Id.* ¶ 12. LINA thus terminated her benefits. *Id.* ¶ 13 para. 1. The letter explained how she could appeal LINA's determination, which she did. *Id.* ¶¶ 12-13.[2] In this proceeding, Dr. Seet confirmed he signed the March 22, 2006 form in error, and Robert S. Blum, M.D. confirmed Gallagher was totally disabled and not capable of work. *Id.* ¶ 13.b-c. On November 15, 2006, LINA denied Gallagher's appeal, providing instructions how to appeal, again. *Id.* ¶¶ 14-15.[3] Gallagher again appealed, which LINA denied on May 25, 2007, advising her she had no more appellate rights. *Id.* ¶¶ 16-17.

---

[2] This letter also advised Gallagher of her right to proceed under section 502(a) of ERISA were her appeal denied. *See* Docket 17, Ex. "B" at 4 para. 9, to Decl. of Annie Hong in Supp. of Notice of Removal ("Hong" Decl.), attached to Decl. of Dennis J. Rhodes in Supp. of the Mot.

[3] The letter also advised Gallagher of her right to proceed under section 502(a) of ERISA were her appeal denied. *See* Hong Decl., Ex. "B" at 8 para. 4.

## II. The Kimberly Quality Care Long Term Disability Plan

In regards to the Policy, it was initially provided to KSI and Gallagher as part of an ERISA plan called the Kimberly Quality Care Long Term Disability Plan (the "Plan"). *Id.* ¶ 18. In 1993 the Plan filed Form 5500[4] filed with United States Department of Labor, which indicated KSI was the "plan sponsor" and the "plan administrator." *Id.* ¶ 19. This was the last Form 5500 filed by the Plan. *Id.* ¶ 22.

Effective January 1, 1996, KSI merged into Kimberly Home Health Care, Inc. ("KHHC"), and ceased to exist as a business organization.[5] *Id.* ¶ 20. Since that date, KSI has had no employees and conducted no business. *Id.* Likewise, the Plan terminated on the merger date. *Id.* ¶ 21. As a result, since that date, neither KSI nor KHHC has had any involvement with the Plan. *Id.* And, KHHC has never filed any Forms 5500 with the DOL for the Plan. *Id.* ¶ 22. Gallagher claims, since the merger, LINA's only ongoing obligation under the Policy has been to her. *Id.* ¶ 21.

## III. Procedural History

On September 10, 2007, Gallagher sued LINA in Marin County Superior Court, for breach of contract and breach of the covenant of good faith and fair dealing. Docket No. 1, Ex. "1" at 2-3, 10-13 (Summons & Compl.). On October 11, 2007, LINA removed this matter to the Northern District, on diversity grounds. *See* Docket No. 1 at 1 (Notice of Removal). On October 16, 2007, LINA then filed a motion under Rule 12(b)(6) requesting the Court dismiss Gallagher's common law claims, but allow her to proceed solely under ERISA. *See* Docket No. 7 at 2.

The next day, on October 17, 2007, Gallagher filed a First Amended Complaint, alleging breach of contract, breach of the covenant of good faith and fair dealing, a claim to recover benefits under 29 U.S.C. § 1132(a)(1)(B), breach of fiduciary duty under 29 U.S.C. § 1132(a)(2), and a claim for equitable relief under 29 U.S.C. § 1132(a)(3). *See* FAC at 8-14. She also claimed various remedies, including restitution, declaratory and injunctive relief, compensatory damages for

---

[4] A plan administrator generally is required to file this form annually, providing certain plan information to the Department of Labor. *See* 29 U.S.C. §§ 1021-24, 29 C.F.R. § 2520.103-1 *et seq.*, *U.S. v. Harris*, 185 F.3d 999, 1004 (9th Cir. 1999).

[5] Gallagher states KSI "merged out of existence effective January 1, 1996." *Id.* ¶ 20. The parties provide no further information as to what type of merger actually took place.

3

1  economic losses and emotional distress due to LINA's failure to pay benefits, and punitive damages.
2  *Id.* at 14.
3        In response, on October 30, 2007, LINA filed a second motion to dismiss (the "Motion"),
4  requesting the Court dismiss the common law claims and the compensatory and punitive damages as
5  preempted by ERISA, and find the breach of fiduciary duty claim as only available to recover plan
6  losses, not her losses. See Docket No. 18 (Mem. of P. &. A. in Supp. of the Mot. After deadlines
7  were reset by the Court, Gallagher filed an opposition, on January 15, 2008, claiming when KSI
8  merged out of existence, the Plan ceased to exist, and the group Policy was constructively converted
9  to an individual policy, taking it outside ERISA's governance. *See* Docket No. 26 (Mem. in Opp'n
10 to the Mot. ("Opp'n"))  In reply, LINA claims the Policy did not so convert, and remained governed
11 by ERISA. *See* Docket No. 28 (Mem. of P. & A. in Reply to Pl.'s Opp'n to the Mot. (the "Reply")).

