

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact, commits a fraudulent insurance act. For residents of the following states, please see the reverse side of this form: *Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon or Virginia.*

## TO BE COMPLETED BY THE CLAIMANT

NAME OF CLAIMANT (Last Name) (First Name) (Middle Initial): **GALLAGHER  GHERI  C**
SOCIAL SECURITY NUMBER: **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**
TELEPHONE NUMBER: **(415) 4576865**

ADDRESS (Street): **107 Rocca Dr**  (City): **FAIRFAX**  (State): **Ca**  (Zip Code): **94930**

LIST STATES IN WHICH YOU MAY BE LIABLE FOR FILING TAX RETURNS: **CA**

NAME OF EMPLOYER/ASSOCIATION: **Kimberly Services (Polygholder)**
POLICY NUMBER: **LK 6617**

NAME OTHER SOURCES OF INCOME TO WHICH YOU AND YOUR DEPENDENTS ARE ENTITLED BY CHECKING THE APPROPRIATE SOURCES LISTED BELOW, SHOW AMOUNTS RECEIVED AND INDICATE PAYMENT FREQUENCY. IF YOU HAVE NOT PREVIOUSLY PROVIDED US WITH A COPY OF THE AWARD LETTER, PLEASE ATTACH A COPY. INDICATE "NONE" IN THE APPROPRIATE BLOCKS IF YOU DO NOT RECEIVE INCOME FROM A NAMED SOURCE

☐ Social Security $   ☐ Pension $   ☐ Governmental $   ☐ Workers' Compensation $   ☐ Other, Identify $

ARE YOU CURRENTLY WORKING?  ☐ YES  ☑ NO
If yes, please provide name and address of employer, job title, number of hours worked per week, and wage rate.

ARE YOU INTERESTED IN A VOLUNTARY REHABILITATION/RETRAINING PROGRAM?  ☐ YES  ☑ No

## TO BE COMPLETED BY ATTENDING PHYSICIAN

The claimant is responsible for the completion of this form without expense to the company.

**1. PRESENT CONDITION**

DIAGNOSIS: *Permanently Disabled* — DATE OF LAST VISIT **4/5/03**  FREQUENCY OF VISITS **Q 2-3 Mnths**
*Degenerative Disc Disease*

SUBJECTIVE SYMPTOMS: *Chronic Pain upper body*
OBJECTIVE FINDINGS (X-RAYS, E.K.G.'S, LABORATORY DATA AND ANY CLINICAL FINDINGS):
*Occipital Nerve Compression – Constant Headache*
*Multiple M.R.I.'s*

**2. PROGRESS**
(a) Has patient ☐ Recovered? ☐ Improved? ☐ Unchanged? ☑ Retrogressed?
(b) Is patient ☐ Bed Confined? ☐ Hospital Confined? ☑ Ambulatory? ☐ House Confined?
(c) Has patient been hospital confined? ☐ Yes  ☑ No  If yes, give Name and Address of Hospital _____
_____ Confined from _____ through _____

**3. CARDIAC (If Applicable)**
(a) Functional capacity (American Heart Ass'n.)  N/A
☑ Class 1 (No limitation)   ☐ Class 2 (Slight limitation)
☑ Class 3 (Marked limitation)   ☐ Class 4 (Complete limitation)
(b) Blood Pressure (last visit)  **136** SYSTOLIC  **86** DIASTOLIC

**4. LIMITATION (If there is a limitation, check and describe below)**

Standing ___   Climbing ___   Bending ___   Use of hands ___   Sitting ___
Walking ___   Stooping ___   Lifting ___   Psychological ___   Other (state which) ___
*Restrained 2° Chronic pain*

LINA 0422

**5. PHYSICAL IMPAIRMENT** (* as defined in Federal Dictionary of Occupational Titles)

☐ Class 1 - No limitation of functional capacity; capable of heavy work*  No restrictions (0 - 10%)

☐ Class 2 - Medium manual activity*  (15 - 30%)

☐ Class 3 - Slight limitation of functional capacity; capable of light work*  (35 - 55%)

☐ Class 4 - Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity (60 - 70%)

☑ Class 5 - Severe limitations of functional capacity; incapable of minimal (sedentary*) activity (75 - 100%)

☐ Remarks:

**6. MENTAL/NERVOUS IMPAIRMENT** (if applicable)

(a) Please define "stress" as it applies to this claimant.

☐ Class 1 - Patient is able to function under stress and engage in interpersonal relations (no limitations)

☑ Class 2 - Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitation)

☐ Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)

☐ Class 4 - Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)

☐ Class 5 - Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)

☐ Remarks:

**7. EXTENT OF DISABILITY**

                                           Patient's Regular Occupation            Any Occupation

When was patient able to go to work? ~ *N/A*   Mo.____ Day____ Yr.____   Mo.____ Day____ Yr.____

*Unable*

**8. REHABILITATION**

(a) Is patient a suitable candidate for further rehabilitation services?   ☐ YES ☑ NO

(b) Can present job be modified to allow for handling with impairment?   ☐ YES ☑ NO

|  | PATIENT'S JOB | | ANY OTHER WORK |
|---|---|---|---|
| (c) When could trial employment commence? ___/___/___ Mo. Day Yr. | Full-time ☐ Part-time ☐ | ___/___/___ Mo. Day Yr. | Full-time ☐ Part-time ☐ |

(d) Would vocational counseling and/or retraining be recommended?   ☐ YES ☑ NO

**9. REMARKS**

8-4-03   ROBERT S. BLUM, M.D               MEDICAL DOCTOR   707-553-6653
DATE      PRINT NAME        SIGNATURE (ATTENDING PHYSICIAN)      DEGREE      TELEPHONE

1416 Tennessee     VALLEJO         Ca        94590
STREET ADDRESS     CITY OR TOWN      STATE (OR PROVANCE)     ZIP CODE

LINA 0423



File Review                    06/15/01

Gheri Gallagher (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)      Kimberly Services      LK 6617

The Cx appears restricted to sedentary level work. She has not worked in the competitive workforce for approximately 10-years. The Cx's skills for sedentary level work (computer applications literacy and proficiency) cannot be assumed. A TSA is an option, but will require LMS (CA jurisdiction and extended separation from workforce). If sedentary level occupations are ID'd via TSA, it is highly improbable that LMS will substantiate employment earnings comparable to earnings test (60% BME = $1,872.00 mo / $22,464.00 annual), especially if BME requires indexing.

The Cx has not demonstrated or implied any interest in VR, and policy is without mandatory VR language.

Refer file back to TL for consultation and consideration of SAM adjudication or settlement agreement.