**LEGAL STANDARD**

**I.    Federal Rule of Civil Procedure 12(b)(6)**

14       Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if it does not
15 "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a
16 motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-
17 pleaded facts are taken as true. *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007).
18 Conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences, however,
19 are insufficient to defeat a motion to dismiss. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950
20 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). If
21 dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be
22 saved by any amendment. *See Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005), *cert. denied*,
23 546 U.S. 1172 (2006); *Gompper v. VISX, Inc*., 298 F.3d 893, 898 (9th Cir. 2002).

**ANALYSIS**

25       In this case, the three questions before the Court are, taking Gallagher's FAC as true, was she
26 a participant in an ERISA-regulated plan, on June 6, 2006, when LINA terminated her benefits, and
27 if so, is she thus limited to ERISA's remedies for disputing her termination, and if so, to what
28 remedies is she limited? For the reason discussed below the Court finds she was a participant in an

ERISA-regulated plan, and as such she may only proceed under her third claim for recovery of Plan benefits, under 29 U.S.C. § 1132(a)(1)(B).

## I.  The parties agree ERISA governed the Plan, at one time.

In ERISA, Congress set out to "protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." § 2, as set forth in 29 U.S.C. § 1001(b).

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987).[6]

"ERISA comprehensively regulates, among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death. § 3(1), 29 U.S.C. § 1002(1)." *Pilot Life Ins. Co.*, 481 U.S. at 44.

In this case, the parties agree that, at least until the merger of KSI into KHHC, the Plan was an "employee welfare benefit plan," by which KSI "through the purchase of insurance" provided long-term disability benefits to employees such as Gallagher. Thus, the parties do not dispute, that through January 1, 1996, ERISA governed the Plan.

## II.  If ERISA governed the Plan when her benefits were terminated, then ERISA would preempt any common law challenges to termination.

The parties do not dispute what impact ERISA preemption would have on Gallagher's common law claims. They agree if ERISA governed Gallagher's benefits on June 6, 2006, then she would be limited to remedies provided by ERISA for challenging the denial of her benefits under an employee welfare benefit plan. As the Supreme Court has held:

> The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, *see*

---

[6] "The term 'employee benefit plan' ... means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both ...." 29 U.S.C. § 1002(3).

ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern."

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

> ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for enforcement." This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans.

*Aetna Health Inc. v. Davila*, 542 U.S. at 208 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (internal quotation marks omitted)).

Under section 502(a) of ERISA, 29 U.S.C. § 1132(a), a participant or beneficiary may bring a civil action "to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan[.]" *Id.* § 1132(a)(1)(B). Also, "a participant, beneficiary or fiduciary [may sue] for appropriate relief under section 1109 of this title[,]" that is, for breach of fiduciary duty.[7] *Id.* § 1132(a)(2). And:

> a participant, beneficiary, or fiduciary [may sue] (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to

///

---

[7] Title 29 U.S.C. § 1132(a)(2) generally only provides relief for injuries to a plan, as opposed to participants and beneficiaries. Title 29 U.S.C. § 1109 states, in part:
> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

As a result, any recovery must generally go to a plan, as opposed to participants or beneficiaries. The Supreme Court recently recognized an exception, however, where the alleged fiduciary's breach directly reduced the value of a participant's individual 401(k) account, provided by an employee pension benefit plan. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, __ U.S. ___, 128 S.Ct. 1020, 1022-23, 1026 (2008).

6

obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3).

"[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co.*, 481 U.S. at 54. "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* "The ... carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.' " *Id.* (quoting *Mass. Mut. Life Ins. Co.*, 473 U.S. at 146).

Thus, the Supreme Court has held:

> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).

*Aetna Health Inc.*, 542 U.S. at 210 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).

"Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc.*, 542 U.S. at 209. In this regard, *Pilot Life Insurance Co. v Dedeaux,* 481 U.S. 41 (1987) is very instructive.

> Entex [the employer] had at this time a long term disability employee benefit plan established by purchasing a group insurance policy from petitioner, Pilot Life Insurance Co. (Pilot Life). Entex collected and matched its employees' contributions

7

1    to the plan and forwarded those funds to Pilot Life; the employer also provided forms
2    to its employees for processing disability claims, and forwarded completed forms to
3    Pilot Life. Pilot Life bore the responsibility of determining who would receive
4    disability benefits. Although Dedeaux sought permanent disability benefits following
5    the 1975 accident, Pilot Life terminated his benefits after two years. During the
6    following three years Dedeaux's benefits were reinstated and terminated by Pilot Life
7    several times.