Jeff Green, M.S., CRC
Occupational Consultant

incur 10/6/89          SS denied  Quarters
BSD   12/5/89          W/c term
A∅    12/5/91          State - Dis - Term

53yr old female - who worked as director
of clinical services. BME 3,120.⁰⁰   Directing of nursing
Cx's Job Required some travel to meetings
several x a yr - driving required
WC Rec'd -
Dx - cervical disc herniation
Cx had a herniated lumbar disk - had surgery
and recovered - RTW. then she was assaulted
while working as a nurse in a prison hosp.
(91)  Clnt tried RTW as a supervisor - Restricted
from lifting more than 10 pounds / has difficulty
sitting for more than one hour @ a time or
standing / walking for more than 1 hour

10/25/91  IME - incapable of performing any wk
place activity - would be good / appropriate
for rehab

9/1/93  Clnt doesn't seem interested in rehab - no
call back

LINA 0444

11/93  Part time - clinical - continue traction / swimming

4/94 another accident 2/22/95 - fell of
swing / suffered a comminuted fracture
of her ① tibia / fibula - rod was inserted
in tibia 2/23/95.

2/7/96 IMC - feels cx does have the physical
capacity to perform a full time sed
job if she were able to do the job @
her own pace. After sitting or standing,
she developed nerve root irritation which
requires her to lie down 2-3 X a day -
feel R/L's are permanent - feel condition
will slowly degenerate, especially in the
cervical spine. feel that the lumbar
spine condition has stabilized / is likely
not to change -

Surgery may be needed.

2/7/96 Sedentary wk @ home    per Dme A1

3/28/96 SS - dismissal of claim          LINA 0445

2/2001 file was referred to SIU dept - it was
referred because the AP letterhead was diffnt

3/98 AP Blum feels cx can't do any jobs full time
which require long hours

- SIU reports no activity.

11/2000    appears to be the last visit - condition is
unchanged - continues twice a month w/ massage
plus traction daily, plus swimming as tolerated
She does walk as tolerated - continues to
c/o neck / arm pain w/ spastic motions -
will see every 3 months -
unable to lift more than 5 pounds
unable to bend, twist, stoop, crawl, climb
because of her pain -

- Clmt not awarded SSD - denied - W/c
has settled / we recovered all monies -
AP has always said she can't do her
job - however, feel we should look @
whether she can do a sedentary job -

will refer to OC for review -

K Harvey - TL -
65-01

LINA 0446

# Robert S. Blum, M.D.
Incorporated
## Neurological Surgery

Ross Kentfield Medical Building
Suite B
1150 Sir Francis Drake Boulevard
Kentfield, CA 94904-1424
Phone (415) 457-8111

Fax
(707) 552-0702

Vallejo Medical Plaza
Suite 210
1460 North Camino Alto
Vallejo, CA 94589-2584
Phone (707) 552-6633

Reply to: ☐ Kentfield   ☐ Vallejo

March 12, 1998

Elton R. Olson, Esq.
Attorney at Law
3017 Douglas Blvd.          Re: Gheri Gallagher
Suite 300
Roseville, California  95661

Mr. Olson:

I have reviewed the various R.N. positions listed on
pages 59, 60, and 61 of the Dictionary of Occupational
Titles.  These jobs are full time positions which
require long hours.

As I have previously stated, Ms. Gallagher requires frequent
(daily) in-home cervical traction and rest to alleviate
her symptoms, which could not realistically be accomodated
by these positions.

In addition Ms. Gallagher was employed as a Director of
Nursing for a home health agency, a job very similar  to
those outlined and due to the rigors of the job and her
disabilities she was forced to resign.

I hope this clarifies matters.

Thank you,

Robert S. Blum, M.D.
RSB:sc

Gheri C. Gallagher   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                          Pate 5

file.  She said she would get it back to us at her earliest convenience
since she doesn't understand why she should sign this after 11 years.
Tried to explain that we are always investigating her claim and that we
would need a new authorization periodically to obtain medical records.
She reiterated that she would get it to me at her earliest convenience
because she is busy with getting ready for the holidays.

**Action Plan:**
    CM to follow up with cx regarding authorization on 1/3.
    After receipt of authorization, obtain copy service and obtain
all medical records from Dr. Blum's office for review.
    CM to follow up on WC medical records

12/27/00  2:14 cx left a voice mail message as follows: "I am calling
in regards to the authorization which you sent me.  I will be glad to
sign it, but I have misplaced the papers you sent—I'm sorry— there has
been a lot of confusion with Christmas week and everything.  Please
send me a very basic release or medical records form and I will be glad
to sign it and return it to your.  If you have any questions, please
call me at 415-457-6865."

1/2/00  Second authorization sent out to cx

LINA 0510

Gheri Gallagher SSN 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                                    Page 4

uses a hand held showerhead. (She mentions that she is changing hands
with the phone because her arm has gone numb) she doesn't know why she
hasn't gotten a head set for the phone yet. She cooks, mostly
microwave things. If she cooks a larger meal, someone is coming over
and they can pick up the pots and pans. She would never lift a roast
out of the oven. She does her own laundry; small, frequent loads,
maybe once a day. She has no stairs to the laundry, but does have them
in the house. She doesn't have trouble maneuvering them. She doesn't
sleep well at all; she will wake up several times during the night with
numbness to her arms. She mainly sleeps on her sides and she usually
has to get up and put her traction on about every third night. She is
a pillow addict. She does very little shopping, she has enough clothes
and she doesn't have any money to buy clothes. She will go out to eat
with people; she was out last night with her boyfriend to celebrate his
birthday. She states the people don't know that anything is wrong with
her because she has been through so much biofeedback and pain
management that she is able to conceal it from them

     She has voc counseling through her WC carrier years ago and they
couldn't find anything for her to do. She has a computer, but she
can't use it, she has thought about consulting, but she has been out of
the field for so long now that she would have to go back to school.
They couldn't find anything for her that would make her enough money to
live on. They recommended that she continue her traction. She has
only worked as a RN since she was 19 years old. She would be very
willing to explore all options about working at home, but only if it
were going to make her more money than what she is currently on. If
not, it is only helping CIGNA and not her. She is afraid to let go of
her lifeline of the income she is making, she feels that she is in a
catch 22 situation.

     When asked about participating in a FCE, she stated she has had
plenty of them done and she doesn't see the point because they are only
working for the insurance company. She states that Dr. Peoples was a
WC physician and when he was doing her exam he was slanting it so far
to the left for the WC company. She states he was a terrible
physician, his exam was "totally bogus". When she has mentioned him to
other physician and physician friends they say he is a puppet for the
WC people.

     2:25 conversation ended.

**RN Action Plan:**
     Will ask for medical records from date of injury to today's date
from Dr. Blum's office. Will have to send in a copy service for this.
     Advised by CM to send file to SIU unit for investigation and
possible surveillance.
     Will send cx authorization to sign for MR from Dr. Blum. After
receipt of auth, will send for MR.

12/19/00 11:45 Spoke with cx regarding the authorization. She doesn't
want to sign the release with all of the information that can be
obtained. I explained that she can marked out anything she doesn't
want on there and initial. She didn't understand why we need this
form. It was explained that we do not have any medical records from
Dr. Blum except for the narrative reports that are sent in and we need
the authorization to send a copy service into his office to copy the

LINA 0511

Gheri C. Gallagher    SSN 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                    Page 3

11/15/00  Obtained licensure information from the AMA on the Internet.
Called the board and Dr. Blum doesn't have any disciplinary action or
lawsuits recorded.