*Id.* at 43.

Dedeaux sued Pilot Life, in diversity, claiming tortious breach of contract, breach of fiduciary duties, and fraud in the inducement, and seeking "[g]eneral damages for mental and emotional distress and other incidental damages in the sum of $250,000.00," and "[p]unitive and exemplary damages in the sum of $500,000.00." *Id.* at 43-44. He did not assert any remedies under ERISA. *Id.* at 44. For many of the reasons discussed above, the Supreme Court held, "Dedeaux's state law suit asserting improper processing of a claim for benefits under an ERISA-regulated plan" was preempted by ERISA, including his prayers for damages. *Id.* at 57, 57 n.4.

Likewise in *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir. 1988) (en banc), *cert denied*, 492 U.S. 906 (1989), the plaintiffs alleged emotional distress caused by the insurance carrier for a group medical plan delaying in paying their son's doctor's and hospital's bills. *Id.* at 491. The Ninth Circuit held ERISA preempted their claims for breach of contract and breach of the covenant of good faith and fair dealing, arising under California common law, and for failure to pay claims reasonably promptly, under section 790.03(h)(2) of the California Insurance Code. *Id.* at 491, 493-94.

The facts of *Pilot Life Insurance Co.* are almost identical to those before the Court, save for the question of the Plan's status, while the facts of *Kanne* are formally similar. Thus, rather clearly, if ERISA governed Gallagher's benefits on June 6, 2006, then it would preempt her common law claims and any prayers for relief arising therefrom, just as it did those of Dedeaux and Kanne.

///

///

8

1 **III.    The Plan terminated on January 1, 1996, but Gallagher's benefits continued, under the**
2 **        Plan's terms, still governed by ERISA.**
3     **A.    ERISA Definitions**

4     Before turning to the parties' arguments, the Court reviews some fundamental ERISA terms. ERISA's declared purpose is to "protect interstate commerce and the interests of participants in employee benefit plans ...." 29 U.S.C. § 1001(b). Under ERISA, an "employee benefit plan" is "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both ...." *Id.* § 1002(3). An "employee welfare benefit plan" is "any plan, fund, or program ... established or maintained by an employer ... to the extent [it] ... was established or is maintained for the purpose of providing for its participants ... through the purchase of insurance or otherwise ... benefits in the event of ... disability ...." *Id.* § 1002(1).

    In contrast, an "employee pension benefit plan" is "any plan ... established or maintained by an employer" to provide retirement income to its employees or defer income for them through the termination of their employment or beyond ...." *Id.* § 1002(2)(A). These plans are commonly either "defined benefit" plans, paying a defined benefit to the participant at retirement or on the occurrence of a triggering event, or they are "defined contribution" plans, into which a participant makes a certain contribution at set time, but the eventual benefits paid are not fixed by the terms of the plan. *Id.* § 1002(34)-(35), *see LaRue v. DeWolff, Boberg & Assocs., Inc.*, __ U.S. ___, 128 S.Ct. 1020, 1022 n.1 (2008). The traditional "pension" is an example of the former, while a 401(k) retirement plan, named after the Internal Revenue Code under which its exists, is an example of the latter. *See id.* at 1022, 1025.

    Under ERISA, a "participant" is "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ...." 29 U.S.C. § 1002(7); *Firestone Tire and Rubber Co. v. Bruch*, 489

///
///
///

9

1  ///

2  U.S. 101, 117 (1989) (a participant is a current employee or a person with a reasonable expectation

3  of employment, or person with a colorable claim for benefits).[8]

4  Further, a plan administrator can be "the person specifically so designated by the terms of the

5  instrument under which the plan is operated[,]" 29 U.S.C. § 1002(16)(A)(i), while a plan sponsor is

6  "the employer in the case of an employee benefit plan established or maintained by a single

7  employer[,]" *id.* § 1002(16)(B)(i).

8  Lastly:

9  a person is a fiduciary with respect to a plan to the extent (i) he exercises any

10  discretionary authority or discretionary control respecting management of such plan

11  or exercises any authority or control respecting management or disposition of its

12  assets ... or (iii) he has any discretionary authority or discretionary responsibility in

13  the administration of such plan.

14  *Id.* § 1002(21)(A).

15  Where a self-funded health benefit plan purchases excess loss insurance,[9] the insurer is not a

16  fiduciary under ERISA. *Kyle Ry., Inc. v. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 515-16 (9th Cir.

17  1993). But, "[w]hen an insurance company administers claims for an employee welfare benefit plan

18  and has authority to grant or deny the claims, the company is an ERISA 'fiduciary' under 29 U.S.C.