    11:15 Spoke with Sandy at Dr. Blum's office, asked about the use
of a standard letterhead for his reports.  She laughed and stated Dr.
Blum types up all of his reports and it depends on what format he is in
so we get different letterheads.

    1:50  Spoke with cx, she is going to see Dr. Blum today because
she is having increased radiculopathy and pain down arms and neck.  Any
time she increases her activities makes it worse.  She knows he is
going to tell her to increase her traction or have surgery.  He wants
to place rods in her neck for the surgery and there is no guarantee.
She laughed about Dr. Blum and states he is like the absent-minded
professor.

    She is single.

    Before the increase in numbness she was using the traction twice
a day, but she has increased it over the last couple of weeks and uses
it during the night.  It is a real help and can make her pain free for
several days.  Her fingers are feeling weird and she doesn't know how
to describe it, but it is like charley horses in the fingers.  The pain
is weird and there is tingling.  She is not surprised and Dr. Blum will
tell her there is increased pressure to her neck.  He won't insist on
surgery, they consider her manageable the way she is now.  When she
tries to resume a normal life she has increased numbness and pain.  She
feels like she has a rubber band around her neck, head, and eye on the
right side.

    She continues with massage twice a month and swimming.  WC is
paying for these; it was in their settlement.  She has had to modify
the swimming, she uses a snorkel and mask, but when she gets out of the
pool and into the hot tub, both arms are numb.  She starts to cry and
leave.  She states there is no physical activity that she can do that
helps her symptoms.

    The traction will give her relief within 15 minutes of putting it
on.  She will then wear it for 30-45 minutes; sometimes she falls
asleep with it on.  She will get up in the night and put it on if her
neck and arms are hurting her severe enough.

    She is scared about her future, she has thought about settling
the claim, but then what would she do for money in the future.  Her
family is setting up a trust fund for her so that when she becomes 65
and we close her down she will have money.  She was an ER nurse and she
is not nuts about not having any money and not working, but there is
nothing that she can do.

    Her average day consists of walking 20-30 minutes if it is not
too strenuous.  She grocery shops every day because she is limited in
what and how much she can carry.  She drives to the store; it is a
couple of blocks away.  She read, meditates, wears traction, socializes
with friends when they come over.  She "goes out", does a lot of
writing but after a page or two she had to stop.  She is considering
obtaining a dictation machine.  She wants to take up painting, but
doesn't see how she can really do this.  She doesn't carry a purse, but
carries a backpack, then changed that to a fanny pack.  She is able to
do all of her self care, but if she places her arms in certain
positions, they will go numb, she has dropped the brush before.  She

Gheri Gallagher   SSN 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                              Page 2

restriction of motion of the neck, and she has marked abnormalities on
repeat MRI's. Her disability restricts her from heavy lifting,
repeated bending and stooping. Dr. Blum recommends that she be seen
several times a year unless her condition becomes worse, mild
medication, and continues therapies. He states she is not to do her
job as a RN, and would be considered a qualified injured worker, were
she to desire to engage in the rehab process.
May 1995 the cx fell out of a swing and fractured her left tibia and
fibula which was repaired surgically.
A letter in 11/95 to Mr. Young states her restrictions are no
continuous sitting or lifting more than 10-15 pounds.
CIGNA requested another IME in 2/96, Dr. Kurtz, Orthopedic surgeon,
performed it. In the history of the report she reports she in having
increased lower back pain that is aggravated by prolonged sitting,
bending and lifting. She also had symptoms of patellar subluxation in
both knees, which had not been worked up. She reports to Dr. Kurtz
that she uses the traction 2-3 times a day for ¼ to ¾ of an hour. If
she goes without treatment for too long, the pain will become too
severe, cause stiffness and headaches. Her activities are reported as
walking 15-20 minutes at a time, lifting 10-15 pounds, sitting for 45
minutes at a time and standing for one hour at a time. She reports
taking Ibuprofen 600mg 3-5 times a day, and Valium prn, about once a
week. She uses traction, stretching, and exercise to relieve the pain.
On exam, the neck flexion is decreased, and 15 degrees of extension,
both are stopped by pain. Lateral bending is 10 degrees right, and 20
degrees left. To the right she notes pain radiating into the right
neck, trapezius, and arm. Rotation is 30 degrees right and 35 degrees
left with pain at the extremes bilaterally. Motor strength is good
bilaterally, with neck pain with resisted arm flexion and abduction.
Sensory exam is normal, please read report for grip strength, arm
circumferential measurements, and pinch strength. Tinel's sign is
negative, wrist compression is negative. Lumbar spine reveals
decreased ROM with 10 degrees each lateral bending; forward she can
bring her fingertips to within twelve inches of her toes. She has 10
degrees extension with pain at lumbosacral junction. SLR positive left
at 70 degrees, negative right. Lifting or carrying gives pain to the
low back. Dr. Kurtz's finding correlate the objective with the
subjective findings. He feels the cx has the physical capacity to
perform a full time sedentary job if she were able to perform this job
at her own pace at home.
There are multiple letters, conversations regarding her WC settlement
award and overpayment. Cx has never received SSDI.
A letter dated 2/11/98 from Dr. Blum to Elton Olson, Esq. indicated
nothing has changed with the cx and she is maintaining her condition
well since she is not working. It is also noted that she worked in an
administrative capacity but could not continue due to the physical
requirements of the job; dates unknown.
March 2000 we received a PAA, please see report on file, this is the
last medical on file.

It is noted that each report from Dr. Blum has a different letterhead
with style, type and format. There have also been different signatures
for Dr. Blum throughout the file. This will be expressed to the CM.

LINA 0513

MEDICAL LOG DOCUMENTATION

Cx:  Gheri Gallagher
SSN: 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
Home Phone: 415-457-6865
Occupation: Registered Nurse
DOB: 5/14/48