19  § 1002(21)(A)(iii)." *Libbey-Owens-Ford Co. v. Blue Cross and Blue Shield Mut. of Ohio*, 982 F.2d

20  1031, 1032-33, 1035 (6th Cir. 1993).

21  In this case, Gallagher has alleged that prior to January 1, 1996, she was a participant in the

22  Plan, sponsored and administered by KSI, who contracted with LINA, who had the authority to

---

[8] Except for whistle blowers and deceased parties, a court verifies whether a party is a participant, to verify standing to sue, as of the time of suit. *Miller v. Rite Aid Corp.*, 504 F.3d 1102, 1106 (2007). A "colorable claim" means colorable under ERISA. *Id.* at 1107 n.6. Here, Gallagher has standing because she has a colorable claim under ERISA.

[9] In this type of plan, participants and beneficiaries or their treating health care providers submit claims and bills to the plan sponsor, often an employer, who then pays the claims and bills out of its own funds. To protect the *plan* against large claims or bills, or a large aggregate amount of the same over a given time period, such plans often purchase "excess" or "stop-loss" insurance for the plan, itself.

grant or deny long-term disability claims, and thus was a fiduciary.[10]  On and after January 1, 1996, the plan sponsor and administrator ceased to exist.

### B. The Plan terminated January 1, 1996.

ERISA provides:

> Every employee benefit plan shall--
>
> (1) provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this subchapter,
>
> (2) describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan (including any procedure described in section 1105(c)(1) of this title),
>
> (3) provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan, and
>
> (4) specify the basis on which payments are made to and from the plan.

29 U.S.C. § 1102(b).

Thus, under ERISA, when KSI, the Plan sponsor and administrator, ceased administering and funding the plan, on January 1, 1996, KSI ceased to maintain the Plan, and it terminated. Admittedly, it did not terminate under the extensive procedures provided under subchapter III of ERISA, section 1301 *et seq.*, providing detailed controls for terminating *defined benefit* employee pension plans, see 29 U.S.C. 1301(a)(15), but the Plan was an *employee welfare benefit* plan, exempt from these requirements.  Further, the parties do not dispute the Plan terminated.

### C. ERISA's remedies apply to terminated *pension* plans.

Under ERISA, when a defined benefit plan terminates due to insolvency, a "distress termination," the Pension Benefit Guaranty Corporation may step in, if necessary, to provide replacement retirement monies.  *See* 29 U.S.C. § 1344; *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 250

---

[10] There is no evidence before the Court to suggest LINA's discretionary authority changed at any time, but the Court notes the analysis might be different if LINA did not gain discretionary authority until on or after, January 1, 1996, the day the Plan terminated.

11

(1993); *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 636-38 (1990). Thus, ERISA does not go way, just because a defined benefit plan does.

Likewise, generally speaking, when any type of employee pension plan terminates, ERISA preemption is still effective, if former participants or beneficiaries have vested interests in the amounts in dispute. For example, in *Waller v. Blue Cross of California*, 32 F.3d 1337 (1994), Blue Cross terminated its retirement plan by using approximately $62 million of the plan's assets to purchase annuities for participants and beneficiaries from insurance carriers. *Id.* at 1338. The plan, however, contained an additional $32 million in "residual" assets, which Blue Cross kept for itself as "reversion." *Id.* Plaintiffs represented participants and beneficiaries who were eligible, or would become eligible, to receive retirement benefits from the plan in the form of the annuities. *Id.*

Plaintiffs sued defendants under ERISA for breach of their fiduciary duties, under 29 U.S.C. § 1109, alleging they selected annuity providers who would maximize the reversion, which was excessive. *Id.* at 1339. The Ninth Circuit held "participants and beneficiaries of a terminated plan have no standing to seek legal damages for breach of fiduciary duty once the Plan was terminated and Plan liabilities were satisfied." *Id.* It also held, however, they could "pursue the equitable remedy of a constructive trust to distribute defendants' allegedly ill-gotten profits to the former participants and beneficiaries of the Plan." *Id.*

In so holding, the court noted, in *Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406 (9th Cir. 1988), it had "held that participants and beneficiaries of a terminated plan had standing to sue on behalf of all participants and beneficiaries of the plan for a constructive trust remedy to strip a fiduciary of ill-gotten profits earned from breach of his fiduciary duties." *Id.* at 1416-17. "We explained that 'ill-gotten profits [are] held in a constructive trust for plan participants and beneficiaries [and] may be construed as equitably vested benefits under an ERISA plan.' " *Id.* at 1419. "Thus, '[e]ven after plan participants and beneficiaries have received their actuarially vested benefits from the plan, the plan should be viewed as continuing to exist for the purpose of distributing the equitably vested benefits.' " *Id.*

Likewise, in *Horn v. Berdon, Inc. Defined Ben. Pension Plan*, 938 F.2d 125 (9th Cir. 1991), an employer and retirement plan participants agreed in writing to terminate the plan and distribute

12

all assets, which occurred. *Id.* at 127. The employer later found a plan surplus, which it tried to keep. *Id.* The former participants were allowed to sue under ERISA, because, as the Ninth Circuit held, the defendants could not upset the plaintiffs' "vested interests" in the newly-found surplus. *Id.* at 126-28.