DOD: 10/6/89
BSD: 12/5/89
A/O: 9/16/91

MC:  Jo Jacobson RN

Review of file:
11/15/00 Cx is a 52 year old female with HNP to neck. There are no
office notes from Dr. Blum only supp forms and narrative reports.
CIGNA has performed two IME's, one in 1991, the other in 1996.
According to the 1991 IME, the cx has a history of multiple neck
injuries since teenage years. She was placed in Crutchfield tongs
after a football injury with her brother. In 1985, while working as a
nurse, she was assaulted in the San Quentin prison and developed a neck
pain with paresthesias to the right arm. This injury became so severe
that she had to support her right arm in her lap due to pain. She went
on disability in 1989. In January of 1990, she was involved in a MVA
in which she was rear-ended and this aggravated the symptoms in her
neck.   There has been intermittent pain in the left arm primarily due
to sleep related to abnormal posture. She has noted weakness of grip
in the right and feels the entire right arm is not as strong as the
left. There is no fixed numbness. She also has a history of lumbar
laminectomies right and left and has been stable.
There have been two MRI's reports; we have a copy of the 1989 report.
Please see the report for details of findings.
She tried to work as a nursing supervisor, but found the pain precluded
her from this work. She has been using traction frequently, has been
in physical therapy and uses medication. The traction appears to
relieve the pain and the cx reports she has a regime of use 2-5 times a
day.
In 1993, the cx had an aggravation of her lumbar back due to a
fractured coccyx.
A June 1994 letter from Dr. Blum states in the cx's exam, she has
normal biceps, triceps reflexes in the arms and normal strength and
feeling in the arms. She is taking medication for pain relief. Dr.
Blum also states that she uses traction everyday, with other modalities
of therapeutic spa, massage one or twice a month, swim therapy. He has
not completely ruled out surgery, but this will depend on her symptoms.
November 1994, Dr. Blum sends a report in which he was asked to prepare
a medical legal report and address issues of level of disability from
her lawyer, Roy Otis. Dr. Blum had a report from Dr. Peoples (unaware
of this physician) who states that her condition has remained the same.
Please see the report in detail. Within the report Dr. Blum states the
cx is "addicted to traction" meaning she requires use of home traction
in order to give herself relief. In the rating section of the report
her subjective factors are constant slight pain in the neck,
intermittent slight to moderate pain radiating down the right
(dominant) extremity, with intermittent numbness and tingling of the
first three fingers of the right hand. Objectively there is mild

## MEDICAL ASSESSMENT OF ABILITY TO DO

## WORK-RELATED ACTIVITIES (PHYSICAL)

GALLAGHER GERALDINE
Patient Name

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
Social Security Number

1979
Date Patient First Examined

2-11-98
Date of Most Recent Exam

Q 4-6 mos.
Frequency of Visits

DEGENERATIVE DISC DISEASE
Principal Diagnosis

CERVICAL RADICULITIS
Secondary Diagnosis

H+P EXAMS, MRI's, X-RAYS
Basis of Diagnosis

OCTOBER 1985
Onset Date of Disability

This data should be based on allegations from Patient, work history, medical discovery
or other discovery concerning severity of impairment.

1.        In your opinion is the claimant's ability to walk, stand or sit affected by any
impairment ?        Yes ✓      No _____

LINA 0578

If yes, what medical findings support your assessment ? H+P, MULTIPLE
_____ PHYSICAL EXAMS & MRI's
IN ADDITION PT HAS SUFFERED OTHER
INJURIES WHICH HAVE AGGRAVATED PRIMARY
DIAGNOSES, INCLUDING ① FX & DISLOCATION OF
COCCYX 7/94 AND ② SPIRAL COMMINUTED FX L TIBIA →
TIBIAL RODDING 3/95

2-26-1998 1:20PM   FROM BLUM DAQUIOAG. 707 552 0702                    P. 5

During an 8-hour work day, how many hours can the claimant be expected to tolerate the following work related activities:

|  |  | TOTAL | WITHOUT INTERRUPTION |
|---|---|---|---|
| WALKING: | a. Less than one hour | ✓ |  |
|  | b. One to two hours |  |  |
|  | c. Two to four hours |  |  |
|  | d. Four to six hours |  |  |
|  | e. Six to eight hours |  |  |
| STANDING: | a. Less than one hour | ✓ |  |
|  | b. One to two hours |  |  |
|  | c. Two to four hours |  |  |
|  | d. Four to six hours |  |  |
|  | e. Six to eight hours |  |  |
| SITTING: | a. Less than one hour |  |  |
|  | b. One to two hours | ✓ |  |
|  | c. Two to four hours |  |  |
|  | d. Four to six hours |  |  |
|  | e. Six to eight hours |  |  |

2.    In your opinion is the claimant's ability to lift or carry objects affected by any impairment ?    Yes ✓    No ____

If yes, what medical findings support your assessment ? _SUBJECTIVE &_
_OBJECTIVE FINDING ON MULTIPLE EXAMINATIONS,_
_MRI's , H+P etc_

Which category below best describes the amount of weight the claimant can lift and/or carry and how often ?

| | Frequently | Occasionally | Never |
|---|---|---|---|
| Less than 5 lbs. | ✓ | ( ) | ( ) |
| 5-10 lbs. | ( ) | ✓ | ( ) |
| 10-20 lbs. | ( ) | (✓) | ( ) |
| 20-50 lbs. | ( ) | ( ) | ✓ |
| Over 50 lbs. | ( ) | ( ) | ✓ |

2

LINA 0579

2-26-1998 1:21PM　　FROM BLUM DAQUIOAG:707 552 0702　　　　　　　　　P. 6

3.　　Is the claimant restricted in climbing stairs or ladders ?

Yes ✓　No ＿＿　Totally ＿＿　Partially ✓

4.　　Is the claimant restricted in bending ?

Yes ✓　No ＿＿

5.　　Does the claimant require any rest periods during the day ?

Yes ✓　No ＿＿　　See # 8

6.　　Please describe any emotional problem or mental dysfunction the claimant has including confusion, forgetfulness and disorientation: PT SUFFERS FROM INTERMITTANT PERIODS OF DEPRESSION 2° TO CHRONIC PAIN AND LIMITED ABILITIES

7.　　Describe any medication the claimant takes and any possible side effects experienced: DIAZAPAM 5mg BID→TID PRN→ MUSCLE SPASMS IBUPROPHEN 600mg PRN-PAIN

8.　　Do you feel the claimant is capable of performing at least the full range of sedentary work ?　　　　Yes ＿＿＿ ✓

Please give your reasons for your answer: GHERI REQUIRES DAILY (SOMETIMES SEVERAL X/DAY) TO PLACE HERSELF IN CERVICAL TRACTION TO CONTROL PAIN & OTHER SYMTOMS. FREQ REST & Δ OF POSTION

9.　　Is the claimant able to work an eight hour day five days per week ?

Yes ＿＿＿　No ✓

Please give your reasons for your answer: AS PER #8 → FREQUENT OF IN-HOME TRACTION & REST CHONIC PAIN & DYSFUNCTION

LINA 0580

2-26-1998 1:21PM     FROM BLUM DAGUIOAG 707 552 1702                    P. 7

10.     Does the claimant experience pain due to his/her condition ? Yes ✓ No ___

If so, how would you describe the level of pain you feel the claimant is experiencing:

_MODERATE C TREATMENT_
_SEVERE WITHOUT_

11.     Do you feel the claimant's reports of pain are credible ? Yes ✓ No ___

Please give reasons for your answer: _PT IS AN R-N. $ I_
_HAVE TREATED HER FOR 18 yrs SHE IS A_
_~~SHE~~ COMPLIANT PT C APPROPRIATE RESPONS._

12.     Do you expect improvement or continuing improvement in the claimant's condition?

Yes ___ No ✓

Please give reasons for your answer: _PT HAS A DEGENERATI_
_CONDITION. SHE IS AT BEST PtS_

13.     If you have other comments regarding the claimant's condition, please provide them

here: _AS OUTLINED PT REQUIRES FREQUENT RES[ &_
_CERVICAL TRACTION. SHE IS UNABLE TO WORK FO_
_OVER ONE HOUR CONTINUOUSLY IN AN EIGHT_
_HOUR DAY OR SIT " FOR AN HOUR._