Thus, even where employee pension plans are terminated, the former participants and beneficiaries must proceed under ERISA, where they seek benefits in which they have a vested interest. Although these cases just discussed did not address ERISA preemption, as this Court has already noted, where ERISA merely *provides* a remedy, it will preempt similar state remedies. *Aetna Health Inc.*, 542 U.S. at 209.

### D. ERISA's remedies apply to terminated *welfare* plans.

While there is an abundance of case law discussing what happens when a pension plan terminates, there is an extreme dearth of case law discussing what happens when a welfare plan terminates.[11] In part, this is because ERISA subjects pension benefit plans to mandatory vesting schedules. 29 U.S.C. § 1053; see In *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1160 (9th Cir. 2001). The rather obvious purpose is to ensure that after a certain period of time an employee will receive a certain percentage of their contributions plus earnings, or of their defined benefit, or of any employer contributions, if applicable, when they retire, or become otherwise eligible for plan withdrawals, or a plan terminates. In contrast, ERISA does not subject employee welfare benefit plans to any vesting schedules. *Id.*

///

---

[11] In this regard, LINA, the moving party, was not helpful. It did not address the issue in its Motion, and in its Reply, except for one case provided to the Court, discussed *infra*, all the cases provided dealt with pension plans, terminated or active. *See* Reply at 3-5, discussing *Pension Ben. Guar. Corp. v. Carter & Tillery Enters.*, 133 F.3d 1183, 1185 (9th Cir. 1998) (terminated defined benefit plan; no participant claims at issue); *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 983-84 (9th Cir. 1997) (ongoing industry-wide pension plan).
LINA also discussed *Prakash v. Pulsent Corp. Employee Long Term Disability Plan*, 06-7592 SC, slip op., 2007 WL 1864464, 2007 U.S. Dist. LEXIS 49850 (N.D. Cal. Jun. 28, 2007), an order denying a counter-defendant's motion to dismiss a counter-claimant's tort claims. *Id.* at *1. While the plaintiff did sue a terminated welfare plan and a long-term disability carrier, under ERISA, for denied benefits, *contrary to LINA's claim*, Judge Conti did not determine "that plaintiff's affirmative claim for benefits was to proceed under ERISA[,]" Reply at 4:6-8, as the issue was not before him.

As the Ninth Circuit has held, because of this distinction, welfare benefits need never vest nor accrue. *Id.* (citing *Owens v. Storehouse, Inc.*, 984 F.2d 394, 397-98 (11th Cir.1993) and *McGann v. H & H Music Co.*, 946 F.2d 401, 405 (5th Cir.1991)). "Because of this, '[a]n employer ... may unilaterally modify or terminate welfare benefits, unless it contractually agrees to grant vested benefits.' " *Id.* (quoting *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1510 (10th Cir. 1996)). "Contractual vesting of a welfare benefit, moreover, 'is an extra-ERISA commitment that must be stated in clear and express language.' " *Grosz-Salomon*, 237 F.3d at 1160 (quoting *Chiles*, 95 F.3d at 1513 (internal quotation omitted)). As a result, absent contractual vesting, ERISA does not bar a plan sponsor from unilaterally terminating previously offered welfare benefits or reducing their level at any time. *Grosz-Salomon*, 237 F.3d at 1160 n.17.

In this case, the parties have not presented any Plan vesting information to the Court.[12] Nonetheless, taking Gallagher's FAC as true, she was receiving *benefits* from LINA, first under the terms of the active Plan, then under the same terms, after the Plan terminated. The Court thus has two options before it in characterizing her post-termination situation. It can find she was receiving Plan benefits, under the terms of the employee welfare benefit Plan, from a Plan fiduciary, despite the absence of any Plan whatsoever. Or, as Gallagher invites the Court to do, it can find her group coverage "constructively" converted into individual coverage, at the Plan's termination.