14.     Please attach copies of any recent testing and/or reports in your possession

pertaining to your findings. _PT's LEGAL COUNSIL IS IN POSSESI_
_OF PAST REPORTS IN MRI's H+P's & NUMERO_
_EXAMS_

_____. MD, R S. BLUM MD          2/11/98
Signature Title Printed                          Date

LINA 0581

# Supplementary Claim
# Disability Benefits

Life Insurance Company of North America
Connecticut General Life Insurance Company
Insurance Company of North America
INA Life Insurance Company of New York
Subsidiaries of CIGNA Corporation    RECEIVED

N. LA MAY 1 3 1997

CIGNA-DALLAS

Any person who knowingly and with intent to defraud any insurance company or other person files a statement containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

## TO BE COMPLETED BY THE CLAIMANT

NAME OF CLAIMANT (Last Name) (First Name) (Middle Initial)  SOCIAL SECURITY NUMBER  TELEPHONE NUMBER

GALLAGHER    GHERI  C    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    (415) 4576865

ADDRESS (Street)  (City)  (State)  (Zip Code)

107 ROCCA DR.    FAIRFAX    C.A.    94930

LIST STATES IN WHICH YOU MAY BE LIABLE FOR FILING TAX RETURNS

NAME OF EMPLOYER/ASSOCIATION    POLICY NUMBER

KIMBERLY SERVICES    LK 0006617

NAME OTHER SOURCES OF INCOME TO WHICH YOU AND YOUR DEPENDENTS ARE ENTITLED BY CHECKING THE APPROPRIATE SOURCES LISTED BELOW. SHOW AMOUNTS RECEIVED AND INDICATE PAYMENT FREQUENCY. IF YOU HAVE NOT PREVIOUSLY PROVIDED US WITH A COPY OF THE AWARD LETTER, PLEASE ATTACH A COPY. INDICATE "NONE" IN THE APPROPRIATE BLOCKS IF YOU DO NOT RECEIVE INCOME FROM A NAMED SOURCE.

| ☐ Social Security | ☐ Pension | ☐ Governmental | ☐ Workers' Compensation | ☐ Other, identify |
|---|---|---|---|---|
| $ | $ | $ | $ | $ |

ARE YOU CURRENTLY WORKING?   ☐ YES  ☒ NO.
If yes, please provide name and address of employer, job title, number of hours worked per week, and wage rate.

ARE YOU INTERESTED IN A VOLUNTARY REHABILITATION/RETRAINING PROGRAM?
☐ YES  ☒ No

## AUTHORIZATION TO RELEASE INFORMATION

I certify that the information shown above is correct to the best of my knowledge and belief. I authorize any Health Care Provider, Insurance Company, Employer, Person or Organization to release any information regarding medical, dental, mental, alcohol or drug abuse history, treatment or benefits payable, including disability or employment related information, to any CIGNA company, the Plan Administrator, or their employees and authorized agents for the purpose of validating and determining benefits payable. This data may be extracted for use in audit or statistical purposes. I understand that for my authorized representative will receive a copy of the authorization upon request. This authorization or a photostatic copy of the original shall be valid for the duration of the claim.

SIGN HERE   Gheri C Gallagher    5-5-97
CLAIMANT'S SIGNATURE    DATE

## TO BE COMPLETED BY ATTENDING PHYSICIAN
The claimant is responsible for the completion of this form without expense to the company.

### 1. PRESENT CONDITION

P+S 7 Housekeeping    Reeducation    2-26-97    92-6 mo.
DIAGNOSIS    DATE OF LAST VISIT    FREQUENCY OF VISITS

Degenerative Cervical Disc Disease

SUBJECTIVE SYMPTOMS    OBJECTIVE FINDINGS (X-RAYS, E.K.G.'s, LABORATORY DATA AND ANY CLINICAL FINDINGS)

Pain, numbness, spasms, necks, shoulders, arms & hands R&L

Substantiated by multiple MRI's, H&P & EXam.

### 2. PROGRESS

(a) Has patient ☐ Recovered? ☐ Improved? ☐ Unchanged? ☒ Retrogressed?   & symptoms of nerve root irritation.

(b) Is patient ☐ Bed Confined? ☐ Hospital Confined? ☒ Ambulatory? ☐ House Confined?

(c) Has patient been hospital confined? ☐ Yes ☒ No  If yes, give Name and Address of Hospital _____

_____ Confined from _____ through _____

### 3. CARDIAC (If Applicable)

(a) Functional capacity    ☒ Class 1  (No limitation)    ☐ Class 2  (Slight limitation)
(American Heart Ass'n.)    ☐ Class 3  (Marked limitation)    ☐ Class 4  (Complete limitation)

(b) Blood Pressure (last visit)   136 SYSTOLIC   86 DIASTOLIC   Pt is on anti-hypertensive

LINA 0596

**4. LIMITATION** (if there is a limitation, check and describe below)

Standing ✓　　Climbing ✓　　Bending ✓　　Use of hands ✓　　Sitting ✓

Walking ✓　　Stooping ✓　　Lifting ✓ 5-15 lb　Psychological _____　Other (state which) _____

---

**5. PHYSICAL IMPAIRMENT** (* as defined in Federal Dictionary of Occupational Titles)

☐ Class 1 - No limitation of functional capacity; capable of heavy work*  No restrictions (0 - 10%)
☐ Class 2 - Medium manual activity*  (15 - 30%)
☐ Class 3 - Slight limitation of functional capacity; capable of light work*  (35 - 55%)
☐ Class 4 - Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity (60 - 70%)
☑ Class 5 - Severe limitations of functional capacity; incapable of minimal (sedentary*) activity (75 - 100%)
☐ Remarks: _Due to need for frequent in-home cervical traction_

**6. MENTAL/NERVOUS IMPAIRMENT** (if applicable)

(a) Please define "stress" as it applies to this claimant.

☑ Class 1 - Patient is able to function under stress and engage in interpersonal relations (no limitations)
☐ Class 2 - Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitation)
☐ Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
☐ Class 4 - Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)
☐ Class 5 - Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)
☐ Remarks:

Do you believe the patient is competent to endorse checks and direct the use of proceeds thereof?　　☑ YES　☐ NO

**7. EXTENT OF DISABILITY**　　Patient's Regular Occupation　　Any Occupation

When was patient able to go to work?　　Mo. ____ Day ____ 19 ____　Mo. ____ Day ____ 19 ____

_She has not worked since onset of LTD_

**8. REHABILITATION**

(a) Is patient a suitable candidate for further rehabilitation services?　　☐ YES ☑ NO

(b) Can present job be modified to allow for handling with impairment?　　☐ YES ☑ NO

(c) When could trial employment commence? ___/___/___　Mo. Day Yr.

PATIENT'S JOB
Full-time ☐
Part-time ☐　　___/___/___ Mo. Day Yr.