The latter choice appears deceptively inviting, given the superficial illogic of finding Gallagher received "Plan" benefits arising under a terminated Plan, and as it accords with the general practice of transmuting pension benefits into individual annuities or fully vested accounts, when such plans terminate. The former choice, however, better aligns with ERISA's jurisprudence in the area of plan termination, which appears to state the rule that where a former participant or beneficiary has

---

[12] LINA did allegedly provide a plan document of some sort, but the copy was quite illegible. *See* Docket 17, Ex. "A" to Decl. of Annie Hong in Supp. of Notice of Removal, attached to Decl. of Dennis J. Rhodes in Supp. of the Mot. Had it been legible, the Court could have reviewed it without transforming the Motion into one for summary judgment. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

///

a colorable claim for benefits arising from an employee benefit plan, either for themselves or for the plan, ERISA will provide the applicable remedies.

Thus, the Court does not consider it dispositive of the matter that Gallagher may or may not be vested in the Plan. What is crucial is she began receiving long-term disability benefits under the terms of the Plan, and they continued under those terms, without change or interruption, after the Plan's termination, until LINA terminated them on June 6, 2006. While it may seem odd to allow a plan participant to pursue a plan fiduciary for plan benefits, when no such plan exists, this occurs in many cases such as *Waller*, *Murdock*, and *Horn*. The key issue is that the plaintiff must have a colorable claim for ERISA benefits, whether vested or not. Here, Gallagher clearly has a claim for long-term disability benefits she began receiving under the Plan, and which she continued to receive post-termination, in accordance with the terms of Plan, that survived termination.

In support of the Court's finding, it notes in *Pfahler v. National Latex Products Co.*, __ F.3d ___, 2007 WL 4395155, 2007 U.S. App. LEXIS 28886 (6th Cir. 2007), former participants of a terminated self-funded employee welfare benefit plan sued plan fiduciaries for breach of their duty, under 29 U.S.C. § 1132(a)(2), for allegedly misappropriating participants' contributions, leaving the plan unable to pay over $200,000 in claims at termination. *Id.* at *1-*3, *1-*9. The Sixth Circuit held the former participants could sue under § 1132(a)(2), on behalf of the plan, even though the plan no longer existed, as any monies recovered could be placed in trust, and administered by a newly appointed fiduciary, to satisfy the plan's liabilities. *Id.* at *5-*8, *14-*23.

The Court first notes Gallagher does not seek to accomplish what the *Pfahler* plaintiffs sought to accomplish. That is, she does not seek to recover monies misappropriated by LINA for its own ill-gotten uses, and restore them to the Plan. Gallagher seeks to recover benefits allegedly due to her, under the Plan's terms, under § 1132(a)(1)(B). Rather clearly, ERISA will govern suits where former participants or beneficiaries sue plan fiduciaries, on behalf of defunct employee benefit plans, to recover misappropriated funds for the plans. As the Ninth Circuit has held, however, where an insurance company for a self-funded health plan allegedly denies benefits improperly, it may unjustly enrich itself, but it does not take money *from the plan*. *Bast v.*

15

*Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1011 (9th Cir. 1998), *cert. denied*, 528 U.S. 870 (1999). Thus, in such cases, there can be no claim by the plan for restitution under either § 1132(a)(2) or (a)(3). Thus, at first glance, *Pfahler* may not seem directly applicable here.

What *Pfahler, Waller*, *Murdock*, *Horn* and numerous other cases collectively make clear, however, is that ERISA governs post-termination disputes for actions brought on behalf of defunct employee pension plans or defunct employee welfare benefit plans, under 29 U.S.C. § 1132(a)(2) or (a)(3), whichever applies. Here, Gallagher has a colorable claim for benefits due to her, after the Plan terminated, but under Plan terms that survived termination, and began receiving benefits prior to termination under the same terms. As a result, the Court is reluctant to carve out a questionable preemption exception for the rare claim arising under 29 U.S.C. § 1132(a)(1)(B), and disturb Congress' intent to fashion ERISA as a "comprehensive and reticulated statute" with "carefully integrated civil enforcement provisions." *LaRue*, 128 S.Ct. at 1027.

**IV.    Gallagher's Arguments**

   **A.    Preemption**

Gallagher makes two arguments against ERISA preemption. First she claims the insurance policy purchased by the Plan, is not itself an employee welfare benefit plan, and thus cannot be subject to ERISA, once the Plan terminated. Opp'n at 4-6. As LINA observes, however, and as *Pfahler, Waller*, *Murdock*, and *Horn* show, the mere termination of a plan, does not divest ERISA of its control over suits against plan fiduciaries. Reply at 3-5.