ANY OTHER WORK
Full-time ☐
Part-time ☐

(d) Would vocational counseling and/or retraining be recommended?　　☐ YES ☑ NO

**9. REMARKS**

| | | | |
|---|---|---|---|
| 5-8-97 | R. BLUM | _(signature)_ | M.D.　707 552-4433 |
| DATE | PRINT NAME | SIGNATURE (ATTENDING PHYSICIAN) | DEGREE　TELEPHONE |

1410 N. Camino Alto S-210　VALLEJO　　CALIFORNIA　　94589-2584
STREET ADDRESS　　CITY OR TOWN　　STATE (OR PROVINCE)　　ZIP CODE

**4. LIMITATION** (If there is a limitation, check and describe below)

Standing : ✓    Climbing ✓    Bending ✓    Use of hands ✓    Sitting ✓

Walking ✓    Stooping ✓    Lifting ✓ 5-15lb    Psychological ____    Other (state which) ____

**5. PHYSICAL IMPAIRMENT** (* as defined in Federal Dictionary of Occupational Titles)

☐ Class 1 - No limitation of functional capacity; capable of heavy work* No restrictions (0 - 10%)

☐ Class 2 - Medium manual activity* (15 - 30%)

☐ Class 3 - Slight limitation of functional capacity; capable of light work* (35 - 55%)

☐ Class 4 - Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity (60 - 70%)

☑ Class 5 - Severe limitations of functional capacity; incapable of minimal (sedentary*) activity (75 - 100%)

☐ Remarks: Due to need for frequent in-home cervical traction

**6. MENTAL/NERVOUS IMPAIRMENT** (if applicable)

(a) Please define "stress" as it applies to this claimant.

☑ Class 1 - Patient is able to function under stress and engage in interpersonal relations (no limitations)

☐ Class 2 - Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitation)

☐ Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)

☐ Class 4 - Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)

☐ Class 5 - Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)

☐ Remarks:

Do you believe the patient is competent to endorse checks and direct the use of proceeds thereof?    ☑ YES    ☐ NO

**7. EXTENT OF DISABILITY**

Patient's Regular Occupation          Any Occupation

When was patient able to go to work?    Mo. ____ Day ____ 19 ____    Mo. ____ Day ____ 19 ____

She has not worked since onset of LTD

**8. REHABILITATION**

(a) Is patient a suitable candidate for further rehabilitation services?    ☐ YES    ☑ NO

(b) Can present job be modified to allow for handling with impairment?    ☐ YES    ☑ NO

|  | PATIENT'S JOB |  | ANY OTHER WORK |
|---|---|---|---|
| (c) When could trial employment commence?  ___/___/___  Mo. Day Yr. | Full-time ☐ Part-time ☐ | ___/___/___  Mo. Day Yr. | Full-time ☐ Part-time ☐ |

(d) Would vocational counseling and/or retraining be recommended?    ☐ YES    ☑ NO

**9. REMARKS**

| | | | | |
|---|---|---|---|---|
| 5-8-97 | R. BLUM | [signature] | M.D | 707 552-6433 |
| DATE | PRINT NAME | SIGNATURE (ATTENDING PHYSICIAN) | DEGREE | TELEPHONE |
| 1400 N. Camino Alto S-210 | VALLEJO | CALIFORNIA | | 94589-2584 |
| STREET ADDRESS | CITY OR TOWN | STATE (OR PROVINCE) | | ZIP CODE |

● ●

**MICHAEL A. KURTZ, M. D.**
A MEDICAL CORPORATION
ORTHOPEDIC SURGERY
NORTHGATE MEDICAL CENTER
750 LAS GALLINAS AVENUE
SAN RAFAEL, CALIFORNIA 94903
TELEPHONE (415) 479-6212
FAX (415) 479-1163

February 7, 1996

Rob Davidson
Professional Claim Services, Inc.
3158 Danville Blvd.
Alamo, CA 94507

Re:  Gheri Gallagher
     DOI:                      10/05/85
     Employer: Kimberly Services    San Quentin Hospital
     Insurance Carrier: CIGNA Group Insurance
     Claim #:  LK-6617              TC107403
     SS#: 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

Dear Mr. Davidson,

Thank you for referring Gheri Gallagher to the office for
evaluation.  I had the pleasure of examining this 47 year old
lady in orthopedic Independent Medical Evaluation on February 7,
1996.  The patient is evaluated with regard to problems she is
having in her neck and back.

Medical records forwarded to me have been reviewed for this
report.

**History of injury:**
The patient's neck was initially injured in 1985 when she was
assaulted while at work as a nurse.  Symptoms increased, and she
had to change to lighter jobs as a nurse in a more administrative
capacity.  She began noticing radiation into the right upper
extremity.

An MRI in November of 1989 revealed a right paracentral and
posterolateral herniation of the C5-6 and C6-7 discs with
impingement on the cord.  There was also possible impingement on
the right C6 nerve root.  There was left sided herniation at the
C4-5 level.  Osteophytes were also noted.

A repeat study performed on April 11, 1991, also revealed the

- Page 1 of 7 -

LINA 0722

Page 2
Re: Gheri Gallagher
February 7, 1996

above findings, except that at the C6-7 level there was a
reduction in the right paramedian disc herniation.

The patient states that her neck pain increased.  She was offered
a surgical option, however the ultimate outcome was uncertain,
and she has declined thus far to entertain this possible
treatment.

She has had disc surgery in her lumbar spine in 1980 and 1981,
which did result in good function, however, over time she has had
increasing low back pain that is aggravated by prolonged sitting,
as well as bending and lifting.

Her condition was worsened by a slip and fall in August of 1994,
which caused a coccyx fracture making it difficult for her to sit
without placing weight on one buttock or the other.

One year ago she sustained a fracture of the tibia and fibula,
which required internal fixation with a rod.  This has caused
some numbness on the lateral aspect of the scar, and difficulty
with kneeling and squatting.

She has also had some symptoms which sound like patellar
subluxation in both knees, but this has yet to be worked up.
Neck pain is her primary problem.

She notes intermittent radiation into the right upper extremity
at this time, which requires the use of traction in a supine
position.  She states that she lies down for one-half to three-
quarters of an hour, two to three times during the day, with
traction applied in order to relieve right arm paresthesias.  She
states that if she lets the right arm paresthesias go without the
traction treatment, her pain increases to a more severe level
causing stiffness and headache.  She notes involvement of the
index and long fingers primarily with paresthesias and a numb
feeling with some thumb involvement at times as well.

Low back symptoms radiate into the left buttock at times,
primarily with prolonged sitting.  Symptoms do awaken the patient
from sleep at night.  She has not noticed any true numbness or
weakness in the lower extremities, and she denies any limp or
loss of control of bowel or bladder.

At this time, she estimates that she can walk for fifteen to
twenty minutes at a time, lift ten to fifteen pounds, and sit for

- Page 2 of 7 -

LINA 0723

Page 3
Re: Gheri Gallagher
February 7, 1996

forty-five minutes at a time.  She can stand for one hour at a
time.