Gallagher also claims *Callaway v. G.S.P., Inc.*, 793 F.Supp. 133 (S.D. Tex. 1992) supports this position, but LINA correctly notes G.S.P. completely terminated its plan without telling Gallagher, who *then* when he later found out, having *then* been diagnosed with cancer, sued for various state remedies. Opp'n at 2-3. As LINA also notes, the court held ERISA did not preempt his causes of action, as there was no plan in which he could participate, nor from which he could recover benefits. *Id.*[13] In contrast, LINA notes, Gallagher received Plan benefits prior to termination, and seeks to recover benefits now, under the terms of the Plan. *Id.* at 3.

---

[13]    The Court notes courts are split as to whether notice is required when insurance terminates. John F. Buckley, *ERISA Law Answer Book*, 4:71 (5th ed. 2006).

16

1  ///

2  Gallagher then questions, reasonably enough, whether there is any need for ERISA to govern
3  here, where the Plan's funding is not at risk nor would it be exposed to inconsistent state and local
4  regulations, concerns which led Congress to create ERISA. Opp'n at 5-6 (discussing *Waks v.*
5  *Empire Blue Cross/Blue Shield*, 263 F.3d 872 (9th Cir. 2001) and *Demars v. CIGNA Corp.*, 173 F.3d
6  443 (1st Cir. 1999)). As noted by LINA, however, and already discussed, ERISA is a
7  comprehensive and reticulated statute with carefully integrated civil enforcement provisions, which
8  as *Pfahler, Waller*, *Murdock*, and *Horn* demonstrate, are widely used in post-plan-termination
9  proceedings. Thus, ERISA's uniformity concerns are at issue here.[14]

10  **B.      Constructive Conversion**

11  Gallagher also opposes LINA's motion, on the grounds the Plan *constructively* converted
12  into an individual benefit plan, when it terminated. In this regard, she seems to draw from cases
13  addressing employee welfare benefit plans which *expressly* provide for conversion to individual
14  plans, on the occurrence of certain events. *See*, *e.g.*, *Waks v. Empire Blue Cross/Blue Shield*, 263
15  F.3d 872, 873-875 (9th Cir. 2001).[15] For this argument, she relies on two cases.

16  In the first case, *Loudermilch v. New England Mutual Life Insurance Co.*, 942 F.Supp. 1434
17  (S.D. Ala. 1996), Loudermilch started his own company, and owned all its stock. *Id.* at 1435. He
18  then set up a pension benefit plan for himself and other employees, which he terminated when he
19  sold his company. *Id.* He then turned his fully vested benefits into a life insurance policy, over

---

[14] With regards to the funding issue, Gallagher has not presented any evidence as to how many other participants or beneficiaries like her are continuing to draw long-term disability benefits, or other benefits, under the defunct Plan, nor has she indicated what funding mechanisms, if any, are in place to keep these benefits flowing.

[15] The Court notes there is a Circuit split as to whether or not ERISA governs such policies, post-conversion. Although the Ninth Circuit in *Waks* held it does not, other Circuits disagree. Buckley, *supra*, 1:71. In addition, in *Waks*, the plaintiff purchased an individual policy under a conversion right offered to participants in a welfare benefit plan. 263 F.3d at 874. In holding this policy was not governed by ERISA, the Ninth Circuit noted ERISA's purpose was to protect plan funding and preempt inconsistent state and local regulations. *Id.* at 875. In this regard, the court noted these concerns were not at issue, as the plan had terminated years prior. *Id.* at 876. The court also held, however, it would not change its holding, *even if the plan were still in effect*, as the critical issue was the expressly chosen conversion by the plaintiff from group to individual coverage. *Id.* The Court notes Gallagher made no such choice, here.

17

which a dispute later erupted, and the carrier raised ERISA preemption. *Id.* at 1436. The court found there was none, as post-termination, Loudermilch had "converted" his benefits into an individual life insurance policy, and the dispute was over the policy, not any issues related to the defunct plan. *Id.* at 1437. As LINA notes, Gallagher seeks to recover benefits under the Plan which was never converted to provide individual coverages. Reply at 6.

In the second case, *Mizrahi v. Provident Life and Accident Insurance Co.*, 994 F.Supp. 1452 (S.D. Fla. 1998), the owner of a business, *used his business* to purchase individual disability insurance for himself. *Id.* at 1453. The business then purchased disability policies from the same carrier, for some employees. *Id.* The owner cancelled the employees' policies, however, when his business went bankrupt. *Id.* The owner then paid for his original policy *out of his own checking account*, until he became disabled. *Id.* The carrier claimed ERISA preemption when a coverage dispute went to court. *Id.* The Court held the owner had converted his policy *Id.* As LINA notes, there is no evidence Gallagher purchased individual coverage at any point, nor that she ever paid any premiums. Reply at 6-7.[16]

These cases do not support the Court finding Gallagher's coverage under the Plan constructively converted from group to individual, when the Plan terminated.[17] This is especially so where Gallagher has been continuously drawing benefits under the terms of the Plan, before and after termination, without paying premiums, and where both she and LINA relied on ERISA's rights and responsibilities to govern their roles as participant and fiduciary.