**Current treatment:**
Her present treating physician is Dr. Robert Blum.  Her current
medications include Ibuprofen 600mg.  On average she takes three
to five per week.  She also takes 5mg of Valium as needed, and
averages one per week.

She tries to use physical methods to reduce pain such as traction
instead of taking medications.  She states that she has a
stretching and swim exercise program, which are also helpful.
She does not receive chiropractic care, nor does she use any
braces.

**Past medical history:**
The patient states that she had repair of cardiac anomalies in
1957.  She had lumbar laminectomies in 1980 and 1981.  She had
the left tibial rodding in 1995.

**Physical examination:**
The patient's stated height and weight are 5'7" and 145 pounds
respectively.

Cervical spine:   Inspection of the cervical spine reveals
straightening of the normal cervical lordosis.  Palpation reveals
moderate tenderness in the right neck, and 2+ muscle spasm in the
cervical paraspinal musculature.  No bony irregularities are
palpable.

Range of motion of the neck is decreased with flexion limited to
two and a half inches from chin to chest.  She has 15 degrees of
extension.  Both neck flexion and extension are stopped by pain
primarily in the right mid neck.  Lateral bending is 10 degrees
to the right, and 20 degrees to the left.  On leaning to the
right, the patient notes pain radiating into the right neck,
trapezius, and arm.  Rotation is 30 degrees to the right, and 35
degrees to the left with pain at the extremes bilaterally.

Adson's foraminal compression test is positive on the right side.
Deep tendon reflexes are 2+ and equal at the biceps, triceps, and
brachioradialis.  Motor strength in both upper extremities is

LINA 0724

Page 4
Re: Gheri Gallagher
February 7, 1996

good to manual testing, although the patient does experience neck pain with resisted arm flexion and abduction.

Sensory examination is normal using the Howmedica sensitometer.

Grip strength testing with the Jamar dynamometer, right/left, is 40/50, 35/45, and 35/45. The patient is right-handed.

Arm circumferential measurements, right/left, are 10.5"/10.75". Forearm circumferential measurements are 9.5"/9.75", right/left.

Tinel's sign is negative over the median nerve at the wrists bilaterally. Wrist compression test is negative bilaterally.

Pinch strength testing, right/left, is 8/12, 10/12, and 10/12 with the Baseline dynamometer.

<u>Lumbar spine</u>:    Examination of the lumbar spine reveals decreased range of motion with 10 degrees each of lateral bending. Forward bending reveals the patient can bring her fingertips to within twelve inches of her toes in flexion. She has 10 degrees of extension with pain at the lumbosacral junction.

Straight leg raising test is positive on the left side at 70 degrees, and negative on the right side.

With the lifting motion, in general, the patient experiences pain in the right neck and trapezius. She states if she lifts or carries something in front of her for a period of time, which is variable, she notes low back pain as well.

No sciatic notch tenderness is noted today.


**Review of medical records:**
10/11/89 William J. DeMartini, M.D.
    MRI cervical spine. IMP: right paracentral and posterolateral C5-6 and C6-7 disc herniation with impingement, left paracentral disc herniation C4-5 with osteophytes.

3/07/90   Robert S. Blum, M.D.
    Letter stating patient is disabled from work for six to twelve months.

LINA 0725

Page 5
Re: Gheri Gallagher
February 7, 1996

2/25/91    James M. Kelly, M.D.
      Neurology evaluation.  IMP: C5-6 herniated disc, cervical
radiculopathy, weakness C6 or C7 musculature.  Patient is
controlling symptoms with traction.

4/11/91    Charles Peterfy, M.D.
      MRI cervical spine.  IMP: C6-7 herniation significantly
reduced, otherwise no significant changes from 11/89 study which
revealed decreased signal and loss of height C4-5, left posterior
osteophyte, C5-6 narrowing, moderate right paramedian disc
herniation C6-7.

10/02/91   Dr. Blum
      Letter stating he treated patient since 1980 when he removed
herniated lumbar disc.  Multiple cervical disc injuries since
being assaulted at work in 1985.  Motor vehicle accident also
complicated neck problems.  IMP: cervical spondylosis, multiple
disc herniations.  REC: traction, lifting restrictions.

3/23/94    Dr. Blum
      REC: swimming, Valium, ibuprofen.

6/01/94    Dr. Blum
      Neck pain with right arm radiation.  Using Valium, traction,
therapeutic modalities.

11/16/94   Dr. Blum
      Medical/legal eval.  IMP: multilevel cervical degenerative
disc disease.  Permanent and stationary.  REC: ongoing physician
visits, mild medications, therapeutic activities and exercises.

5/17/95    Dr. Blum
      Re-eval.  On 2/22/95 fell off swing and had comminuted
fracture of left tibia and fibula.  Rod insertion by Stock on
2/23/95.  Trauma resulted in increased neck pain.


Impression:
1.    Multi-level cervical disc disease, C4-5, C5-6, and C6-7 with
      intermittent nerve root irritation.  (722.4, 353.9)

2.    Lumbar disc disease with occasional nerve root irritation.
      (722.52, 353.9)

3.    Status post coccyx fracture.  (805.6)

LINA 0726

Page 6
Re: Gheri Gallagher
February 7, 1996


4.    Left tibia and fibula fracture, 2/22/95, status post
      internal fixation.   (823.82)


Discussion:
In summary, Gheri Gallagher is a 47 year old registered nurse who
suffers from cervical and lumbar degenerative disc disease with
nerve root irritation in the upper and lower extremities.

Subjective findings and factors of disability include neck pain,
which may be characterized as slight to moderate at rest,
increasing to a moderate to severe level with activities such as
neck extension, flexion, rotation, and lifting.

Objective findings and factors of disability include positive
MRI's, surgical findings, positive Adson's test in the neck, and
positive straight leg raising in the lower back.  Muscle spasm
and decreased range of motion are also noted on the physical
examination.

Objective findings do correlate well with subjective complaints,
and the diagnoses given by the patient's physicians as well as
those noted tests, and this examiner's findings.

I do feel that the claimant does have the physical capacity to
perform a full time sedentary job if she were able to perform
this job at her own pace at home.  After sitting or standing, she
may develop nerve root irritation, which requires her to lie down
two to three times during the day, and apply cervical traction.

I have filled out the IME Physical Capacities Form, and a copy
should be included with this report.  I feel that the patient's
capacities and restrictions are permanent.

I would anticipate that the patient's condition will continue to
slowly degenerate, especially in the cervical spine.  I feel that
the lumbar spine condition has stabilized, and will not likely
change in the future.

I do feel that the patient's reservations regarding neck surgery
are appropriate.

Were I this patient, I would prefer treatment surgically with an
anterior surgical fusion utilizing the Badgley technique.  This
would allow for a fusion in distraction opening the neural

LINA 0727

Page 7
Re: Gheri Gallagher
February 7, 1996


foramina, thereby reducing nerve root irritation.

Should the patient not agree to surgery, then her current
treatment is a reasonable alternative. Were it tolerable, I
would recommend the use of a Philadelphia collar and an isometric
neck exercise program as well.