**V.    Gallagher's ERISA Remedies**

Gallagher seeks to recover benefits under 29 U.S.C. § 1132(a)(1)(B), claims a breach of

---

[16] Gallagher relies on a third case, *Christie v. Standard Ins. Co.*, No. C 02-02520, 2002 WL 31505648, 2002 U.S. Dist. LEXIS 22062 (N.D. Cal. Jul. 19, 2002) (unreported). Reply at 10-11. The case does not help her, *see* Opp'n at 7-8, but regardless, the Court declines to address an unreported trial level case, and further notes neither party bothered to provide the correct citation to the Court.

[17] Nor is this case similar to *Barringer-Willis v. Healthsource N.C. Inc.*, 14 F.Supp.2d 780 (E.D. N.C. 1998) or *McDonald v. Professional Ins. Corp.*, 946 F.Supp. 943 (M.D. Ala. 1996), where the courts held there was no ERISA preemption, where participants were offered to, and agreed to, convert their group coverage to individual coverage, and the plans were then terminated or replaced with different plans.

18

1 fiduciary duty under 29 U.S.C. § 1132(a)(2), and seeks equitable relief under 29 U.S.C.
2 § 1132(a)(3). She may proceed under the first remedy only. With regards to § 1132(a)(1)(B), the
3 fact the Plan no longer exists is not an issue, as the Plan *benefits* have flowed to Gallagher
4 continuously, since December 5, 1989, through their termination on June 6, 2006. Gallagher may
5 seek to enforce the terms of the Plan that survived to operate beyond Plan termination, and to
6 continue their operation into the future.

7 With regards to § 1132(a)(2), Gallagher claims she is suing on behalf of the Plan, because in
8 the events she recovers damages, she does not want the Plan to pay, she wants LINA to pay. Opp'n
9 at 12. Towards this end she seeks the Court to order LINA, and not the Plan, to do so. *Id.* In
10 opposition, LINA claims Gallagher is barred under *Ford v. MCI Communications Corp. Health and*
11 *Welfare Plan*, 399 F.3d 1076, 1078, 1082 (9th Cir. 2005), which disallowed Ford's claim for
12 "wrongful denial of LTD benefits" under § 1132(a)(2). Reply at 9.

13 The Court notes Gallagher, unlike Ford, is suing on behalf of the Plan. She cannot pursue
14 this claim, however, under *Bast v. Prudential Insurance Co. of America,* which held where an
15 insurance company for a self-funded health plan allegedly denied benefits improperly, it may have
16 unjustly enriched itself, but it did not take money *from the plan*. 150 F.3d at 1011. In other words,
17 Gallagher has not shown how LINA's conduct can expose the Plan to any liability, especially a
18 defunct one, where all she seeks from LINA is to recover past benefits, and obtain future benefits,
19 under the terms of the Plan. Further, she has not sued the Plan. So, if she prevails, it is unclear how
20 the Plan would be liable.[18]

21 With regards to § 1132(a)(3), she may not proceed under it, as this Court is bound by the
22 most recent Ninth Circuit pronouncement on this issue, which is that § 1132(a)(3) is unavailable to a
23 plaintiff who has another ERISA remedy available, such as § 1132(a)(1)(B). *Ford*, 399 F.3d
24 at 1082-83.

25 Lastly, in terms of damages or other relief, as Gallagher may only proceed under § 1132(a),
26 she may only seek "to recover benefits due to [her] under the terms of [her] plan, to enforce [her]

---

28 [18] Further, if Gallagher prevailed and if, for the sake of argument, she were entitled to benefits from the Plan, and not LINA, then presumably, the Plan should pay them to her.

///

rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan[.]" *Id.* § 1132(a)(1)(B).

## CONCLUSION

Accordingly, the Court GRANTS defendant Life Insurance Co. of North America's Motion to Dismiss [Docket No. 16], and dismisses with prejudice plaintiff's first claim for breach of contract, second claim for breach of the covenant of good faith and fair dealing, fourth claim for breach of fiduciary duty under 29 U.S.C. §1132(a)(2), fifth claim for equitable relief under 29 U.S.C. §1132(a)(3), and her first prayer for general and compensatory damages for economic loss, second prayer for general and compensatory damages for severe emotional distress, and fifth prayer for punitive damages under section 3294 of the California Civil Code.

IT IS SO ORDERED.

March 18, 2008

_____
Saundra Brown Armstrong
United States District Judge