If I can be of any further assistance or questions arise
regarding this evaluation, please contact me at your earliest
convenience.

Sincerely yours,

Michael A. Kurtz, M.D.


MAK/am
encl.: IME Physical Capacities Form

JAMES M. KELLY, M.D.
A PROFESSIONAL CORPORATION
NEUROLOGY
500 SIR FRANCIS DRAKE BOULEVARD, SUITE 305
GREENBRAE, CALIFORNIA 94904
TELEPHONE 461-4245

October 25, 1991

Butch Hall
Independent Claims Services, Inc.
P.O. Box 380693
Duncanville, TX 75138-0693

Re:  Gheri Gallagher
     Ref. #: Kimberly Services

Dear Mr. Hall:

I evaluated Gheri Gallagher in the office today for symptoms of
pain, paresthesias, and weakness following a series of neck
injuries.  Ms. Gallagher is a 43-year-old right-handed woman, who
indicates that as a teenager she was involved in a football
accident while playing with her brother, in which she injured her
neck and was placed in Crutchfield tongs for an atlanto-axial
injury.  Apparently she did well with this.  In 1985 she was
assaulted at San Quentin Prison, where she was acting as a nurse,
and developed neck pain with intermittent paresthesias and pain
radiating into the right lateral arm and radial aspect of the hand.
This became sufficiently severe such that she had to support the
right arm in her lap because of pain. In October, 1989, she ceased
work on disability.  In January of 1990 she was involved in a rear-
end motor vehicle accident.  She was stopped at a crosswalk with
her seat belt on, and was struck by another vehicle, which she
states was traveling about 40 mph.  The symptoms in her neck and
right arm were aggravated.  She had pain in the neck radiating to
the scalp, and pain radiating down the right lateral arm to the
third, fourth, and fifth fingers.  Occasionally the thumb and index
fingers would become cold and numb.  Intermittently she noted pain
in the left arm. This was primarily during sleep, which she
associated with abnormal posture of the arm.  She has noted
weakness of grip on the right, and feels that her entire right arm
is not as strong as the left.  She has no fixed numbness.

Ms. Gallagher has had two MRI's of the cervical spine, one on
4/11/91.  These have both showed significant loss of height of the
C4-5 disk with a left posterior paramedian osteophyte.  The C5-6
disk was narrowed and showed a focal right paramedian herniation,
compressing the anterolateral cord and sac at that level, but not

Page Two
Re: Gallagher, Gheri
October 25, 1991

involving the neural foramen. At C6-7 there was a moderate right
paracentral disk herniation, compressing the anterolateral sac and
cord, which narrowed the neural foramen on that side. In the 4/11
study the right paramedian disk herniation appeared to be reduced
in size.

Ms. Gallagher has received extensive physical therapy at METS in
San Rafael, including biofeedback and mechanical traction. None of
this was dramatically helpful. When she began to try home traction,
using a supine traction apparatus, she found significant benefit,
and adopted a very intensive schedule of home traction for about
two months. Subsequently she has maintained her improvement on two
to five periods of traction per day. As mentioned, this is done in
the supine position. She uses ibuprofen occasionally, and takes
Valium, 5 mg, once or twice a week, usually at night, for shoulder
tightness. Ms. Gallagher occasionally notes fasciculations in the
scapular area on the right, and in the right upper arm. This does
not relate to pain or neck and arm position.

Ms. Gallagher also has a history of lumbar disk disease with two
laminectomies in 1980 and 1981 on first the right and then the left
side. She has been relatively stable, though recently she has
noted some paresthesias in the right lateral thigh in the past six
months.

Family history is negative for neurologic disease.

Personal history: This patient does not smoke. She occasionally
uses alcohol.

Medications: Ibuprofen and Valium as noted above.

Medication allergy: None. The patient is intolerant of morphine
sulfate (vomiting).

Prior surgery: Two lumbar laminectomies; repair of a congenital
ventricular septal defect; and a mitral commissurotomy with
pulmonary arterial resection at age ten; and bilateral breast
implantation.

Medical review of systems is significant for her prior heart
disease and for some occasional elevations in blood pressure.

EXAMINATION: Blood pressure 140/100 to 105; pulse 80, regular;
respirations normal. The patient is a well developed, well
nourished woman in no acute distress. HEENT examination is
unremarkable. Neck is impaired by three finger breadths from
touching the sternum due to pain. There is moderate limitation of
lateral rotation in both directions. Extension of the neck is

LINA 0956

Page Three
Re: Gallagher, Gheri
October 25, 1991

severely impaired due to pain.  No supraclavicular tenderness is
noted.  No carotid bruits are heard.  Lungs are clear.  Heart
sounds revealed a grade II systolic and diastolic murmur along the
left sternal border.  Abdomen soft without enlargement of liver or
spleen.  Extremities are well formed. Radial pulses are equal
bilaterally.  Adson's maneuver is negative bilaterally. Phalen's
test is negative at the wrist bilaterally.  A scar of a well healed
prior lumbar laminectomy is noted.

Neurologic examination reveals normal mental status and cranial
nerve function.  Motor examination of the extremities revealed mild
weakness of grip on the right, and mild weakness of finger flexion.
Wrist extension, elbow flexion and extension were both mildly
impaired. Remaining muscle strength was normal. Bulk was equal in
the arm five and a half inches above the olecranon (11 1/4 inches,
right and left).  No fasciculations were noted.  Deep tendon
reflexes were 2+ at the biceps, triceps, radial, knees, and ankles.
Plantar response was flexor bilaterally.  Sensory testing revealed
minimal hypesthesia to pin over the index and middle fingers of the
right hand, and over the dorsal radial and slightly dorsal ulnar
aspect of the forearm.  Joint position sensation and vibration
sensation were normal in the great toes bilaterally.  Coordination
testing shows normal equilibratory and nonequilibratory function.

Ms. Gallagher has symptoms of cervical radiculopathy, with findings
on examination of weakness of a mild extent in largely C6 or C7
innervated musculature.  On previous magnetic resonance images of
the spine, a herniated disk is noted at C5-6, and an osteophytic
ridge compressing the thecal sac and cord is noted at C4-5.  I feel
that these adequately explain the patient's symptoms, which are
largely subjective in nature, and consist of considerable pain in
the neck and arm.  I feel that she should not undertake activities
which require prolonged sitting, or positions in which prolonged
neck flexion or extension are required.  Lifting weights more than
ten pounds is also contraindicated.

At present Ms. Gallagher is managing to control her symptoms
through multiple applications of cervical traction in the supine
position, and if she is not able to undertake these applications
two to five times per day, would have a degree of subjective
symptomatology that would render her incapable of performing
essentially any work place activity.  If her conditions of work
could be modified to allow her to apply traction, I feel that she
could return to the work place after appropriate rehabilitation.

LINA 0957

Page Four
Re: Gallagher, Gheri
October 25, 1991

I trust this information will be useful to you.  If you have
further questions, please do not hesitate to contact me.

Sincerely,

*James M. Kelly, MD*

JMK/jn

D: 10/25/91
T: 10/28/91

LINA 0958